UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:  6:15-BK-01720


IN RE:

KEITH A. YERIAN
_____/


RICHARD WEBBER II,                        6:15-AP-00064-KSJ

     PLAINTIFF,

V.

KEITH A. YERIAN, ET AL.,

     DEFENDANTS.
_____/


HEARING

BEFORE:          THE HONORABLE KAREN S. JENNEMANN

DATE:            FEBRUARY 14, 2017

TIME:            12:32 P.M. - 1:14 P.M.

LOCATION:        UNITED STATES BANKRUPTCY COURT
                 400 WEST WASHINGTON STREET
                 ORLANDO, FL 32801

1                    A P P E A R A N C E S

2    FRANK WOLFF, ESQUIRE, ON BEHALF OF MR. YERIAN

3          AND SUN Y. PAK

4    BRADLEY ANDERSON, ESQUIRE, ON BEHALF OF

5          THE CHAPTER 7 TRUSTEE, RICHARD WEBBER II

6    RICHARD WEBBER II, ESQUIRE, CHAPTER 7 TRUSTEE

7    ALSO PRESENT:

8    TOMMY SCHULTI, STUDENT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    I N D E X

2  FINDINGS OF FACT AND CONCLUSIONS OF LAW          5

3  RULING BY THE COURT                             7

4  RULING BY THE COURT; TRUSTEE'S OBJECTION       21

5       SUSTAINED

6  RULING BY THE COURT ON COUNTS 4, 5, AND 6      25

7  RULING BY THE COURT; DENIAL OF DISCHARGE       33

8  CERTIFICATE OF OATH                            35

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2          THE CLERK:  THE COURT CALLS CASE

 3    NO. 15-1720, KEITH YERIAN, AND ALL RELATED

 4    ADVERSARY PROCEEDINGS.  ALL INTERESTED PARTIES,

 5    PLEASE COME FORWARD AND MAKE YOUR APPEARANCES.

 6          MR. WOLFF:  FRANK WOLFF, ATTORNEY FOR

 7    MR. YERIAN AND SUN Y. PAK, WHO ARE PRESENT WITH

 8    ME.

 9          MR. WEBBER:  GOOD AFTERNOON, JUDGE.  RICK

10    WEBBER, CHAPTER 7 TRUSTEE.  WE HAVE TOMMY SCHULTE

11    AT COUNSEL TABLE, UCF STUDENT; AND HE'S HERE FOR

12    A REQUIREMENT FOR ONE OF HIS CLASSES.

13          THE COURT:  WELCOME.

14          MR. ANDERSON:  GOOD AFTERNOON, YOUR HONOR.

15    BRADLEY ANDERSON, ATTORNEY FOR THE CHAPTER 7

16    TRUSTEE.

17          THE COURT:  AND, AGAIN, NORMALLY A CHAPTER 7

18    DOCKET IS DONE ABOUT 11:20 AND THAT'S NOT WHAT

19    HAPPENED THIS MORNING, AND I APOLOGIZE FOR THE

20    DELAY THAT EVERYONE HAS ENCOUNTERED THIS MORNING

21    IN GETTING TO THE ORAL RULING.

22          WE ARE HERE TODAY IN CONNECTION WITH THE

23    ORAL RULING, WHICH I WILL MAKE AFTER THE TRIAL ON

24    THE TRUSTEE'S OBJECTION TO EXEMPTIONS, THE

25    DEBTOR'S RESPONSE, DOCUMENTS NO. 78 AND 84 IN THE
```

1   MAIN CASE, AS WELL AS THE TRIAL ON THE AMENDED

2   COMPLAINT FILED IN ADVERSARY PROCEEDING 15-64.

3         THE TRIAL WAS HELD ON NOVEMBER 30TH AND

4   FINISHED ON DECEMBER 12TH.  I'VE TAKEN IT UNDER

5   ADVISEMENT.  IN THE INTERIM, I HAVE LOOKED AT THE

6   LAW AND THE EXHIBITS AND CONSIDERED THE

7   TRANSCRIPT AND THE TESTIMONY; AND I WILL MAKE THE

8   FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW

9   PURSUANT TO BANKRUPTCY RULE 7052.  I RESERVE THE

10  RIGHT TO SUPPLEMENT THIS WITH A WRITTEN RECORD IF

11  APPROPRIATE.  AND I DO BEG THE PARTIES'

12  INDULGENCES BECAUSE AN ORAL RULING IS NEVER AS

13  REFINED AS A WRITTEN RULING, BUT I WILL DO MY

14  BEST JOB TO EXPLAIN MY THOUGHTS.

15        THERE ARE TEN COUNTS THAT WERE INITIALLY

16  PLED IN THE INITIAL COMPLAINT.  THE FIRST THREE

17  COUNTS RAISE ACTIONS TO DENY THE DEBTOR,

18  MR. YERIAN -- KEITH YERIAN, A DISCHARGE UNDER

19  § A(2)(A), A(4), AND A(5) OF § 727 OF THE

20  BANKRUPTCY CODE.  THERE WERE THREE COUNTS

21  RELATING TO AN ALLEGED FRAUDULENT TRANSFER OF

22  APPROXIMATELY -- WELL, NOT APPROXIMATELY -- OF

23  $256,000 THAT WAS TRANSFERRED FROM A JOINT

24  E-TRADING ACCOUNT INTO AN ACCOUNT IN THE NAME OF

25  THE CO-DEFENDANT, SUN YUNG PAK, WHO IS THE

1    DEBTOR'S HUSBAND; AND THEN THE AVOIDANCE COUNT

2    UNDER § 550 OF THE BANKRUPTCY CODE IN COUNTS 4,

3    5, AND 6.  SO YOU HAVE THREE COUNTS TO DENY

4    DISCHARGE, THREE COUNTS TO AVOID THAT TRANSFER.

5         COUNTS 7 AND 8 SOUGHT RECOVERY OF A

6    FRAUDULENT TRANSFER AS TO A SEPARATE CORPORATION.

7    MWAGUSI.  THOSE WERE WITHDRAWN IN OPEN COURT.

8         AND THEN 9 IS AN INJUNCTIVE ACTION SEEKING

9    TO FREEZE AN ACCOUNT; AND 10 WAS A COUNT SEEKING

10   AN ACCOUNTING FROM MWAGUSI THAT WAS A DISMISSED

11   PARTY.

12        BEFORE I PROCEED WITH THE ORAL RULING, I DID

13   WANT TO ASK MR. WEBBER TWO QUESTIONS RELATING TO

14   THOSE LAST TWO COUNTS.  I WAS A LITTLE CONFUSED

15   AS TO WHETHER ANY FURTHER RELIEF WAS SOUGHT UNDER

16   THE INJUNCTIVE COUNT, COUNT 9.

17        MR. WEBBER:  NO.  NO.

18        THE COURT:  WE DIDN'T DISCUSS IT, BUT I

19   COULDN'T THINK OF ANY REASON WHY IT WAS STILL

20   PENDING.

21        MR. WEBBER:  AND THE ACCOUNTING WENT AWAY

22   WHEN WE DISMISSED --

23        THE COURT:  YOU DIDN'T DISMISS COUNT 10, BUT

24   I THINK YOU SHOULD HAVE DISMISSED COUNT 10.

25        MR. WEBBER:  I SHOULD HAVE WITH 7 AND 8.

1    YOU'RE RIGHT.  BECAUSE MWAGUSI WENT AWAY.

2         THE COURT:  THAT'S WHAT I WANTED -- THAT'S

3    WHAT I INTERPRETED, BUT I WANTED TO MAKE SURE

4    BEFORE WE PROCEEDED WITH THE ORAL RULING.  SO I

5    WILL ASSUME COUNTS 7, 8, 9, AND 10 ARE EITHER

6    DISMISSED OR MOOT AT THIS POINT AND NEED NO

7    FURTHER ACTION BY THE COURT.

8         SO THE RULING REALLY DOES DIVIDE INTO

9    WHETHER A DISCHARGE SHOULD ISSUE; WHETHER THE

10   FRAUDULENT TRANSFER OF THE E-TRADING ACCOUNT

11   SHOULD BE HELD; AND THEN ON THE OBJECTION TO

12   EXEMPTION, WHETHER MR. YERIAN'S IRA HAS --

13   RETAINS AN EXEMPT STATUS UNDER THE BANKRUPTCY

14   CODE.  THOSE ARE THE THREE ISSUES THAT ARE

15   RAISED.

16        I'M GOING TO SUMMARIZE THE FACTS AS I WILL

17   FIND THEM THAT WILL BE SUPPLEMENTED WHEN I RULE

18   UPON THE VARIOUS SPECIFIC RULINGS UNDER THE THREE

19   GENERAL CATEGORIES OF ISSUES THAT ARE PENDING FOR

20   RESOLUTION, BUT I DON'T LIKE TO KEEP PEOPLE IN

21   SUSPENSE.  SO I'M NOT GOING TO MAKE YOU WAIT WITH

22   BATED BREATH FOR THE CONCLUSION. AND IT'S NOT ONE

23   FAVORABLE TO THE DEBTOR.

24        I AM GOING TO DENY THE DISCHARGE, I AM GOING

25   TO FIND THAT THE IRA IS NOT EXEMPT, AND I AM

REALTIME REPORTERS, INC.  407-884-4662
REALTIMERPRS@GMAIL.COM

1    GOING TO AVOID THE FRAUDULENT TRANSFER.  AND I

2    WANTED TO SAY THAT BECAUSE IT HELPS, I THINK,

3    EVERYONE TO UNDERSTAND, PERHAPS, THE RULING A

4    LITTLE BETTER.

5         IN CONNECTION WITH THE FACTS, MR. YERIAN

6    CERTAINLY WAS, AND HAS BEEN HIS ADULT LIFE, AN

7    ACTIVE AND SOPHISTICATED BUSINESSMAN.  HE WORKED

8    IN COMPUTER SOFTWARE AND INDUSTRY FOR MANY YEARS

9    IN OHIO.  HIS PLEADINGS REFLECT THAT HE IS

10   CURRENTLY UNEMPLOYED; BUT IN OHIO, MR. YERIAN

11   HIS FORMER WIFE, DEBORAH YERIAN, HAD OPERATED FOR

12   MANY YEARS, STARTING IN 1996, A COMPANY CALLED

13   ETC COMPUTERS, INC.

14        THEY ALSO HAD SEVERAL OTHER CORPORATIONS,

15   TWO OF WHICH ARE I-MOBILE LLC AND B-GLOBAL LLC.

16   THEY WERE INCORPORATED IN 2003.  THEY ARE STILL

17   TECHNICALLY ACTIVE, AS REFLECTED IN TRUSTEE'S

18   EXHIBIT NO. 26 AND 27.  THE EVIDENCE DIDN'T

19   INDICATE, HOWEVER, THERE WAS ANY SUBSTANTIAL

20   BUSINESS OR ASSETS OF ANY KIND IN EITHER

21   BUSINESS, BUT THEY ARE STILL ACTIVE CORPORATIONS.

22        IN 2004, MR. AND MRS. YERIAN WERE DIVORCED;

23   AND IN 2008, MS. PAK, THE CO-DEFENDANT, AND

24   MR. YERIAN WERE MARRIED.  MS. PAK CERTAINLY HAS

25   EMPLOYMENT HISTORY IN THE UNITED STATES.  SHE

1      RECEIVED A HIGH SCHOOL EDUCATION IN EARLY

2      CHILDHOOD IN KOREA, BUT SHE HAD WORKED FOR ETC

3      COMPUTERS DURING THEIR TIME IN OHIO.  SINCE

4      MOVING TO FLORIDA IN 2004, SHE ALSO REFLECTS THAT

5      SHE IS UNEMPLOYED.

6      THE RECESSION OF 2008 TO 2010 CERTAINLY

7      AFFECTED MANY BUSINESSES AND OPERATIONS IN THIS

8      COUNTRY, INCLUDING ETC COMPUTERS.  AND I DON'T

9      THINK THERE'S ANY DISPUTE THAT THERE WAS A

10     BUSINESS DOWNTURN.

11     HOWEVER, THE ISSUES BETWEEN MR. YERIAN AND

12     HIS FORMER WIFE, DEBORAH YERIAN, RELATED TO WHAT

13     HAPPENED TO THE CUSTOMERS AND BUSINESS BASE OF

14     ETC COMPUTERS AFTER FEBRUARY 16, 2011, WHEN A

15     SEPARATE CORPORATION BY MR. MCLEOD WAS

16     INCORPORATED CALLED MWAGUSI SOFTWARE LLC.

17     THE CUSTOMER BASE TRANSFERRED ENTIRELY OVER

18     FROM ETC COMPUTERS IN 2011 OR SO TO MWAGUSI.

19     THERE WAS ONLY -- THE EVIDENCE INDICATED THAT

20     THERE WAS ONLY ONE POTENTIAL OTHER NON-ETC

21     CUSTOMER OF MWAGUSI, OTHER THAN THAT, THAT

22     TRANSFERRED FROM ETC.

23     THE COURT NOTES THAT SUBSEQUENT TO THE

24     FILING OF THIS CHAPTER 7 PROCEEDING ON FEBRUARY

25     27, 2015, OR RIGHT AROUND THERE, MRS. YERIAN --

1    EXCUSE ME -- DEBORAH YERIAN -- MRS. DEBORAH

2    YERIAN HAS RESOLVED HER DISPUTES WITH MWAGUSI;

3    AND I'M NOT REALLY NOT GOING TO ADDRESS IN DETAIL

4    MUCH OF THE MWAGUSI CONTENTIONS, OTHER THAN TO

5    SAY THAT THERE WAS LITIGATION PENDING BETWEEN

6    DEBORAH YERIAN, THE DEBTOR KEITH YERIAN, AND

7    MWAGUSI SOFTWARE LLC STARTING IN 2012 AFTER

8    MWAGUSI WAS INCORPORATED.

9         I'M GOING TO RETURN TO ROUGHLY THE MARRIAGE

10   OF MR. -- THE OCTOBER 2008 WHEN MR. YERIAN AND

11   MS. PAK WERE MARRIED.  THEY OPENED A JOINT

12   E-TRADING ACCOUNT.  THE MONIES THAT WERE PLACED

13   INTO THE E-TRADING ACCOUNT CAME FROM THREE

14   SEPARATE, AS REFLECTED IN TRUSTEE'S EXHIBIT 13,

15   THE FIRST BEING ALMOST SIMULTANEOUSLY WITH THEIR

16   MARRIAGE.  THE TRANSFER WAS ON OCTOBER 23RD,

17   2008, IN THE AMOUNT OF $50,000.  THE SOURCE OF

18   THE MONIES WAS FROM MRS. PAK'S MOM.  SHE MADE TWO

19   SUBSEQUENT TRANSFERS ON JANUARY 2ND AND 7TH,

20   2009, OF 10,000 EACH.  SO ROUGHLY -- NOT ROUGHLY

21   -- $70,000 WENT INTO THE E-TRADE ACCOUNT THAT WAS

22   IN THE NAME OF BOTH MS. PAK AND MR. YERIAN AT ITS

23   INCEPTION IN 2008.

24        THE TESTIMONY WAS CONFIRMED BY MR. AND

25   MRS. YERIAN, BUT, QUITE HONESTLY, I UNDERSTAND

1     THAT THERE'S ALLEGATION OF INTERFAMILY DISPUTES

2     AND RIVALRY; AND I DIDN'T, QUITE HONESTLY, GIVE

3     THIS TESTIMONY A WHOLE LOT OF CREDENCE, OTHER

4     THAN IT DID CONFIRM WHAT EVEN MR. YERIAN

5     TESTIFIED TO WAS THAT HE WAS A WELL-VERSED STOCK

6     TRADER AND HAD TRADED STOCK FOR YEARS; AND I HAVE

7     TO FIND HE WAS A SOPHISTICATED BUSINESSPERSON.

8          MS. PAK, ON THE OTHER HAND, HAD NO

9     EXPERIENCE PRIOR TO OPENING THIS ACCOUNT IN

10    OCTOBER 2008 OF ANY DEMONSTRATED KIND -- AND THE

11    DOCUMENTS SUPPORTING THE ACCOUNT ARE TRUSTEE'S

12    EXHIBIT 4 -- INDICATING ANY EXPERIENCE IN THE

13    STOCK MARKET.

14          I WOULD FIND THAT THE TRANSFER FROM

15    MRS. PAK'S MOTHER ON OCTOBER 23RD RESULTED THE

16    NEXT DAY, ON OCTOBER THE 24TH, WITH THE OPENING

17    OF THE E-TRADING ACCOUNT.

18          DEFENDANT'S EXHIBIT 16 INDICATE DURING THE

19    PENDENCY OF THE PERIOD BETWEEN 2008 AND 2012

20    THERE WERE THOUSANDS OF STOCK TRADES AND THAT THE

21    TRADING WAS VERY SUCCESSFUL.  THE AMOUNT

22    INCREASED FROM $70,000 TO WELL OVER $250,000.  SO

23    THERE WAS A SUBSTANTIAL RETURN IN THE INVESTMENT.

24          IN 2012 -- IN MARCH 2012, TRUSTEE'S EXHIBIT

25    5, THE COUPLE TRANSFERRED THE MONIES TO A

1       SEPARATE E-TRADE ACCOUNT, TRUSTEE'S EXHIBIT 6,

2       WITH MS. PAK BEING THE SOLE OWNER.  THIS OCCURRED

3       FOUR MONTHS AFTER THE LAWSUIT WAS FILED BY MRS.

4       DEBORAH YERIAN AGAINST MR. YERIAN AND MWAGUSI

5       SOFTWARE, DEFENDANTS' EXHIBIT 11.  AND THEN IN

6       JULY 2012, SHORTLY THEREAFTER -- AND THE COURT

7       NOTES ALMOST FOUR YEARS AFTER THE MONIES

8       TRANSFERRED, MRS. PAK'S MOTHER SIGNED AN

9       AMBIGUOUS NOTARIZED DOCUMENT SAYING THAT SHE HAD

10      TRANSFERRED THE MONIES TO THEM JOINTLY, BUT THAT

11      IT WAS MRS. PAK'S MONEY AND IT WAS A LOAN.

12      THAT'S TRUSTEE'S EXHIBIT 11 AND 12; DEFENDANTS'

13      EXHIBIT 15.

14          EVERYONE AGREES THAT THE $70,000 FUNDED THE

15      E-TRADE ACCOUNT.  I WOULD FIND, CONTRARY TO THE

16      TESTIMONY OF THE DEBTOR AND MS. PAK, THAT THE

17      $70,000 WAS A JOINT GIFT.  IT WENT INTO A JOINT

18      ACCOUNT.  THE E-TRADE ACCOUNT WAS A JOIN ACCOUNT

19      WITH RIGHTS OF SURVIVORSHIP AND IT WAS EQUALLY

20      OWNED BY MS. PAK AND MR. YERIAN AND THAT IT WAS A

21      GIFT FROM THE MOM TO THE COUPLE ON THEIR

22      MARRIAGE.

23          THE LATER DOCUMENT SIGNED YEARS LATER AFTER

24      LITIGATION WAS PENDING IS JUST SIMPLY NOT

25      CREDIBLE, NOR WAS THE TESTIMONY OF MS. PAK OR

1 MR. YERIAN. I WOULD FIND THAT IT WAS STRAINED --

2 IT STRAINED THE COURT'S, YOU KNOW, BELIEFS THAT

3 HERE WE HAVE AN E-TRADING ACCOUNT THAT MS. PAK

4 TESTIFIED SHE TOTALLY CONTROLLED, EVEN THOUGH

5 IT'S UNDISPUTED THAT IT WAS A JOIN ACCOUNT WITH

6 RIGHTS OF SURVIVORSHIP, THAT MR. YERIAN HAD THE

7 PRIOR EXPERTISE TO TRADE THE STOCK, THAT EVERY

8 STOCK WAS EFFECTUATED -- EVERY STOCK TRADE WAS

9 EFFECTUATED BY MR. YERIAN; AND DURING THE

10 TESTIMONY IT WAS CLEAR THAT MS. PAK DID NOT

11 UNDERSTAND THE STATEMENTS OR WHAT THE VARIOUS

12 MATTERS MEANT.

13 IT IS JUST INCREDIBLE TO THE COURT THAT

14 MS. PAK WOULD CONTEND THAT SHE MADE EVERY SINGLE

15 DECISION IN THE CASE AND IT WAS HER MONIES

16 EXCLUSIVELY AND NOT MR. YERIAN'S. SO I HAVE TO

17 FIND THAT CREDIBILITY IS LACKING BY THE DEBTOR

18 AND MS. PAK.

19 AFTER THE TRANSFER TO MS. PAK'S INDIVIDUAL

20 ERA -- EXCUSE ME -- E-TRADING ACCOUNT IN MARCH

21 2012, IN MAY 2012 SHE SEPARATELY PURCHASED THE

22 HOME IN FLORIDA WITH THE TRANSFERRED FUNDS FROM

23 THE E-TRADE ACCOUNT FOR A LITTLE OVER $173,000 --

24 THAT'S TRUSTEE'S EXHIBIT 7 -- AND MR. YERIAN AND

25 MS. PAK MOVED TO FLORIDA.

1          IT IS UNDISPUTED THAT THE EXTRA $81,000

2     DEPOSITED INTO MS. PAK'S SEPARATE E-TRADING

3     ACCOUNT WAS USED FOR VARIOUS OTHER PURPOSES --

4     EXCUSE ME -- THAT THERE WAS $81,000 DEPOSITED

5     INTO THAT ACCOUNT.  MS. PAK'S TESTIMONY WAS THAT

6     IT WAS USED TO REPAIR THE HOUSE, FOR LIVING

7     EXPENSES.  IT WAS JUST SIMPLY SPENT AND IT

8     POSSIBLY WAS.  BUT THERE WAS NOTHING INDICATING

9     WHAT IT WAS SPENT FOR, OTHER THAN THE TESTIMONY.

10    AND, AGAIN, THERE WAS -- THE TRUSTEE ESTABLISHED

11    THAT THERE WAS $81,000 TRANSFERRED FROM A JOINT

12    ACCOUNT AND THAT IT IS UNACCOUNTED FOR.

13         I DON'T KNOW WHAT IT WAS SPENT ON.  IT MAY

14    HAVE BEEN SPENT ON WHAT THE DEBTOR AND MS. PAK

15    CONTENDED, BUT THERE WAS ABSOLUTELY NOTHING

16    SUPPORTING THAT THAT WAS OF A CREDIBLE BASIS.

17         IN 2012 WHEN THE PARTIES WERE JETTISONING

18    THEIR JOINT ASSETS IN THE FORM OF THE JOINT

19    E-TRADING ACCOUNT INTO MS. PAK'S SEPARATELY-OWNED

20    E-TRADING ACCOUNT, MR. YERIAN ALSO CREATED A

21    SELF-DIRECTED IRA AGREEMENT; AND THAT'S THE

22    TRUSTEE'S EXHIBITS 1 AND 31.  TRUSTEE'S EXHIBIT 1

23    IS MR. JAY VANDERHEID'S EXPERT REPORT THAT GOES

24    THROUGH THE CREATION OF THE IRA AND THEN THE USES

25    OF THE FUNDS DEPOSITED IN THAT IRA.  TRUSTEE'S

1    EXHIBIT 31 SUPPORTS THE VARIOUS PURCHASES AND

2    USES OF THE MONIES DEPOSITED IN THAT IRA.

3        BUT THE COURT NOTES THAT THE IRA WAS SET UP,

4    AGAIN, SUBSEQUENT TO THE LITIGATION WITH

5    MRS. DEBORAH YERIAN AND INVOLVING MWAGUSI, AND

6    THAT IT WAS CLEARLY TRANSFERRING MONIES INTO AN

7    EXEMPT NATURE.  AND THEN THAT WITHOUT REALLY

8    DISPUTE, THE MONIES WERE USED TO DO A COUPLE OF

9    THINGS:  ONE, BUY TWO CARS THAT WERE TITLED IN

10    THE NAME OF MR. YERIAN AND MS. PAK; AND

11    SEPARATELY, THROUGH A SUBSIDIARY REAL ESTATE

12    HOLDING COMPANY, TO BUY TWO PARCELS OF REAL

13    ESTATE, ONE IN PALM BEACH -- NOT PALM BEACH --

14    OH, I DON'T REMEMBER -- IN FLORIDA, AND THEN IN

15    PUERTO RICO.  PALM BAY.  EXCUSE ME.  PALM BAY.

16        IT WAS UNDISPUTED THAT MR. YERIAN, AFTER

17    CREATION OF THE IRA, STAYED FOR AN UN-IRA-RELATED

18    PURPOSE IN THE PROPERTY IN PUERTO RICO; AND THERE

19    WERE MULTIPLE TRANSFERS, MANY OF WHICH WERE

20    UNEXPLAINED, BUT $8,000 OF WHICH IS JUST NOT EVEN

21    TRACEABLE FROM THE SELF-DIRECTED IRA.

22        MR. VANDERHEID CONCLUDED THAT AS OF JANUARY

23    -- THAT DURING THE YEAR OF 2014 THESE MONIES WERE

24    USED FOR IMPROPER PURPOSES, THAT -- AND THE

25    TRANSFERS WENT TO DISQUALIFIED PERSONS, PRIMARILY

1    THE DEBTOR AND MS. PAK, HIS WIFE, AND THAT AS A

2    RESULT, THE IRA LOST ITS EXEMPT STATUS AS OF

3    JANUARY 1, 2014.

4        MR. YERIAN FILED THIS CHAPTER 7 CASE ON

5    FEBRUARY 27, 2015.  THE TRUSTEE FILED THIS

6    ADVERSARY PROCEEDING 15-64, AS WELL AS THE

7    OBJECTION TO EXEMPTION, AS I SAID EARLIER; AND

8    THEN THE TESTIMONY IS REFLECTED IN THE

9    TRANSCRIPTS.

10        THE THREE ISSUES ARE WHETHER THE IRA IS

11    EXEMPT OR NOT.  THE SECOND IS WHETHER THE

12    E-TRADING ACCOUNT WAS A FRAUDULENT TRANSFER WHEN

13    IT WAS TRANSFERRED FROM THE JOINT TENANCY WITH

14    RIGHTS OF SURVIVORSHIP STATUS TO MS. PAK'S

15    INDIVIDUAL STATUS, AND WHETHER THE DISCHARGE IS

16    APPROPRIATE TO ISSUE OR NOT.

17        THE DEBTOR ARGUES -- AND, QUITE HONESTLY,

18    THE DEBTOR HAD GOOD ARGUMENTS ON THE NET EFFECT

19    OF THIS.  AND I'M, QUITE HONESTLY, SYMPATHETIC

20    ABOUT THE IMPACT THIS RULING WILL HAVE ON THEM;

21    BUT AFTER APPLYING THE LAW, I'M GOING TO IN THE

22    END RULE WITH THE TRUSTEE.

23        THE DEBTOR'S ARGUMENTS ARE FIRST, WHETHER --

24    IF ANY PROHIBITED TRANSACTIONS OCCURRED IN THE

25    IRA, THEY OCCURRED AFTER THE IRA WAS CREATED, AND

1    THAT THE DEBTOR THEN MAKES A LEGAL ARGUMENT THAT

2    THIS COURT LACKS THE ABILITY TO DETERMINE WHETHER

3    IT WAS EXEMPT OR NON-EXEMPT PURSUANT TO FLORIDA

4    STATUTE 222.21, THAT ONLY THE TAX COURT CAN DO

5    SO.

6        THE DEBTOR NEXT ARGUES THAT THE E-TRADE

7    TRANSFERS WERE NOT FRAUDULENT BECAUSE MR. YERIAN

8    NEVER HAD ANY INTEREST IN THE MONIES IN THE JOIN

9    ACCOUNT; AND, FINALLY, THAT ANY OTHER MISTAKES,

10   OMISSIONS, FAILURE TO DISCLOSE ASSETS ARE NO HARM

11   NO FOUL.

12       I WILL ADDRESS EACH OF THOSE SEPARATELY.

13   I'M GOING TO START WITH THE OBJECTION TO

14   EXEMPTIONS AND NOTE THAT THE PRIMARY PURPOSE OF

15   BANKRUPTCY LAW IS TO PROVIDE AN HONEST DEBTOR

16   WITH A FRESH START BY RELIEVING THE BURDEN OF

17   INDEBTEDNESS; AND THAT'S PEREZ V. CAMPBELL, 402

18   U.S. 637 (1971) IS NOT TERRIBLY CONTROVERSIAL.

19   HONEST DEBTORS GET DISCHARGES.  THOSE THAT DON'T,

20   DO NOT DESERVE OR RECEIVE DISCHARGES.

21       IN CONNECTION, FIRST, WITH THE OBJECTION TO

22   EXEMPTION, THE -- AND I WANT TO SAY THIS AS

23   NICELY AS POSSIBLE, BUT THERE IS A BINDING 11TH

24   CIRCUIT OPINION THAT SPECIFICALLY DIRECTS ME TO

25   DETERMINE -- AND LET ME READ THIS LANGUAGE AND

1    LET ME TELL YOU WHAT THE 11TH CIRCUIT OPINION IS.

2         THE DECISION OF THE 11TH CIRCUIT IS -- LET'S

3    SEE -- WILLIS V. MENOTTE.  THE DECISION IS AT 424

4    FED. APPENDIX 880, DECIDED IN 2011.  IT COMES UP

5    FROM THE BANKRUPTCY COURTS FROM THE SOUTHERN

6    DISTRICT OF FLORIDA THROUGH THE DISTRICT COURT IN

7    THE SOUTHERN DISTRICT OF FLORIDA.  THE DISTRICT

8    COURT DECISION IS AT 105 AFTR 2D 210, 1877.  AND

9    THE ISSUE WAS IDENTICAL THAT HERE.

10        THE DEBTOR HAD AN IRA, WAS A CHAPTER 7

11   DEBTOR.  THE DEBTOR IMPROPERLY USED FUNDS FROM

12   THE SELF-DIRECTED IRA.  THE DEBTOR THEN SOUGHT TO

13   SORT OF DISGUISE THE TRANSFERS THAT WERE IMPROPER

14   AND DID NOT PROPERLY REPLENISH THE ACCOUNT, SO IT

15   WAS PROBABLY ALREADY DETERMINED NON-EXEMPT,

16   ANYWAY, BUT THE DEBTOR ARGUED THAT THE BANKRUPTCY

17   COURT SHOULD NOT AND HAD NO RESPONSIBILITY TO

18   DETERMINE IF THE IRA WAS MAINTAINED IN AN EXEMPT

19   STATUS OR NOT.

20        BOTH THE DISTRICT COURT AND THE 11TH CIRCUIT

21   SPECIFICALLY SAID THAT THE BANKRUPTCY COURT AND

22   THE DISTRICT COURT DETERMINED THAT THERE WERE

23   PROHIBITED TRANSACTIONS UNDER § 408 OF THE

24   INTERNAL REVENUE CODE AND THAT THE BANKRUPTCY

25   COURT WASN'T OBLIGATED TO DETERMINE WHETHER THE

1    ASSETS LOST THEIR TAX EXEMPT STATUS.

2        SO NOT ONLY DO I HAVE THE AUTHORITY, BUT I

3    HAVE THE RESPONSIBILITY, UPON REQUEST, TO

4    DETERMINE WHETHER THE DEBTOR MAINTAINED THE IRA

5    IN ACCORDANCE WITH THE VARIOUS TAX CODES

6    REQUIREMENTS.

7        AND HERE, THE OBJECTING PARTY, CERTAINLY THE

8    TRUSTEE HAS THE BURDEN OF ESTABLISHING BY A

9    PREPONDERANCE OF THE EVIDENCE THAT THE DEBTOR'S

10   EXEMPTIONS ARE NOT PROPERLY CLAIMED IN RE

11   METHUSA, 446 B.R. 601 (M.D. FLA. 2011).

12       AND ALTHOUGH MATHUSA ALSO EXPLAINS THAT

13   EXEMPTIONS CERTAINLY ARE CONSTRUED LIBERALLY IN

14   FAVOR OF THE DEBTOR WHENEVER THERE IS AN

15   AMBIGUITY, HERE THERE REALLY IS NO AMBIGUITY.

16   THE § 522(B)(3)(C) PROVIDES THAT A DEBTOR MAY

17   TAKE AN EXEMPTION FOR RETIREMENT FUNDS TO THE

18   EXTENT THAT THOSE FUNDS ARE IN A FUND OR ACCOUNT

19   THAT IS EXEMPT FROM TAXATION UNDER THE VARIOUS

20   SECTIONS CITED.

21       AND BECAUSE FLORIDA IS AN OPT-OUT STATE, AS

22   EXPLAINED IN MATHUSA, THE FLORIDA STATUTE 222.212

23   CONTROLS AND PROVIDES THAT AN EXEMPT IRA -- AN

24   IRA IS EXEMPT IF MAINTAINED IN ACCORDANCE WITH

25   THE VARIOUS INTERNAL REVENUE SERVICE

1    REQUIREMENTS.

2         IF AN IRA IS NOT MAINTAINED IN ACCORDANCE

3    WITH PLAN OR GOVERNING INSTRUMENT AND THE PERSON

4    CLAIMING THE EXEMPTION CAN -- I'M SORRY.  LET ME

5    BACK UP.  THAT WASN'T VERY CLEAR.

6         HOWEVER, IF THE IRA IS NOT MAINTAINED IN

7    ACCORDANCE WITH THE VARIOUS REQUIREMENTS, IT

8    LOSES ITS EXEMPT STATUS.  § 408(E)(2) OF THE TAX

9    CODE SPECIFICALLY STATES THAT IF AN INDIVIDUAL

10   ENGAGES IN PROHIBITED TRANSACTION, THEN THE

11   ACCOUNT CEASES TO BE AN EXEMPT IRA AT THE

12   BEGINNING OF THE YEAR IN WHICH THE PROHIBITED

13   TRANSACTIONS OCCURRED.

14        AND HERE, THERE CLEARLY WERE PROHIBITED

15   TRANSACTIONS, INCLUDING THE [INAUDIBLE] TO A

16   DISQUALIFIED PERSON, I.E., THE DEBTOR AND HIS

17   WIFE; THE TRANSFER OR USE OF INCOME OR ASSETS BY

18   A DISQUALIFIED PERSON, I.E., THE DEBTOR OR HIS

19   WIFE, IN THE TAX YEAR 2014.

20        AND PURSUANT TO THE EXPLANATION IN

21   MR. VANDERHEID'S EXPERT REPORT, EXHIBIT NUMBER 1,

22   IT GOES THROUGH ALL OF THE VARIOUS REASONS WHY IT

23   WAS NON-EXEMPT.  I DON'T NEED TO RESTATE THOSE

24   BECAUSE THEY ARE ALL VERY WELL EXPLAINED.

25        AND ESSENTIALLY WHAT HAPPENED WAS MR. YERIAN

```
 1      SET UP THIS IRA, BUT THEN TREATED THE MONEY AS

 2      HIS OWN, ESSENTIALLY.  AND YOU CAN'T DO THAT AND

 3      MAINTAIN A SELF-DIRECTED EXEMPT IRA.  AND SO IT

 4      DID LOSE ITS TAX-EXEMPT STATUS ON JANUARY 1,

 5      2014.  THE TAX EFFECT IS DRACONIAN.  IT'S SORT OF

 6      INTENDED TO BE.  THAT'S WHAT PROHIBITS --

 7      ENCOURAGES PEOPLE, I'LL SAY, TO NOT DO WHAT

 8      HAPPENED HERE, WHICH IS THAT YOU CAN'T ACT LIKE

 9      THIS IS YOUR OWN MONEY TO USE AS YOU WISH; AND

10      THAT IS WHAT HAPPENED.

11          I DID NOT FIND THE EXPLANATION CREDIBLE.

12      THE IRA BOUGHT TWO CARS.  YOU CAN'T DO THAT AND

13      THEN TITLE THEM IN THEIR INDIVIDUAL NAMES.  IT

14      WASN'T A TITLING ERROR BECAUSE THERE WERE OTHER

15      INDICIA OF USE OF THESE PROPERTIES THAT WAS NOT

16      EXPLAINED CREDIBLY.

17          SO THE IRA -- I WILL GRANT THE TRUSTEE --

18      OR, SUSTAIN THE TRUSTEE'S OBJECTION THAT THE IRA

19      WAS NON-EXEMPT AS OF JANUARY 1, 2014.

20          IN CONNECTION WITH COUNTS 4, 5, AND 6

21      RELATING TO THE FRAUDULENT TRANSFER OF THE JOIN

22      E-TRADING ACCOUNT TO MS. PAK, UNDER FLORIDA

23      STATUTES -- FLORIDA STATUTE 726.108 PROVIDES THAT

24      A CREDITOR OR A PERSON STANDING IN THE SHOES OF

25      AT LEAST ONE UNSECURED CREDITOR UNDER § 11 U.S.C.
```

1    544(B), MAY AVOID A TRANSFER THAT IS FRAUDULENT.

2    THAT'S CAMERON V. LIFSEY, 522 B.R. 718 (BANKR.

3    M.D. FLA. 2014).

4         AND HERE, WE HAVE AT LEAST TWO UNSECURED

5    CREDITORS.  IN ADDITION TO MRS. DEBORAH YERIAN,

6    THERE IS ALSO A MORTGAGEE DEFICIENCY CLAIM, SO

7    CERTAINLY THE TRUSTEE HAD STANDING TO RAISE THE

8    FRAUDULENT TRANSFER ACTION FOR THE TRANSFER THAT

9    OCCURRED IN MARCH OF 2012.

10        A TRANSFER IS FRAUDULENT IF THE DEBTOR MADE

11   THE TRANSFER WITH THE ACTUAL INTENT TO HINDER,

12   DELAY, OR DEFRAUD ANY CREDITOR OF THE DEBTOR, OR

13   ALTERNATIVELY WAS CONSTRUCTIVELY FRAUDULENT FOR

14   FAILURE TO OBTAIN REASONABLY EQUIVALENT VALUE IN

15   EXCHANGE FOR THE TRANSFER.  I WOULD FIND THAT

16   UNDER EITHER STANDARD THE TRANSFER SHOULD BE

17   AVOIDED.

18        IN DETERMINING THE TRANSFEROR'S ACTUAL

19   INTENT IN THE FRAUDULENT TRANSFER CASES, I HAVE

20   TO LOOK AT THE TOTALITY OF THE CIRCUMSTANCES AND

21   THE BADGES OF FRAUD SURROUNDING THE TRANSFERS.

22   AND I'LL CITE TO THE IN RE PEARLMAN DECISION AT

23   460 B.R. 306 (BANKR. M.D. FLA. 2011), AS WELL AS

24   THE VARIOUS BADGES OF FRAUD CONTAINED DIRECTLY IN

25   FLORIDA STATUTE 726.105(2).

1      I'M NOT GOING TO GO DOWN ALL THE BADGES OF

2   FRAUD.  THERE'S NOTHING TERRIBLY UNIQUE ABOUT

3   THEM AND, CERTAINLY, THEY ARE ALL SUFFICIENTLY

4   SATISFIED TO FIND BOTH ACTUAL AND CONSTRUCTIVE

5   FRAUD IN THIS CASE.

6      UNDER § 550 OF THE BANKRUPTCY CODE, ONCE THE

7   TRUSTEE PROVES THAT A TRANSFER IS AVOIDABLE, HE

8   CAN SEEK RECOVERY AGAINST ANY TRANSFEREE.  AND

9   THAT'S THE 11TH CIRCUIT DECISION IN IBT

10  INTERNATIONAL V. NORTHERN, 408 F.3D 689 (2005).

11     AND THAT PROVISION, § 550, IS DESIGNED TO

12  RESTORE THE ESTATE TO THE FINANCIAL CONDITION

13  THAT WOULD HAVE EXISTED HAD THE TRANSFER NEVER

14  OCCURRED.  AGAIN, THAT'S AS STATED BY THE 11TH

15  CIRCUIT IN THE DECISION OF KINGSLEY V. WETZEL,

16  518 F.3D 874 (2008).

17     AND HERE, THE ISSUE IS THE TRANSFER FROM THE

18  JOINT E-TRADING ACCOUNT IN MARCH 2008 -- EXCUSE

19  ME -- 2012 TO THAT IN WHICH ONLY MS. PAK IS THE

20  OWNER, AND WHETHER $128,000 SHOULD BE RETURNED TO

21  THE ESTATE.  AND I WOULD FIND THAT IT SHOULD;

22  THAT THERE WERE -- THAT THE ORIGINAL E-TRADING

23  ACCOUNT ESTABLISHED IN 2008 -- OCTOBER 24, 2008

24  -- WAS JOINTLY OWNED.  THE MONIES WERE JOINTLY

25  OWNED; AND THAT MR. YERIAN WAS THE PRIMARY STOCK

1      TRADER.  PERHAPS MS. PAK HAD SOME INPUT, BUT I

2      WOULD NOT FIND IT TO BE SUBSTANTIAL, ALTHOUGH SHE

3      HAS AND IS ENTITLED AS THE JOINT TENANT WITH

4      RIGHT OF SURVIVORSHIP TO HAVE HALF OF THE MONIES.

5           BUT IT WAS A JOINT GIFT.  IT WAS TO BOTH OF

6      THEM.  THE ACCOUNT WAS JOINT; AND FOR ALL

7      PURPOSES, THERE WERE THOUSANDS OF STOCK TRADES.

8      IT WAS SUCCESSFUL.  IT WENT FROM 70,000 TO

9      257,000 IN ROUGHLY LESS THAN FOUR YEARS.  AND

10     THEN IT WAS AFTER LITIGATION WAS FILED WITH THE

11     ACTUAL INTENT TO DELAY, HINDER, AND DEFRAUD THE

12     PARTIES INVOLVED IN THAT LITIGATION, WAS

13     TRANSFERRED TO AN ACCOUNT IN MS. PAK'S NAME ONLY.

14          THERE WERE NUMEROUS BADGES OF FRAUDS THAT

15     WERE PRESENT.  MS. PAK CLEARLY IS AN INSIDER TO

16     MR. YERIAN AS SHE WAS -- SHE WAS AND IS HIS WIFE.

17     MR. YERIAN CONTROLLED, OPERATED, AND MANAGED THE

18     ACCOUNT PRIOR TO THE TRANSFER IN 2012 AND DID

19     THIS TO TRY TO DIVEST ANY OWNERSHIP INTEREST IN

20     IT IN ORDER TO FRUSTRATE THE LITIGATION.

21          THE MONIES WERE USED, IN LARGE PART --

22     173,000 OR SO OF THE MONIES WERE USED TO PURCHASE

23     A HOME IN FLORIDA.  MR. YERIAN HAS LIVED IN THAT

24     HOME SINCE ITS PURCHASE IN 2012.

25          THERE WAS NO DISCLOSURE OF THIS IN THE

1    BANKRUPTCY OR, TO MY KNOWLEDGE, OTHERWISE

2    EARLIER.  BUT CERTAINLY, THERE WAS AN ATTEMPT TO

3    DISGUISE THE MONIES AND TRANSFER THEM OUT OF THE

4    REACH OF THE LITIGATING PARTIES.  AND AGAIN, THE

5    TRANSFER OCCURRED SHORTLY AFTER -- FOUR MONTHS

6    AFTER THE LAWSUIT WAS FILED AGAINST MR. YERIAN.

7         IN CONNECTION WITH THE FINDING OF

8    CONSTRUCTIVE -- SO I WOULD FIND THERE WAS

9    INTENTIONAL FRAUD IN THE SCHEME TO MOVE THE MONEY

10   AWAY.  BUT FURTHER, THAT THERE WAS REALLY NO

11   DISPUTE THAT THERE WAS NO REASONABLY EQUIVALENT

12   VALUE FOR THE TRANSFER.  THERE WAS NO VALUE

13   RECEIVED BY MR. YERIAN FOR DIVESTING HIS HALF

14   INTEREST IN THE E-TRADING ACCOUNT.

15        SO I WOULD FIND THAT THE TRUSTEE IS ENTITLED

16   TO AVOID THE FRAUDULENT TRANSFER AND RECEIVE A

17   JUDGMENT IN THE AMOUNT OF MR. YERIAN'S INTEREST

18   OF $128,000.

19        THE LAST ISSUE IS WHETHER MR. YERIAN IS

20   ENTITLED TO A DISCHARGE OR NOT; AND THAT'S COUNTS

21   1, 2, AND 3.

22        OBJECTIONS TO DISCHARGE, AS I SAID EARLIER,

23   SHOULD BE LIBERALLY -- SHOULD BE CONSTRUED

24   LIBERALLY IN FAVOR OF THE DEBTOR AND AGAINST THE

25   OBJECTING PARTY, AS THE 11TH CIRCUIT STATED IN

1    2009 IN THE CASE COADY V. D.A.N. JOINT VENTURE,

2    588 F.3D 1312.

3         HOWEVER, THERE ARE RESTRICTIONS, AS THE 11TH

4    CIRCUIT NOTED, CITING IN RE JENNINGS, 533 F.3D

5    1333 (2008), THAT ONLY THOSE THAT ARE HONEST

6    SHOULD RECEIVE THE DISCHARGE.

7         IT IS WITHOUT DOUBT THAT A DEBTOR SEEKING

8    BANKRUPTCY PROTECTION MUST DISCLOSE, WITHOUT

9    REQUEST, IN TRUSTEE INVESTIGATION ALL ASSETS AND

10   INTERESTS BECAUSE ONLY UPON FULL AND COMPLETE

11   DISCLOSURE IS -- WILL THE BANKRUPTCY SYSTEM

12   FUNCTION EFFECTIVELY, AS NOTED IN THE DECISION OF

13   HARTFORD DATA CORP. V. MCCLAIN, 2011 WESTLAW

14   356.3108 DECIDED BY JUDGE BRISKMAN IN THE MIDDLE

15   DISTRICT OF FLORIDA IN 2011.

16        CERTAINLY THE BURDEN OF PROOF IS ON THE

17   OBJECTING PARTY -- HERE, THE TRUSTEE -- WHO MUST

18   ESTABLISH THE PROOF BY A PREPONDERANCE OF THE

19   EVIDENCE, AS THE UNITED STATES SUPREME COURT

20   STATED IN GROGAN V. GARNER, 498 U.S. 279 (1991),

21   AND AS REQUIRED BY FEDERAL RULE OF BANKRUPTCY

22   PROCEDURE 4005.

23        THE REASONS FOR DENYING A DISCHARGE MUST NOT

24   BE PETTY, BUT MUST BE REAL AND SUBSTANTIAL, AND

25   NOT MERELY TECHNICAL OR CONJECTURAL, AS THE 11TH

1   CIRCUIT NOTED IN THE CASE OF EQUITABLE BANK V.

2   MILLER IN 1994 AT 394 F.3D 301.  AND I WOULD FIND

3   THAT UNDER ALL THREE COUNTS THE TRUSTEE HAS MET

4   THE BURDEN AS REQUIRED.

5       § 727(A)(2) PROVIDES THAT THE COURT SHOULD

6   DENY DISCHARGE IF THE DEBTOR, WITH THE INTENT TO

7   HINDER, DELAY, OR DEFRAUD A CREDITOR OF THE

8   ESTATE, HAS TRANSFERRED, REMOVED, DESTROYED,

9   MUTILATED OR CONCEALED PROPERTY OF THE ESTATE,

10  EITHER -- WITHIN ONE YEAR OF THE PETITION.

11      AND IN LOOKING AT THAT ANALYSIS, AND IN

12  CONSIDERATION OF THE 11TH CIRCUIT'S STANDARD IN

13  IN RE JENNINGS (SUPRA), AS WELL AS THE DECISION

14  OF CITRUS CHEMICAL BANK V. FLOYD, 322 B.R. 205

15  (BANKR. M.D. FLA. 2005), THE COURTS ARE

16  ENCOURAGED TO LOOK AT THE DEBTOR'S WHOLE PATTERN

17  OF CONDUCT WHEN DETERMINING WHETHER THE DEBTOR

18  HAS ACTED WITH INTENT TO DEFRAUD OR NOT.

19      UNDER § 727(A)(4)(A), A DISCHARGE SHOULD BE

20  DENIED IF THE DEBTOR KNOWINGLY OR FRAUDULENTLY OR

21  IN OR IN CONNECTION WITH THE CASE MADE A FALSE

22  OATH OR ACCOUNT OR WITHHELD ANY INFORMATION FROM

23  THE TRUSTEE.

24      THE ENTIRE THRUST OF AN OBJECTION TO

25  DISCHARGE IS TO PREVENT KNOWING FRAUD OR PERJURY

1       IN THE BANKRUPTCY COURT AND TO ENCOURAGE FULL AND

2       COMPLETE DISCLOSURE, BUT IT SHOULD NOT BE USED TO

3       PUNISH A DEBTOR FOR MINOR ERRORS.  THAT'S, AGAIN,

4       THE IN RE WILLS, 243 B.R. 58 (9TH CIR. BAP 1999)

5       AND AS CITED BY THE MIDDLE DISTRICT OF FLORIDA IN

6       2005 IN THE CASE OF ROSSI V. DUPREE, 336 B.R.

7       490.

8           TO WARRANT DENIAL OF DISCHARGE UNDER

9       § 527(A)(4)(A), THE DEBTOR'S FALSE OATH OR

10      ACCOUNT, THE OBJECTING PARTY, HERE THE TRUSTEE,

11      MUST PROVE THE FALSE OATH OR ACCOUNT WAS

12      FRAUDULENTLY MADE AND MATERIAL, AS RULED BY THE

13      11TH CIRCUIT IN SWICEGOOD V. GINN, 924 F.2D 230

14      (1991).

15          A FACT IS MATERIAL AND SUFFICIENT TO BAR

16      DISCHARGE IF IT BEARS A RELATIONSHIP TO THE

17      DEBTOR'S BUSINESS TRANSACTIONS OR ESTATE OR

18      CONCERNS THE DISCOVERY OF ASSETS, BUSINESS

19      DEALINGS, OR THE EXISTENCE AND DISPOSITION OF HIS

20      PROPERTY AS DETERMINED BY CHALIK V. MOOREFIELD IN

21      THE 11TH CIRCUIT IN 1984 AT 748 B.R. 616.

22          AND LASTLY, UNDER § 727(A)(5), A DISCHARGE

23      SHOULD BE DENIED IF THE DEBTOR HAS FAILED TO

24      SATISFACTORILY EXPLAIN ANY LOSS OF ASSETS TO MEET

25      THE DEBTOR'S LIABILITY, AS DECIDED BY THE 11TH

1    CIRCUIT IN D.A.N. JOINT VENTURE V. FASOLACK, 381

2    B.R. 781 -- OH, I'M SO SORRY, THAT WAS A MIDDLE

3    DISTRICT OF FLORIDA BANKRUPTCY DECISION IN 2007,

4    BUT IT WAS CITED BY THE 11TH CIRCUIT IN 1995.

5    THAT CAN'T BE.  ANYWAY, I HAVE A WRONG CITE ON

6    THAT ONE.  WE'LL JUST IGNORE THAT ONE.

7         BUT IN ANY EVENT, YOU HAVE TO CERTAINLY JUST

8    SHOW THAT THERE IS A FAILURE TO SATISFACTORILY

9    EXPLAIN THE LOSS OF ASSETS.

10        HERE, AS I'VE STATED EARLIER, I, WITH ALL

11   DUE RESPECT, DID NOT FIND EITHER MS. PAK OR

12   MR. YERIAN'S TESTIMONY CREDIBLE.  THEIR

13   EXPLANATIONS JUST DID NOT RING TRUE AND I DID NOT

14   FIND THEIR TESTIMONY BELIEVABLE.

15        MR. WEBBER HAS DEMONSTRATED NUMEROUS

16   OMISSIONS FROM THE SCHEDULES AND STATEMENTS.  HE

17   FAILED TO LIST THE OBLIGATIONS DUE TO

18   MR. YERIAN'S FORMER WIFE.  THAT IS PARTICULARLY

19   TROUBLING INSOFAR AS SHE WAS THE PARTY IN WHICH

20   THERE WAS A LOT OF LITIGATION AND SIGNIFICANT

21   KNOWLEDGE THAT WOULD HAVE ASSISTED THE TRUSTEE IN

22   THAT AND CERTAINLY WAS REQUIRED TO BE LISTED.

23        THE DEBTOR FAILED TO LIST THE CAR THAT HE

24   IMPROPERLY PURCHASED FROM HIS IRA FUNDS AND HE

25   FAILED TO LIST THE IRA THAT WAS -- OWNED TWO

1    PIECES OF REAL PROPERTY FREE AND CLEAR, AS WELL

2    AS THE TWO CARS THAT WERE REFERENCED.

3        THE DEBTOR ALSO FAILED TO LIST AT LEAST TWO

4    COMPANIES:  I-MOBILE LLC AND B-GLOBAL LLC.  THEY

5    WERE ACTIVE.  THERE WAS NO TESTIMONY THAT THERE

6    WAS ANY SIGNIFICANT ASSETS IN THERE.  AND IF THAT

7    WAS THE ONLY OMISSION, I WOULD NOT HAVE BEEN

8    TROUBLED AS MUCH BY THOSE.  BUT, ESSENTIALLY,

9    WHAT THE DEBTOR DID WAS FAIL TO LIST ANY OF THE

10   VALUABLE ASSETS THAT HE SOMEHOW RETAINED WITHOUT

11   LISTING THEM.

12       I WOULD ALSO PROVIDE THAT THERE WAS EVIDENCE

13   THAT WOULD LEAD ONE TO BELIEVE THAT THE

14   INFORMATION WAS FALSE ON HIS SCHEDULES.  FOR

15   EXAMPLE, MR. YERIAN LISTED A 375-DOLLAR-A-MONTH

16   LIEN ON THE TWO -- ON TWO VEHICLES:  THE 2008

17   SMART CAR PURCHASED WITH THE IRA FUNDS; AND THE

18   1998 BMW OF THE PARTIES.  BUT THERE WAS NO LIEN

19   ON THE TITLE OR REGISTRATION.  IT WAS AN -- IF

20   THERE WAS A LOAN AT ALL, IT WAS UNSECURED; AND

21   LISTING THE MONTHLY LIEN ON THE SCHEDULES WAS

22   INTENDED, I WOULD FIND, TO OBFUSCATE THE TRUE

23   STATUS OF THE DEBT DUE TO THE CREDITOR.

24       I ALSO DO NOT KNOW THE EXACT AMOUNT, BUT I

25   WOULD FIND THAT THE DEBTOR'S DISCLOSURE OF HIS

1    INCOME WAS VASTLY UNDERSTATED.  AND WHILE THE

2    EVIDENCE DID NOT SHOW THE EXACT AMOUNT OF THE

3    INCOME HE RECEIVED EITHER PRE-PETITION OR

4    POST-PETITION UNDER HIS SCHEDULES I AND J, I

5    WOULD FIND THAT IT WAS SUBSTANTIALLY UNDERSTATED

6    AND, AGAIN, INTENDED TO MAKE THE TRUSTEE'S JOB

7    DIFFICULT AND WAS INACCURATE -- AND KNOWINGLY

8    INACCURATE.  AND THAT'S -- ANY COURT REVIEWING

9    THIS, I WOULD ENCOURAGE THEM TO LOOK AT TRUSTEE'S

10   EXHIBIT NO. 22.

11       THE EXPLANATION BY MR. YERIAN FOR THESE

12   OMISSIONS AND FALSE STATEMENTS IN HIS SCHEDULES

13   AND STATEMENTS WAS THAT HE DID SEND THE

14   INFORMATION TO HIS PRIOR LAWYER AND THAT THE

15   LAWYER JUST SIMPLY DID NOT COMPLETE THE SCHEDULES

16   RIGHT.  AND THAT'S DEFENDANT'S EXHIBIT NO. 1.

17       I LOOKED AT THE EMAIL AND I ADMITTED THAT

18   EXHIBIT OVER THE TRUSTEE'S OBJECTION AS HEARSAY

19   -- AND IT IS HEARSAY.  BUT IN LOOKING AT IT, I

20   COULD FIND NOTHING THAT WOULD SUBSTANTIATE THAT

21   THE ATTORNEY ACTUALLY RECEIVED ANY OF THAT

22   INFORMATION.  THERE WAS NO TRANSMITTAL DOCUMENT.

23   THERE WAS THE EMAIL, BUT NOTHING IN THE WORKSHEET

24   ATTACHED TO THE EMAIL INDICATED ANY TRANSMITTAL.

25   THE ATTORNEY AND HIS STAFF PERSON DID NOT TESTIFY

1    THAT THEY RECEIVED IT.  AND I DON'T KNOW THAT

2    THEY -- I CAN'T FIND THAT THEY EVER RECEIVED IT.

3          AND, AGAIN, I DON'T -- I JUST DON'T FIND

4    MR. YERIAN'S TESTIMONY CREDIBLE TO OVERCOME THE

5    ASSUMPTION.  I DON'T KNOW IF THE WORKSHEET WAS

6    PROVIDED BEFORE THE BANKRUPTCY WAS FILED OR WAS

7    CREATED AFTER THE BANKRUPTCY WAS FILED, BUT IT

8    WAS -- THERE WAS NOTHING SUBSTANTIATING THE

9    TRANSMISSION TO THE ATTORNEY THAT I COULD FIND

10   CREDIBLE.

11         SO THE ORIGINAL SCHEDULES AS FILED BY

12   MR. YERIAN LISTED APPROXIMATELY $57,000 OF

13   ASSETS.  HOWEVER, DURING AND AFTER THE 341

14   MEETING, WHICH OCCURRED ON APRIL 9TH, 2015, WE'VE

15   LEARNED THAT THE DEBTOR HAD WELL OVER $400,000 OF

16   ASSETS.

17         SO I WOULD FIND THAT THERE WERE SUFFICIENT

18   FALSEHOODS IN THE STATEMENTS AND SCHEDULES TO

19   JUSTIFY DENIAL OF THE DISCHARGE.  UNDER

20   § 727(A)(5) I FURTHER WOULD FIND THAT THE TRUSTEE

21   HAS PROVEN THAT THERE WAS A TRANSFER OF NOT JUST

22   THE $173,000 THAT WAS DEMONSTRATED TO GO INTO THE

23   FLORIDA HOME FROM THE JOINT E-TRADING ACCOUNT,

24   BUT THAT THERE WAS $81,000 ALSO TRANSFERRED THAT

25   IS NOW JUST GONE; AND THAT HE ESTABLISHED THE

1    TRANSFER BUT THAT THERE'S NO CREDIBLE EXPLANATION

2    OF WHERE THOSE MONIES WENT.  THIS IS SEPARATE

3    JUSTIFICATION FOR DENIAL OF THE DISCHARGE.

4         AND LASTLY, THAT MR. YERIAN -- LET'S SEE --

5    THAT MR. YERIAN ACTED WITH FRAUDULENT INTENT IN

6    FILING HIS BANKRUPTCY SCHEDULES.  HE DID NOT

7    DISCLOSE HIS INTERESTS IN THE NON-EXEMPT IRA, HIS

8    CAR, THE VARIOUS CREDITORS; AND HE DID SO WITH

9    THE INTENT TO MISLEAD HIS CREDITORS AND THE

10   TRUSTEE WITH THE SOURCE OF HIS INCOME AND ASSETS.

11        SO IN THE END I WILL CONCLUDE THAT THE

12   DEBTOR IS NOT ENTITLED TO THE DISCHARGE.

13        THE REMAINING COUNTS 7, 8, 9, AND 10 ARE

14   EITHER WITHDRAWN, DISMISSED, OR MOOT AT THIS

15   POINT.  SO I WOULD ASK FOR THE TRUSTEE TO SUBMIT

16   AN ORDER -- OR, JUDGMENT THAT SIMPLY DENIES THE

17   DISCHARGE AND FINDS, IN THE ADVERSARY PROCEEDING,

18   AVOIDS THE TRANSFER, AND THEN IN THE MAIN CASE

19   SUSTAINS THE OBJECTION TO THE EXEMPTION AND FINDS

20   THE IRA NON-EXEMPT AS OF JANUARY 1, 2014.

21        ANY QUESTIONS?  ANYTHING I CAN EXPLAIN

22   FURTHER?  IF I MISSED SOMETHING, LET ME KNOW.  IF

23   I MISSTATED ANYTHING, LET ME KNOW.  ANYTHING?

24        SPEAKER:  NO, YOUR HONOR.

25        THE COURT:  VERY GOOD.  THANK YOU.  COURT IS

1       IN RECESS.

2           (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED

3       AT 1:14 P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OATH

2    STATE OF FLORIDA

3    COUNTY OF ORANGE

4

5        I, SANDRA A. MOSER, NOTARY PUBLIC, CERTIFY THAT I

6    WAS AUTHORIZED TO AND MY OFFICE DID TRANSCRIBE, FROM

7    CD-R, THE FOREGOING PROCEEDINGS AND THAT THE

8    TRANSCRIPT IS A TRUE RECORD.

9        I FURTHER CERTIFY THAT I AM NOT A RELATIVE,

10   EMPLOYEE, ATTORNEY OF COUNSEL OF ANY OF THE PARTIES,

11   NOR AM I FINANCIALLY INTERESTED IN THE ACTION.

12       DATED THIS 6TH DAY OF MARCH 2017.

13

14

15       _____

16       SANDRA A. MOSER, RPR, FPR
         NOTARY PUBLIC - STATE OF FLORIDA
17       MY COMMISSION NO. FF113959
         MY COMMISSION EXPIRES:  5/6/2018
18

19

20

21

22

23

24

25

              REALTIME REPORTERS, INC.   407-884-4662
                     REALTIMERPRS@GMAIL.COM

**$**
**$128,000 [2]**   23/20 23/16
**$173,000 [1]**   13/23 32/22
**$250,000 [1]**   11/22
**$256,000 [1]**   5/23
**$400,000 [1]**   32/15
**$50,000 [1]**   10/17
**$57,000 [1]**   32/12
**$70,000 [4]**   10/21 11/22 12/14
  12/17
**$8,000 [1]**   15/20
**$81,000 [1]**   14/1 14/4 14/11
  32/24

**0**
**01720 [1]**   1/5

**1**
**10 [5]**   6/9 6/23 6/24 7/5
  33/13
**10,000 [1]**   10/20
**105 [1]**   18/8
**11 [3]**   12/5 12/12 21/25
**11:20 [1]**   4/18
**11TH [14]**   17/23 18/1 18/2
  18/20 23/9 23/14 25/25 26/3
  26/25 27/12 28/13 28/21
  28/25 29/4
**12 [1]**   12/12
**12:32 [1]**   1/19
**12TH [1]**   5/4
**13 [1]**   10/14
**1312 [1]**   26/2
**1333 [1]**   26/5
**14 [1]**   1/18
**15 [1]**   12/13
**15–64 [2]**   5/2 16/6
**16 [2]**   9/14 11/18
**1720 [1]**   4/3
**173,000 [1]**   24/22
**1877 [1]**   18/8
**1971 [1]**   17/18
**1984 [1]**   28/21
**1991 [2]**   26/20 28/14
**1994 [1]**   27/2
**1995 [1]**   29/4
**1996 [1]**   8/12
**1998 [1]**   30/18
**1999 [1]**   28/4
**1:14 [2]**   1/19 34/3

**2**
**2003 [1]**   8/16
**2004 [2]**   8/22 9/4
**2005 [3]**   23/10 27/15 28/6
**2007 [1]**   29/3
**2008 [13]**   8/23 9/6 10/10
  10/17 10/23 11/10 11/19
  23/16 23/18 23/23 23/23 26/5
  30/16
**2009 [2]**   10/20 26/1
**2010 [1]**   9/6
**2011 [7]**   9/14 9/18 18/4
  19/11 22/23 26/13 26/15
**2012 [12]**   10/7 11/19 11/24
  11/24 12/6 13/21 13/21 14/17
  22/9 23/19 24/18 24/24
**2014 [7]**   15/23 16/3 20/19
  21/5 21/19 22/3 33/20
**2015 [3]**   9/25 16/5 32/14
**2017 [2]**   1/18 35/12
**2018 [1]**   35/17
**205 [1]**   27/17

**2**
**210 [1]**   18/8
**22 [1]**   9/15
**220 [1]**   31/10
**222.21 [1]**   17/4
**222.212 [1]**   19/22
**230 [1]**   28/13
**23RD [2]**   10/16 11/15
**24 [1]**   23/23
**243 [1]**   28/4
**24TH [1]**   11/16
**257,000 [1]**   24/9
**26 [1]**   8/18
**27 [3]**   8/18 9/25 16/5
**279 [1]**   26/20
**2D [1]**   18/8
**2ND [1]**   10/19

**3**
**301 [1]**   27/2
**306 [1]**   22/23
**30TH [1]**   5/3
**31 [2]**   14/22 15/1
**322 [1]**   27/14
**32801 [1]**   1/21
**336 [1]**   28/6
**341 [1]**   32/13
**356.3108 [1]**   26/14
**375-DOLLAR-A-MONTH [1]**   30/15
**381 [1]**   29/1
**394 [1]**   27/2

**4**
**400 [1]**   1/20
**4005 [1]**   26/22
**402 [1]**   17/17
**408 [3]**   18/23 20/8 23/10
**424 [1]**   18/3
**446 [1]**   19/11
**460 [1]**   22/23
**490 [1]**   28/7
**498 [1]**   26/20

**5**
**5/6/2018 [1]**   35/17
**518 [1]**   23/16
**522 [2]**   19/16 22/2
**527 [1]**   28/9
**533 [1]**   26/4
**544 [1]**   22/1
**550 [3]**   6/2 23/6 23/11
**58 [1]**   28/4
**588 [1]**   26/2

**6**
**601 [1]**   19/11
**616 [1]**   28/21
**637 [1]**   17/18
**64 [2]**   5/2 16/6
**689 [1]**   23/10
**6:15-AP-00064-KSJ [1]**   1/10
**6:15-BK-01720 [1]**   1/5
**6TH [1]**   35/12

**7**
**70,000 [1]**   24/8
**7052 [1]**   5/9
**718 [1]**   22/2
**726.105 [1]**   22/25
**726.108 [1]**   21/23
**727 [5]**   5/19 27/5 27/19
  28/22 32/20
**748 [1]**   28/21
**78 [1]**   4/25
**781 [1]**   29/2
**7TH [1]**   10/19

**8**
**84 [1]**   4/25
**874 [1]**   23/16
**880 [1]**   18/4

**9**
**924 [1]**   28/13
**9TH [2]**   28/4 32/14

**A**
**ABILITY [1]**   17/2
**ABOUT [3]**   4/18 16/20 23/2
**ABSOLUTELY [1]**   14/15
**ACCORDANCE [4]**   19/5 19/24
  20/2 20/7
**ACCOUNT [40]**
**ACCOUNTING [2]**   6/10 6/21
**ACT [1]**   21/8
**ACTED [2]**   27/18 33/5
**ACTION [4]**   6/8 7/7 22/8
  35/11
**ACTIONS [1]**   5/17
**ACTIVE [4]**   8/7 8/17 8/21
  30/5
**ACTUAL [4]**   22/11 22/18 23/4
  24/11
**ACTUALLY [1]**   31/21
**ADDITION [1]**   22/5
**ADDRESS [2]**   10/3 17/12
**ADMITTED [1]**   31/17
**ADULT [1]**   8/6
**ADVERSARY [4]**   4/4 5/2 16/6
  33/17
**ADVISEMENT [1]**   5/5
**AFFECTED [1]**   9/7
**AFTER [15]**   4/23 9/14 10/7
  12/3 12/7 12/23 13/19 15/16
  16/21 16/25 24/10 25/5 25/6
  32/7 32/13
**AFTERNOON [2]**   4/9 4/14
**AFTR [1]**   18/8
**AGAIN [8]**   4/17 14/10 15/4
  23/14 25/4 28/3 31/6 32/3
**AGAINST [4]**   12/4 23/8 25/6
  25/24
**AGREEMENT [1]**   14/21
**AGREES [1]**   12/14
**AL [1]**   1/13
**ALL [11]**   4/3 4/4 20/22 20/24
  23/1 23/3 24/6 26/9 27/3
  29/10 30/20
**ALLEGATION [1]**   11/1
**ALLEGED [1]**   5/21
**ALMOST [2]**   10/15 12/7
**ALREADY [1]**   18/15
**ALSO [10]**   2/7 8/14 9/4 14/20
  19/12 22/6 30/3 30/12 30/24
  32/24
**ALTERNATIVELY [1]**   22/13
**ALTHOUGH [2]**   19/12 24/2
**AM [5]**   7/24 7/24 7/25 35/9
  35/11
**AMBIGUITY [2]**   19/15 19/15
**AMBIGUOUS [1]**   12/9
**AMENDED [1]**   5/1
**AMOUNT [5]**   10/17 11/21 25/17
  30/24 31/2
**ANALYSIS [1]**   27/11
**ANDERSON [2]**   2/4 4/15
**ANY [23]**   6/15 6/19 8/19 8/20
  9/9 11/10 11/12 16/24 17/8
  17/9 22/12 23/8 24/19 27/22
  28/24 29/7 30/6 30/9 31/8

**A**

AMT... [4]   31/21 31/24 33/21
35/10
ANYTHING [3]   33/21 33/23
33/23
ANYWAY [2]   18/16 29/5
AP [1]   1/10
APOLOGIZE [1]   4/19
APPEARANCES [1]   4/5
APPENDIX [1]   18/4
APPLYING [1]   16/21
APPROPRIATE [2]   5/11 16/16
APPROXIMATELY [3]   5/22 5/22
32/12
APRIL [1]   32/14
ARE [23]   4/7 4/22 5/15 7/5
7/14 7/14 7/19 8/15 8/16
8/21 11/11 16/10 16/23 17/10
19/10 19/13 19/18 20/24 23/3
26/3 26/5 27/15 33/13
ARGUED [1]   18/16
ARGUES [2]   16/17 17/6
ARGUMENT [1]   17/1
ARGUMENTS [2]   16/18 16/23
AROUND [1]   9/25
AS [48]
ASK [2]   6/13 33/15
ASSETS [14]   8/20 14/18 17/10
19/1 20/17 26/9 28/18 28/24
29/9 30/6 30/10 32/13 32/16
33/10
ASSISTED [1]   29/21
ASSUME [1]   7/5
ASSUMPTION [1]   32/5
AT [22]   4/11 5/5 7/6 10/22
18/3 18/8 20/11 21/25 22/4
22/20 22/22 27/2 27/11 27/16
28/21 30/3 30/20 31/9 31/17
31/19 33/14 34/3
ATTACHED [1]   31/24
ATTEMPT [1]   25/2
ATTORNEY [6]   4/6 4/15 31/21
31/25 32/9 35/10
AUTHORITY [1]   19/2
AUTHORIZED [1]   35/6
AVOID [4]   6/4 8/1 22/1 25/16
AVOIDABLE [1]   23/7
AVOIDANCE [1]   6/1
AVOIDED [1]   22/17
AVOIDS [1]   33/18
AWAY [3]   6/21 7/1 25/10

**B**

B-GLOBAL [2]   8/15 30/4
B.R [8]   19/11 22/2 22/23
27/14 28/4 28/6 28/21 29/2
BACK [1]   20/5
BADGES [4]   22/21 22/24 23/1
24/14
BANK [2]   27/1 27/14
BANKR [3]   22/2 22/23 27/15
BANKRUPTCY [21]   1/3 1/20 5/9
5/20 6/2 7/13 17/15 18/5
18/16 18/21 18/24 23/6 25/1
26/8 26/11 26/21 28/1 29/3
32/6 32/7 33/6
BAP [1]   28/4
BAR [1]   28/15
BASE [2]   9/13 9/17
BASIS [1]   14/16
BATED [1]   7/22
BAY [2]   15/15 15/15

BE [16]   7/11 7/17 20/11 21/6
22/16 23/20 23/23 25/23 27/23
29/24 26/24 27/19 28/2 28/23
29/5 29/22
BEACH [2]   15/13 15/13
BEARS [1]   28/16
BECAUSE [8]   5/12 7/1 8/2 17/7
19/21 20/24 21/14 26/10
BEEN [3]   8/6 14/14 30/7
BEFORE [4]   1/17 6/12 7/4
32/6
BEG [1]   5/11
BEGINNING [1]   20/12
BEHALF [2]   2/2 2/4
BEING [2]   10/15 12/2
BELIEFS [1]   13/2
BELIEVABLE [1]   29/14
BELIEVE [1]   30/13
BEST [1]   5/14
BETTER [1]   8/4
BETWEEN [3]   9/11 10/5 11/19
BINDING [1]   17/23
BK [1]   1/5
BMW [1]   30/18
BOTH [4]   10/22 18/20 23/4
24/5
BOUGHT [1]   21/12
BRADLEY [2]   2/4 4/15
BREATH [1]   7/22
BRISKMAN [1]   26/14
BURDEN [4]   17/16 19/8 26/16
27/4
BUSINESS [6]   8/20 8/21 9/10
9/13 28/17 28/18
BUSINESSES [1]   9/7
BUSINESSMAN [1]   8/7
BUSINESSPERSON [1]   11/7
BUT [35]   5/13 6/18 6/23 7/3
7/20 8/10 8/21 9/2 10/25
12/10 14/8 14/15 15/3 15/20
16/21 17/23 18/16 19/2 21/1
24/1 24/5 25/2 25/10 26/24
28/2 29/4 29/7 30/8 30/18
30/24 31/19 31/23 32/7 32/24
33/1
BUY [2]   15/9 15/12

**C**

CALLED [2]   8/12 9/16
CALLS [1]   4/2
CAME [1]   10/13
CAMERON [1]   22/2
CAMPBELL [1]   17/17
CAN [4]   17/4 20/4 23/8 33/21
CAN'T [5]   21/2 21/8 21/12
29/5 32/2
CAR [3]   29/23 30/17 33/8
CARS [3]   15/9 21/12 30/2
CASE [11]   1/5 4/2 5/1 13/15
16/4 23/5 26/1 27/1 27/21
28/6 33/18
CASES [1]   22/19
CATEGORIES [1]   7/19
CD [1]   35/7
CD-R [1]   35/7
CEASES [1]   20/11
CERTAINLY [11]   8/6 8/24 9/6
19/7 19/13 22/7 23/3 25/2
26/16 29/7 29/22
CERTIFICATE [2]   3/8 35/1
CERTIFY [2]   35/5 35/9
CHALIK [1]   28/20
CHAPTER [8]   2/5 2/6 4/10 4/15

4/17 9/24 16/4 18/10
CHEMICAL [1]   27/11
CHILDHOOD [1]   9/2
CIR [1]   28/4
CIRCUIT [13]   17/24 18/1 18/2
18/20 23/9 23/15 25/25 26/4
27/1 28/13 28/21 29/1 29/4
CIRCUIT'S [1]   27/12
CIRCUMSTANCES [1]   22/20
CITE [2]   22/22 29/5
CITED [3]   19/20 28/5 29/4
CITING [1]   26/4
CITRUS [1]   27/14
CLAIM [1]   22/6
CLAIMED [1]   19/10
CLAIMING [1]   20/4
CLASSES [1]   4/12
CLEAR [3]   13/10 20/5 30/1
CLEARLY [3]   15/6 20/14 24/15
CO [2]   5/25 8/23
CO-DEFENDANT [2]   5/25 8/23
COADY [1]   26/1
CODE [6]   5/20 6/2 7/14 18/24
20/9 23/6
CODES [1]   19/5
COME [1]   4/5
COMES [1]   18/4
COMMISSION [2]   35/17 35/17
COMPANIES [1]   30/4
COMPANY [2]   8/12 15/12
COMPLAINT [2]   5/2 5/16
COMPLETE [3]   26/10 28/2 31/15
COMPUTER [1]   8/8
COMPUTERS [5]   8/13 9/3 9/8
9/14 9/18
CONCEALED [1]   27/9
CONCERNS [1]   28/18
CONCLUDE [1]   33/11
CONCLUDED [2]   15/22 34/2
CONCLUSION [1]   7/22
CONCLUSIONS [2]   3/2 5/8
CONDITION [1]   23/12
CONDUCT [1]   27/17
CONFIRM [1]   11/4
CONFIRMED [1]   10/24
CONFUSED [1]   6/14
CONJECTURAL [1]   26/25
CONNECTION [6]   4/22 8/5 17/21
21/20 25/7 27/21
CONSIDERATION [1]   27/12
CONSIDERED [1]   5/6
CONSTRUCTIVE [2]   23/4 25/8
CONSTRUCTIVELY [1]   22/13
CONSTRUED [2]   19/13 25/23
CONTAINED [1]   22/24
CONTEND [1]   13/14
CONTENDED [1]   14/15
CONTENTIONS [1]   10/4
CONTRARY [1]   12/15
CONTROLLED [2]   13/4 24/17
CONTROLS [1]   19/23
CONTROVERSIAL [1]   17/18
CORP [1]   26/13
CORPORATION [2]   6/6 9/15
CORPORATIONS [2]   8/14 8/21
COULD [2]   31/20 32/9
COULDN'T [1]   6/19
COUNSEL [2]   4/11 35/10
COUNT [6]   6/1 6/9 6/16 6/16
6/23 6/24
COUNTRY [1]   9/8
COUNTS [14]   3/6 5/15 5/17
5/20 6/2 6/3 6/4 6/5 6/14

## C

**COUNTS [1]** 7/5 21/20 23/20 27/3 33/13
**COUNTY [1]** 35/3
**COUPLE [3]** 11/25 12/21 15/8
**COURT [27]** 1/3 1/20 3/3 3/4 3/6 3/7 4/2 6/7 7/7 9/23 12/6 13/13 15/3 17/2 17/4 18/6 18/8 18/17 18/20 18/21 18/22 18/25 26/19 27/5 28/1 31/8 33/25
**COURT'S [1]** 13/2
**COURTS [2]** 18/5 27/15
**CREATED [3]** 14/20 16/25 32/7
**CREATION [2]** 14/24 15/17
**CREDENCE [1]** 11/3
**CREDIBILITY [1]** 13/17
**CREDIBLE [7]** 12/25 14/16 21/11 29/12 32/4 32/10 33/1
**CREDIBLY [1]** 21/16
**CREDITOR [5]** 21/24 21/25 22/12 27/7 30/23
**CREDITORS [3]** 22/5 33/8 33/9
**CURRENTLY [1]** 8/10
**CUSTOMER [2]** 9/17 9/21
**CUSTOMERS [1]** 9/13

## D

**D.A.N [2]** 26/1 29/1
**DATA [1]** 26/13
**DATE [1]** 1/18
**DATED [1]** 35/12
**DAY [2]** 11/16 35/12
**DEALINGS [1]** 28/19
**DEBORAH [8]** 8/11 9/12 10/1 10/1 10/6 12/4 15/5 22/5
**DEBT [1]** 30/23
**DEBTOR [36]**
**DEBTOR'S [9]** 4/25 6/1 16/23 19/9 27/16 28/9 28/17 28/25 30/25
**DEBTORS [1]** 17/19
**DECEMBER [1]** 5/4
**DECIDED [3]** 18/4 26/14 28/25
**DECISION [10]** 13/15 18/2 18/3 18/8 22/22 23/9 23/15 26/12 27/13 29/3
**DEFENDANT [2]** 5/25 8/23
**DEFENDANT'S [2]** 11/18 31/16
**DEFENDANTS [1]** 1/14
**DEFENDANTS' [2]** 12/5 12/12
**DEFICIENCY [1]** 22/6
**DEFRAUD [4]** 22/12 24/11 27/7 27/18
**DELAY [4]** 4/20 22/12 24/11 27/7
**DEMONSTRATED [3]** 11/10 29/15 32/22
**DENIAL [4]** 3/7 28/8 32/19 33/3
**DENIED [2]** 27/20 28/23
**DENIES [1]** 33/16
**DENY [4]** 5/17 6/3 7/24 27/6
**DENYING [1]** 26/23
**DEPOSITED [4]** 14/2 14/4 14/25 15/2
**DESERVE [1]** 17/20
**DESIGNED [1]** 23/11
**DESTROYED [1]** 27/8
**DETAIL [1]** 10/3
**DETERMINE [5]** 17/2 17/25 18/18 18/25 19/4

**DETERMINED [3]** 18/15 18/22 28/20
**DETERMINING [2]** 22/16 27/17
**DID [18]** 6/12 11/4 13/10 18/14 21/4 21/11 24/18 29/11 29/13 29/15 30/9 31/2 31/13 31/15 31/25 33/6 33/8 35/6
**DIDN'T [4]** 6/18 6/23 8/18 11/2
**DIFFICULT [1]** 31/7
**DIRECTED [4]** 14/21 15/21 18/12 21/3
**DIRECTLY [1]** 22/24
**DIRECTS [1]** 17/24
**DISCHARGE [20]** 3/7 5/18 6/4 7/9 7/24 16/15 15/20 25/22 26/6 26/23 27/6 27/19 27/25 28/8 28/16 28/22 32/19 33/3 33/12 33/17
**DISCHARGES [2]** 17/19 17/20
**DISCLOSE [3]** 17/10 26/8 33/7
**DISCLOSURE [4]** 24/25 26/11 28/2 30/25
**DISCOVERY [1]** 28/18
**DISCUSS [1]** 6/18
**DISGUISE [2]** 18/13 25/3
**DISMISS [1]** 6/23
**DISMISSED [5]** 6/10 6/22 6/24 7/6 33/14
**DISPOSITION [1]** 28/19
**DISPUTE [3]** 9/9 15/8 25/11
**DISPUTES [2]** 10/2 11/1
**DISQUALIFIED [3]** 15/25 20/16 20/18
**DISTRICT [10]** 1/3 18/6 18/6 18/7 18/7 18/20 18/22 26/15 28/5 29/3
**DIVEST [1]** 24/19
**DIVESTING [1]** 25/13
**DIVIDE [1]** 7/8
**DIVISION [1]** 1/4
**DIVORCED [1]** 8/22
**DO [10]** 5/11 5/13 15/8 17/4 17/20 19/2 21/2 21/7 21/12 30/24
**DOCKET [1]** 4/18
**DOCUMENT [3]** 12/9 12/23 31/22
**DOCUMENTS [2]** 4/25 11/11
**DOES [1]** 7/8
**DOLLAR [1]** 30/15
**DON'T [10]** 7/20 9/8 14/13 15/14 17/19 20/23 32/1 32/3 32/3 32/5
**DONE [1]** 4/18
**DOUBT [1]** 26/7
**DOWN [1]** 23/1
**DOWNTURN [1]** 9/10
**DRACONIAN [1]** 21/5
**DUE [3]** 29/11 29/17 30/23
**DUPREE [1]** 28/6
**DURING [5]** 9/3 11/18 13/9 15/23 32/13

## E

**E-TRADE [6]** 10/21 12/1 12/15 12/18 13/23 17/6
**E-TRADING [16]** 5/24 7/10 10/12 10/13 11/17 13/3 13/20 14/2 14/19 14/20 16/12 21/22 23/18 23/22 25/14 32/23
**EACH [2]** 10/20 17/12
**EARLIER [4]** 16/7 25/2 25/22 29/10

**EARLY [1]** 9/1
**EDUCATION [1]** 9/1
**EFFECT [2]** 16/16 21/5
**EFFECTIVELY [1]** 26/12
**EFFECTUATED [2]** 13/8 13/9
**EITHER [7]** 7/5 8/20 22/16 27/10 29/11 31/3 33/14
**EMAIL [3]** 31/17 31/23 31/24
**EMPLOYEE [1]** 35/10
**EMPLOYMENT [1]** 8/25
**ENCOUNTERED [1]** 4/20
**ENCOURAGE [2]** 28/1 31/9
**ENCOURAGED [1]** 27/16
**ENCOURAGES [1]** 21/7
**END [2]** 16/22 33/11
**ENGAGES [1]** 20/10
**ENTIRE [1]** 27/24
**ENTIRELY [1]** 9/17
**ENTITLED [4]** 24/3 25/15 25/20 33/12
**EQUALLY [1]** 12/19
**EQUITABLE [1]** 27/1
**EQUIVALENT [2]** 22/14 25/11
**ERA [1]** 13/20
**ERROR [1]** 21/14
**ERRORS [1]** 28/3
**ESQUIRE [3]** 2/2 2/4 2/6
**ESSENTIALLY [3]** 20/25 21/2 30/8
**ESTABLISH [1]** 26/18
**ESTABLISHED [3]** 14/10 23/23 32/25
**ESTABLISHING [1]** 19/8
**ESTATE [7]** 15/11 15/13 23/12 23/21 27/8 27/9 28/17
**ET [1]** 1/13
**ETC [7]** 8/13 9/2 9/8 9/14 9/18 9/20 9/22
**EVEN [3]** 11/4 13/4 15/20
**EVENT [1]** 29/7
**EVER [1]** 32/2
**EVERY [3]** 13/7 13/8 13/14
**EVERYONE [3]** 4/20 8/3 12/14
**EVIDENCE [6]** 8/18 9/19 19/9 26/19 30/12 31/2
**EXACT [2]** 30/24 31/2
**EXAMPLE [1]** 30/15
**EXCHANGE [1]** 22/15
**EXCLUSIVELY [1]** 13/16
**EXCUSE [5]** 10/1 13/20 14/4 15/15 23/18
**EXEMPT [21]** 7/13 7/25 15/7 16/2 16/11 17/3 17/3 18/15 18/18 19/1 19/19 19/23 19/24 20/8 20/11 20/23 21/3 21/4 21/19 33/7 33/20
**EXEMPTION [6]** 7/12 16/7 17/22 19/17 20/4 33/19
**EXEMPTIONS [4]** 4/24 17/14 19/10 19/13
**EXHIBIT [16]** 8/18 10/14 11/12 11/18 11/24 12/1 12/5 12/12 12/13 13/24 14/22 15/1 20/21 31/10 31/16 31/18
**EXHIBITS [2]** 5/6 14/22
**EXISTED [1]** 23/13
**EXISTENCE [1]** 28/19
**EXPENSES [1]** 14/7
**EXPERIENCE [2]** 11/9 11/12
**EXPERT [2]** 14/23 20/21
**EXPERTISE [1]** 13/7
**EXPIRES [1]** 35/11
**EXPLAIN [4]** 5/14 28/24 29/9

## E

EXPLAIN [1]   35/21
EXPLAINED [3]   19/22 20/24
21/16
EXPLAINS [1]   19/12
EXPLANATION [4]   20/20 21/11
31/11 33/1
EXPLANATIONS [1]   29/13
EXTENT [1]   19/18
EXTRA [1]   14/1

## F

F.2D [1]   28/13
F.3D [5]   23/10 23/16 26/2
26/4 27/2
FACT [3]   3/2 5/8 28/15
FACTS [2]   7/16 8/5
FAIL [1]   30/9
FAILED [5]   28/23 29/17 29/23
29/25 30/3
FAILURE [3]   17/10 22/14 29/8
FALSE [5]   27/21 28/9 28/11
30/14 31/12
FALSEHOODS [1]   32/18
FASOLACK [1]   29/1
FAVOR [2]   19/14 25/24
FAVORABLE [1]   7/23
FEBRUARY [4]   1/18 9/14 9/24
16/5
FED [1]   18/4
FEDERAL [1]   26/21
FF113959 [1]   35/17
FILED [9]   5/2 12/3 16/4 16/5
24/10 25/6 32/6 32/7 32/11
FILING [2]   9/24 33/6
FINALLY [1]   17/9
FINANCIAL [1]   23/12
FINANCIALLY [1]   35/11
FIND [26]   7/17 7/25 11/7
11/14 12/15 13/1 13/17 21/11
22/15 23/4 23/21 24/2 25/8
25/15 27/2 29/11 29/14 30/22
30/25 31/5 31/20 32/2 32/3
32/9 32/17 32/20
FINDING [1]   25/7
FINDINGS [2]   3/2 5/8
FINDS [2]   33/17 33/19
FINISHED [1]   5/4
FIRST [4]   5/16 10/15 16/23
17/21
FL [1]   1/21
FLA [4]   19/11 22/3 22/23
27/15
FLORIDA [20]   1/3 9/4 13/22
13/25 15/14 17/3 18/6 18/7
19/21 19/22 21/22 21/23
22/25 24/23 26/15 28/5 29/3
32/23 35/2 35/16
FLOYD [1]   27/14
FOLLOWING [1]   5/8
FOREGOING [1]   35/7
FORM [1]   14/18
FORMER [3]   8/11 9/12 29/18
FORWARD [1]   4/5
FOUL [1]   17/11
FOUR [4]   12/3 12/7 24/9 25/5
FPR [1]   35/16
FRANK [2]   2/2 4/6
FRAUD [6]   22/21 22/24 23/2
23/5 25/9 27/25
FRAUDS [1]   24/14
FRAUDULENT [14]   5/21 6/6 7/10

8/1 16/12 17/7 21/21 22/1
22/8 22/16 22/13 25/16 25/17
35/5
FRAUDULENTLY [2]   27/20 28/12
FREE [1]   30/1
FREEZE [1]   6/9
FRESH [1]   17/16
FRUSTRATE [1]   24/20
FULL [2]   26/10 28/1
FUNCTION [1]   26/12
FUND [1]   19/18
FUNDED [1]   12/14
FUNDS [7]   13/22 14/25 18/11
19/17 19/18 29/24 30/17
FURTHER [6]   6/15 7/7 25/10
32/20 33/22 35/9

## G

GARNER [1]   26/20
GENERAL [1]   7/19
GET [1]   17/19
GETTING [1]   4/21
GIFT [3]   12/17 12/21 24/5
GINN [1]   28/13
GIVE [1]   11/2
GLOBAL [2]   8/15 30/4
GO [2]   23/1 32/22
GOES [2]   14/23 20/22
GOING [10]   7/16 7/21 7/24
7/24 8/1 10/3 10/9 16/21
17/13 23/1
GONE [1]   32/25
GOOD [4]   4/9 4/14 16/18
33/25
GOVERNING [1]   20/3
GRANT [1]   21/17
GROGAN [1]   26/20

## H

HAD [15]   8/11 8/14 9/2 11/6
11/8 12/9 13/6 16/18 17/8
18/10 18/17 22/7 23/13 24/1
32/15
HALF [2]   24/4 25/13
HAND [1]   11/8
HAPPENED [5]   4/19 9/13 20/25
21/8 21/10
HARM [1]   17/10
HARTFORD [1]   26/13
HAS [14]   4/20 7/12 8/6 8/24
10/2 19/8 24/3 24/23 27/3
27/8 27/18 28/23 29/15 32/21
HAVE [20]   4/10 5/5 6/3 6/24
6/25 11/6 13/3 13/16 14/14
16/20 19/2 19/3 22/4 22/19
23/13 24/4 29/5 29/7 29/21
30/7
HE [14]   8/7 8/9 11/5 11/7
23/7 29/16 29/23 29/24 30/10
31/3 31/13 32/25 33/6 33/8
HE'S [1]   4/11
HEARING [1]   1/16
HEARSAY [2]   31/18 31/19
HELD [2]   5/3 7/11
HELPS [1]   8/2
HER [2]   10/2 13/15
HERE [13]   4/11 4/22 13/3
18/9 19/7 19/15 20/14 21/8
22/4 23/17 26/17 28/10 29/10
HIGH [1]   9/1
HINDER [3]   22/11 24/11 27/7
HIS [24]   4/12 8/6 8/9 8/11
9/12 16/1 20/16 20/18 21/2

24/16 25/13 28/19 29/24
30/23 30/25 31/4 31/8 31/14
31/25 33/6 33/7 33/7 33/9
33/10
HISTORY [1]   8/25
HOLDING [1]   15/12
HOME [4]   13/22 24/23 24/24
32/23
HONEST [3]   17/15 17/19 26/5
HONESTLY [4]   10/25 11/2 16/17
16/19
HONOR [2]   4/14 33/24
HONORABLE [1]   1/17
HOUSE [1]   14/6
HOWEVER [5]   8/19 9/11 20/6
26/3 32/13
HUSBAND [1]   6/1

## I

I'LL [2]   21/7 22/22
I'M [10]   7/16 7/21 10/3 10/9
16/19 16/21 17/13 20/4 23/1
29/2
I'VE [2]   5/4 29/10
I-MOBILE [2]   8/15 30/4
I.E [2]   20/16 20/18
IBT [1]   23/9
IDENTICAL [1]   18/9
IF [17]   5/10 16/24 18/18
19/24 20/2 20/6 20/9 22/10
27/6 27/20 28/16 28/23 30/6
30/19 32/5 33/22 33/22
IGNORE [1]   29/6
II [3]   1/10 2/5 2/6
IMPACT [1]   16/20
IMPROPER [2]   15/24 18/13
IMPROPERLY [2]   18/11 29/24
IN [148]
INACCURATE [2]   31/7 31/8
INAUDIBLE [1]   20/15
INC [1]   8/13
INCEPTION [1]   10/23
INCLUDING [2]   9/8 20/15
INCOME [4]   20/17 31/1 31/3
33/10
INCORPORATED [3]   8/16 9/16
10/8
INCREASED [1]   11/22
INCREDIBLE [1]   13/13
INDEBTEDNESS [1]   17/17
INDICATE [2]   8/19 11/18
INDICATED [2]   9/19 31/24
INDICATING [2]   11/12 14/8
INDICIA [1]   21/15
INDIVIDUAL [4]   13/19 16/15
20/9 21/13
INDULGENCES [1]   5/12
INDUSTRY [1]   8/8
INFORMATION [4]   27/22 30/14
31/14 31/22
INITIAL [1]   5/16
INITIALLY [1]   5/15
INJUNCTIVE [2]   6/8 6/16
INPUT [1]   24/1
INSIDER [1]   24/15
INSOFAR [1]   29/19
INSTRUMENT [1]   20/3
INTENDED [3]   21/6 30/22 31/6
INTENT [7]   22/11 22/19 24/11
27/6 27/18 33/5 33/9
INTENTIONAL [1]   25/9
INTEREST [4]   17/8 24/19 25/14
25/17

**I**

INTERESTED [2]   4/4 35/11
INTERESTS [2]   26/10 33/7
INTERFAMILY [1]   11/1
INTERIM [1]   5/5
INTERNAL [2]   18/24 19/25
INTERNATIONAL [1]   23/10
INTERPRETED [1]   7/3
INTO [10]   5/24 7/8 10/13
  10/21 12/17 14/2 14/5 14/19
  15/6 32/22
INVESTIGATION [1]   26/9
INVESTMENT [1]   11/23
INVOLVED [1]   24/12
INVOLVING [1]   15/5
IRA [33]   7/12 7/25 14/21
  14/24 14/25 15/2 15/3 15/17
  15/17 15/21 16/2 16/10 16/25
  16/25 18/10 18/12 18/19 19/4
  19/23 19/24 20/2 20/6 20/11
  21/1 21/3 21/12 21/17 21/18
  29/24 29/25 30/17 33/7 33/20
IS [62]
ISSUE [5]   7/9 16/16 18/9
  23/17 25/19
ISSUES [4]   7/14 7/19 9/11
  16/10
IT [55]
IT'S [3]   7/22 13/5 21/5
ITS [5]   10/22 16/2 20/8 21/4
  24/24

**J**

JANUARY [6]   10/19 15/22 16/3
  21/4 21/19 33/20
JAY [1]   14/23
JENNEMANN [1]   1/17
JENNINGS [2]   26/4 27/13
JETTISONING [1]   14/17
JOB [2]   5/14 31/6
JOIN [4]   12/18 13/5 17/8
  21/21
JOINT [15]   5/23 10/11 12/17
  12/17 14/11 14/18 14/18
  16/13 23/18 24/3 24/5 24/6
  26/1 29/1 32/23
JOINTLY [3]   12/10 23/24 23/24
JUDGE [2]   4/9 26/14
JUDGMENT [2]   25/17 33/16
JULY [1]   12/6
JUST [11]   12/24 13/13 14/7
  15/20 29/6 29/7 29/13 31/15
  32/3 32/21 32/25
JUSTIFICATION [1]   33/3
JUSTIFY [1]   32/19

**K**

KAREN [1]   1/17
KEEP [1]   7/20
KEITH [5]   1/8 1/13 4/3 5/18
  10/6
KIND [2]   8/20 11/10
KINGSLEY [1]   23/15
KNOW [7]   13/2 14/13 30/24
  32/1 32/5 33/22 33/23
KNOWING [1]   27/25
KNOWINGLY [2]   27/20 31/7
KNOWLEDGE [2]   25/1 29/21
KOREA [1]   9/2
KSJ [1]   1/10

**L**

LACKING [1]   13/17

LACKS [1]   17/2
LANGUAGE [1]   17/15
LARGE [1]   24/21
LAST [2]   6/14 25/19
LASTLY [1]   28/22 33/4
LATER [2]   12/23 12/23
LAW [5]   3/2 5/6 5/8 16/21
  17/15
LAWSUIT [2]   12/3 25/6
LAWYER [2]   31/14 31/15
LEAD [1]   30/13
LEARNED [1]   32/15
LEAST [3]   21/25 22/4 30/3
LEGAL [1]   17/1
LESS [1]   24/9
LET [5]   17/25 18/1 20/4
  22/22 33/23
LET'S [2]   18/2 33/4
LIABILITY [1]   28/25
LIBERALLY [3]   19/13 25/23
  25/24
LIEN [3]   30/16 30/18 30/21
LIFE [1]   8/6
LIFSEY [1]   22/2
LIKE [2]   7/20 21/8
LIST [5]   29/17 29/23 29/25
  30/3 30/9
LISTED [3]   29/22 30/15 32/12
LISTING [2]   30/11 30/21
LITIGATING [1]   25/4
LITIGATION [7]   10/5 12/24
  15/4 24/10 24/12 24/20 29/20
LITTLE [3]   6/14 8/4 13/23
LIVED [1]   24/23
LIVING [1]   14/6
LLC [6]   8/15 8/15 9/16 10/7
  30/4 30/4
LOAN [2]   12/11 30/20
LOCATION [1]   1/20
LOOK [3]   22/20 27/16 31/9
LOOKED [2]   5/5 31/17
LOOKING [2]   27/11 31/19
LOSE [1]   21/4
LOSES [1]   20/8
LOSS [2]   28/24 29/9
LOST [2]   16/2 19/1
LOT [2]   11/3 29/20

**M**

M.D [4]   19/11 22/3 22/23
  27/15
MADE [5]   10/18 13/14 22/10
  27/21 28/12
MAIN [2]   5/1 33/18
MAINTAIN [1]   21/3
MAINTAINED [5]   18/18 19/4
  19/24 20/2 20/6
MAKE [6]   4/5 4/23 5/7 7/3
  7/21 31/6
MAKES [1]   17/1
MANAGED [1]   24/17
MANY [4]   8/8 8/12 9/7 15/19
MARCH [5]   11/24 13/20 22/9
  23/18 35/12
MARKET [1]   11/13
MARRIAGE [3]   10/9 10/16 12/22
MARRIED [2]   8/24 10/11
MATERIAL [2]   28/12 28/15
MATHUSA [2]   19/12 19/22
MATTERS [1]   13/12
MAY [4]   13/21 14/13 19/16
  22/1
MCCLAIN [1]   26/13

MCLEOD [1]   9/15
ME [12]   1/4 6/10 13/20 14/4
  15/19 17/24 19/25 18/1 20/4
  23/19 33/22 33/23
MEANT [1]   13/12
MEET [5]   28/24
MEETING [1]   32/14
MENOTTE [1]   18/3
MERELY [1]   26/25
MET [1]   27/3
METHUSA [1]   19/11
MIDDLE [4]   1/3 26/14 28/5
  29/2
MILLER [1]   27/2
MINOR [1]   28/3
MISLEAD [1]   33/9
MISSED [1]   33/22
MISSTATED [1]   33/23
MISTAKES [1]   17/5
MOBILE [2]   8/15 30/4
MOM [2]   10/18 12/21
MONEY [4]   12/11 21/1 21/9
  25/9
MONIES [17]   10/12 10/18 11/25
  12/7 12/10 13/15 15/2 15/6
  15/8 15/23 17/8 23/24 24/4
  24/21 24/22 25/3 33/2
MONTH [1]   30/15
MONTHLY [1]   30/21
MONTHS [2]   12/3 25/5
MOOREFIELD [1]   28/20
MOOT [2]   7/6 33/14
MORNING [2]   4/19 4/20
MORTGAGEE [1]   22/6
MOSER [2]   35/5 35/16
MOTHER [2]   11/15 12/8
MOVE [1]   25/9
MOVED [1]   13/25
MOVING [1]   9/4
MR [40]
MR. [9]   4/7 5/18 8/24 13/1
  20/21 29/12 29/18 32/4 32/12
MR. VANDERHEID'S [1]   20/21
MR. YERIAN [5]   4/7 5/18 8/24
  13/1 32/12
MR. YERIAN'S [3]   29/12 29/18
  32/4
MRS [8]   8/22 9/25 10/1 10/18
  12/3 12/8 12/11 22/5
MRS. [3]   10/25 11/15 15/5
MRS. DEBORAH [1]   15/5
MRS. PAK'S [1]   11/15
MRS. YERIAN [1]   10/25
MS [27]   8/23 8/24 10/11
  10/22 11/8 12/2 12/16 12/20
  12/25 13/3 13/10 13/18 13/19
  13/25 14/2 14/5 14/14 14/19
  15/10 16/1 16/14 21/22 23/19
  24/1 24/13 24/15 29/11
MS. [1]   13/14
MS. PAK [1]   13/14
MUCH [2]   10/4 30/8
MULTIPLE [1]   15/19
MUST [5]   26/8 26/17 26/23
  26/24 28/11
MUTILATED [1]   27/9
MWAGUSI [12]   6/7 6/10 7/1
  9/16 9/18 9/21 10/2 10/4
  10/7 10/18 12/4 15/5
MY [6]   5/13 5/14 25/1 35/6
  35/17 35/17

**N**

NAME [4]   5/24 10/22 15/10

**N**

**NAME. [1]** 24/15
**NAMES [1]** 21/13
**NATURE [1]** 15/7
**NEED [2]** 7/6 20/23
**NET [1]** 16/18
**NEVER [5]** 5/12 17/8 23/13
**NEXT [2]** 11/16 17/6
**NICELY [1]** 17/23
**NO [23]** 1/5 4/25 6/17 6/17
7/6 8/18 11/8 17/10 17/11
18/17 19/15 24/25 25/10
25/11 25/12 30/5 30/18 31/10
31/16 31/22 33/1 33/24 35/17
**NO. [1]** 4/3
**NO. 15-1720 [1]** 4/3
**NON [7]** 9/20 17/3 18/15
20/23 21/19 33/7 33/20
**NON-ETC [1]** 9/20
**NON-EXEMPT [6]** 17/3 18/15
20/23 21/19 33/7 33/20
**NOR [2]** 12/25 35/11
**NORMALLY [1]** 4/17
**NORTHERN [1]** 23/10
**NOT [47]**
**NOTARIZED [1]** 12/9
**NOTARY [2]** 35/5 35/16
**NOTE [1]** 17/14
**NOTED [3]** 26/4 26/12 27/1
**NOTES [3]** 9/23 12/7 15/3
**NOTHING [6]** 14/8 14/15 23/2
31/20 31/23 32/8
**NOVEMBER [1]** 5/3
**NOW [1]** 32/25
**NUMBER [1]** 20/21
**NUMEROUS [2]** 24/14 29/15

**O**

**OATH [5]** 3/8 27/22 28/9
28/11 35/1
**OBFUSCATE [1]** 30/22
**OBJECTING [4]** 19/7 25/25
26/17 28/10
**OBJECTION [10]** 3/4 4/24 7/11
16/7 17/13 17/21 21/18 27/24
31/18 33/19
**OBJECTIONS [1]** 25/22
**OBLIGATED [1]** 18/25
**OBLIGATIONS [1]** 29/17
**OBTAIN [1]** 22/14
**OCCURRED [8]** 12/2 16/24 16/25
20/13 22/9 23/14 25/5 32/14
**OCTOBER [6]** 10/10 10/16 11/10
11/15 11/16 23/23
**OFFICE [1]** 35/6
**OH [2]** 15/14 29/2
**OHIO [3]** 8/9 8/10 9/3
**OMISSION [1]** 30/7
**OMISSIONS [3]** 17/10 29/16
31/12
**ON [29]** 2/2 2/4 3/6 4/23 5/1
5/3 5/4 7/11 9/24 10/16
10/19 11/8 11/15 11/16 12/21
14/13 14/14 16/4 16/18 16/20
21/4 26/16 29/5 30/14 30/16
30/16 30/19 30/21 32/14
**ONCE [1]** 23/6
**ONE [10]** 4/12 7/22 9/20 15/9
15/13 21/25 27/10 29/6 29/6
30/13
**ONLY [9]** 9/19 9/20 17/4 19/2
23/19 24/13 26/5 26/10 30/7

**OPEN [1]** 6/7
**OPENED [1]** 6/15
**OPENING [2]** 11/9 17/16
**OPERATED [2]** 8/11 24/17
**OPERATIONS [1]** 9/7
**OPINION [2]** 17/24 18/1
**OPT [1]** 19/21
**OPT-OUT [1]** 19/21
**OR [44]**
**ORAL [5]** 4/21 4/23 5/12 6/12
7/4
**ORANGE [1]** 35/3
**ORDER [2]** 24/20 33/16
**ORIGINAL [2]** 23/22 32/11
**ORLANDO [2]** 1/4 1/21
**OTHER [10]** 8/14 9/20 9/21
10/4 11/3 11/8 14/3 14/9
17/9 21/14
**OTHERWISE [1]** 25/1
**OUT [2]** 19/21 25/3
**OVER [5]** 9/17 11/22 13/23
31/18 32/15
**OVERCOME [1]** 32/4
**OWN [2]** 21/2 21/9
**OWNED [5]** 12/20 14/19 23/24
23/25 29/25
**OWNER [2]** 12/2 23/20
**OWNERSHIP [1]** 24/19

**P**

**P.M [3]** 1/19 1/19 34/3
**PAK [25]** 2/3 4/7 5/25 8/23
8/24 10/11 10/22 11/8 12/7
12/16 12/20 12/25 13/3 13/10
13/14 13/18 13/25 14/14
15/10 16/1 21/22 23/19 24/1
24/15 29/11
**PAK'S [10]** 10/18 11/15 12/8
12/11 13/19 14/2 14/5 14/19
16/14 24/13
**PALM [4]** 15/13 15/13 15/15
15/15
**PARCELS [1]** 15/12
**PART [1]** 24/21
**PARTICULARLY [1]** 29/18
**PARTIES [6]** 4/4 14/17 24/12
25/4 30/18 35/10
**PARTIES' [1]** 5/11
**PARTY [6]** 6/11 19/7 25/25
26/17 28/10 29/19
**PATTERN [1]** 27/16
**PEARLMAN [1]** 22/22
**PENDENCY [1]** 11/19
**PENDING [4]** 6/20 7/19 10/5
12/24
**PEOPLE [2]** 7/20 21/7
**PEREZ [1]** 17/17
**PERHAPS [2]** 8/3 24/1
**PERIOD [1]** 11/19
**PERJURY [1]** 27/25
**PERSON [5]** 20/3 20/16 20/18
21/24 31/25
**PERSONS [1]** 15/25
**PETITION [3]** 27/10 31/3 31/4
**PETTY [1]** 26/24
**PIECES [1]** 30/1
**PLACED [1]** 10/12
**PLAINTIFF [1]** 1/11
**PLAN [1]** 20/3
**PLEADINGS [1]** 8/9
**PLEASE [1]** 4/5
**PLED [1]** 5/16
**POINT [2]** 7/6 33/15

**POSSIBLE [1]** 17/23
**POSSIBLY [1]** 14/8
**POST [1]** 31/4
**POST-PETITION [1]** 31/4
**POTENTIAL [1]** 9/20
**PRE [1]** 31/3
**PRE-PETITION [1]** 31/3
**PREPONDERANCE [2]** 19/9 26/18
**PRESENT [3]** 2/7 4/7 24/15
**PREVENT [1]** 27/25
**PRIMARILY [1]** 15/25
**PRIMARY [1]** 17/14 23/25
**PRIOR [4]** 11/9 13/7 24/18
31/14
**PROBABLY [1]** 18/15
**PROCEDURE [1]** 26/22
**PROCEED [1]** 6/12
**PROCEEDED [1]** 7/4
**PROCEEDING [4]** 5/2 9/24 16/6
33/17
**PROCEEDINGS [3]** 4/4 34/2 35/7
**PROHIBITED [5]** 16/24 18/23
20/10 20/12 20/14
**PROHIBITS [1]** 21/6
**PROOF [2]** 26/16 26/18
**PROPERLY [2]** 18/14 19/10
**PROPERTIES [1]** 21/15
**PROPERTY [4]** 15/18 27/9 28/20
30/1
**PROTECTION [1]** 26/8
**PROVE [1]** 28/11
**PROVEN [1]** 32/21
**PROVES [1]** 23/7
**PROVIDE [2]** 17/15 30/12
**PROVIDED [1]** 32/6
**PROVIDES [4]** 19/16 19/23
21/23 27/5
**PROVISION [1]** 23/11
**PUBLIC [2]** 35/5 35/16
**PUERTO [2]** 15/15 15/18
**PUNISH [1]** 28/3
**PURCHASE [2]** 24/22 24/24
**PURCHASED [3]** 13/21 29/24
30/17
**PURCHASES [1]** 15/1
**PURPOSE [2]** 15/18 17/14
**PURPOSES [3]** 14/3 15/24 24/7
**PURSUANT [3]** 5/9 17/3 20/20

**Q**

**QUESTIONS [2]** 6/13 33/21
**QUITE [4]** 10/25 11/2 16/17
16/19

**R**

**RAISE [2]** 5/17 22/7
**RAISED [1]** 7/15
**RE [6]** 1/7 19/10 22/22 26/4
27/13 28/4
**REACH [1]** 25/4
**READ [1]** 17/25
**REAL [4]** 15/11 15/12 26/24
30/1
**REALLY [5]** 7/8 10/3 15/7
19/15 25/10
**REASON [1]** 6/19
**REASONABLY [2]** 22/14 25/11
**REASONS [2]** 20/22 26/23
**RECEIVE [3]** 17/20 25/16 26/6
**RECEIVED [6]** 9/1 25/13 31/3
31/21 32/1 32/2
**RECESS [1]** 34/1
**RECESSION [1]** 9/6

**R**

RECORD [2]  5/10 35/8
RECOVERY [2]  6/5 23/8
REFERENCED [1]  30/2
REFINED [1]  5/13
REFLECT [1]  8/9
REFLECTED [3]  8/17 10/14 16/8
REFLECTS [1]  9/4
REGISTRATION [1]  30/19
RELATED [3]  4/3 9/12 15/17
RELATING [3]  5/21 6/13 21/21
RELATIONSHIP [1]  28/16
RELATIVE [1]  35/9
RELIEF [1]  6/15
RELIEVING [1]  17/16
REMAINING [1]  33/13
REMEMBER [1]  15/14
REMOVED [1]  27/8
REPAIR [1]  14/6
REPLENISH [1]  18/14
REPORT [2]  14/23 20/21
REQUEST [2]  19/3 26/9
REQUIRED [3]  26/21 27/4 29/22
REQUIREMENT [1]  4/12
REQUIREMENTS [3]  19/6 20/1
20/7
RESERVE [1]  5/9
RESOLUTION [1]  7/20
RESOLVED [1]  10/2
RESPECT [1]  29/11
RESPONSE [1]  4/25
RESPONSIBILITY [2]  18/17 19/3
RESTATE [1]  20/23
RESTORE [1]  23/12
RESTRICTIONS [1]  26/3
RESULT [1]  16/2
RESULTED [1]  11/15
RETAINED [1]  30/10
RETAINS [1]  7/13
RETIREMENT [1]  19/17
RETURN [2]  10/9 11/23
RETURNED [1]  23/20
REVENUE [2]  18/24 19/25
REVIEWING [1]  31/8
RICHARD [3]  1/10 2/5 2/6
RICK [1]  4/9
RICO [2]  15/15 15/18
RIGHT [5]  5/10 7/1 9/25 24/4
31/16
RIGHTS [3]  12/19 13/6 16/14
RING [1]  29/13
RIVALRY [1]  11/2
ROSSI [1]  28/6
ROUGHLY [4]  10/9 10/20 10/20
24/9
RPR [1]  35/16
RULE [4]  5/9 7/17 16/22
26/21
RULED [1]  28/12
RULING [13]  3/3 3/4 3/6 3/7
4/21 4/23 5/12 5/13 6/12 7/4
7/8 8/3 16/20
RULINGS [1]  7/18

**S**

SAID [3]  16/7 18/21 25/22
SANDRA [2]  35/5 35/16
SATISFACTORILY [2]  28/24 29/8
SATISFIED [1]  23/4
SAY [4]  8/2 10/5 17/22 21/7
SAYING [1]  12/9
SCHEDULES [9]  29/16 30/14

30/21 31/4 31/12 31/15 32/11
32/18 3/2/5
SCHEME [1]  25/9
SCHOOL [1]  9/1
SCHULTE [1]  4/10
SCHULTI [1]  2/8
SECOND [1]  16/11
SECTIONS [1]  19/20
SEE [2]  18/3 33/4
SEEK [1]  23/8
SEEKING [3]  6/8 6/9 26/7
SELF [4]  14/21 15/21 18/12
21/3
SELF-DIRECTED [4]  14/21 15/21
18/12 21/3
SEND [1]  31/13
SEPARATE [6]  6/6 9/15 10/14
12/1 14/2 33/2
SEPARATELY [4]  13/21 14/19
15/11 17/12
SEPARATELY-OWNED [1]  14/19
SERVICE [1]  19/25
SET [2]  15/3 21/1
SEVERAL [1]  8/14
SHE [13]  8/25 9/2 9/4 9/5
10/18 12/9 13/4 13/14 13/21
24/2 24/16 24/16 29/19
SHOES [1]  21/24
SHORTLY [2]  12/6 25/5
SHOULD [15]  6/24 6/25 7/9
7/11 18/17 22/16 23/20 23/21
25/23 25/23 26/6 27/5 27/19
28/2 28/23
SHOW [2]  29/8 31/2
SIGNED [2]  12/8 12/23
SIGNIFICANT [2]  29/20 30/6
SIMPLY [4]  12/24 14/7 31/15
33/16
SIMULTANEOUSLY [1]  10/15
SINCE [2]  9/3 24/24
SINGLE [1]  13/14
SMART [1]  30/17
SO [23]  6/3 7/4 7/8 7/21
9/18 10/20 11/22 13/16 17/5
18/14 19/2 21/3 21/17 22/6
24/22 25/8 25/15 29/2 32/11
32/17 33/8 33/11 33/15
SOFTWARE [4]  8/8 9/16 10/7
12/5
SOLE [1]  12/2
SOME [1]  24/1
SOMEHOW [1]  30/10
SOMETHING [1]  33/22
SOPHISTICATED [2]  8/7 11/7
SORRY [2]  20/4 29/2
SORT [2]  18/13 21/5
SOUGHT [3]  6/5 6/15 18/12
SOURCE [2]  10/17 33/10
SOUTHERN [2]  18/5 18/7
SPEAKER [1]  33/24
SPECIFIC [1]  7/18
SPECIFICALLY [3]  17/24 18/21
20/9
SPENT [4]  14/7 14/9 14/13
14/14
STAFF [1]  31/25
STANDARD [2]  22/16 27/12
STANDING [2]  21/24 22/7
START [2]  17/13 17/16
STARTING [2]  8/12 10/7
STATE [3]  19/21 35/2 35/16
STATED [4]  23/14 25/25 26/20
29/10

STATEMENTS [5]  13/11 29/16
32/12 32/14 32/19
STATES [5]  1/7 1/19 20/8/25
20/9 26/19
STATUS [9]  7/13 16/2 16/14
16/15 18/19 19/1 20/8 21/4
30/23
STATUTE [4]  17/4 19/22 21/23
22/25
STATUTES [1]  21/23
STAYED [1]  15/17
STILL [3]  6/19 8/16 8/21
STOCK [9]  11/5 11/6 11/13
11/20 13/7 13/8 13/8 23/25
24/7
STRAINED [2]  13/1 13/2
STREET [1]  1/20
STUDENT [2]  2/8 4/11
SUBMIT [1]  33/15
SUBSEQUENT [3]  9/23 10/19
15/4
SUBSIDIARY [1]  15/11
SUBSTANTIAL [4]  8/19 11/23
24/2 26/24
SUBSTANTIALLY [1]  31/5
SUBSTANTIATE [1]  31/20
SUBSTANTIATING [1]  32/8
SUCCESSFUL [2]  11/21 24/8
SUFFICIENT [2]  28/15 32/17
SUFFICIENTLY [1]  23/3
SUMMARIZE [1]  7/16
SUN [3]  2/3 4/7 5/25
SUPPLEMENT [1]  5/10
SUPPLEMENTED [1]  7/17
SUPPORTING [2]  11/11 14/16
SUPPORTS [1]  15/1
SUPRA [1]  27/13
SUPREME [1]  26/19
SURE [1]  7/3
SURROUNDING [1]  22/21
SURVIVORSHIP [4]  12/19 13/6
16/14 24/4
SUSPENSE [1]  7/21
SUSTAIN [1]  21/18
SUSTAINED [1]  3/5
SUSTAINS [1]  33/19
SWICEGOOD [1]  28/13
SYMPATHETIC [1]  16/19
SYSTEM [1]  26/11

**T**

TABLE [1]  4/11
TAKE [1]  19/17
TAKEN [1]  5/4
TAX [7]  17/4 19/1 19/5 20/8
20/19 21/4 21/5
TAX-EXEMPT [1]  21/4
TAXATION [1]  19/19
TECHNICAL [1]  26/25
TECHNICALLY [1]  8/17
TELL [1]  18/1
TEN [1]  5/15
TENANCY [1]  16/13
TENANT [1]  24/3
TERRIBLY [2]  17/18 23/2
TESTIFIED [2]  11/5 13/4
TESTIFY [1]  31/25
TESTIMONY [13]  5/7 10/24 11/3
12/16 12/25 13/10 14/5 14/9
16/8 29/12 29/14 30/5 32/4
THAN [5]  9/21 10/4 11/4 14/9
24/9
THANK [1]  33/25

**T**

**THAT [256]**

**THAT'S [15]**  4/18 7/2 7/2 12/12 13/24 14/21 17/17 21/6 22/2 23/9 23/14 25/20 28/3 31/8 31/16

**THEIR [8]**  9/3 10/15 12/21 14/18 19/1 21/13 29/12 29/14

**THEM [9]**  7/17 12/10 16/20 21/13 23/3 24/6 25/3 30/11 31/9

**THEN [15]**  6/1 6/8 7/11 12/5 14/24 15/7 15/14 16/8 17/1 18/12 20/10 21/1 21/13 24/10 33/18

**THERE [47]**

**THERE'S [4]**  9/9 11/1 23/2 33/1

**THEREAFTER [1]**  12/6

**THESE [3]**  15/23 21/15 31/11

**THEY [12]**  8/14 8/16 8/16 8/21 10/11 16/25 20/24 23/3 30/4 32/1 32/2 32/2

**THINGS [1]**  15/9

**THINK [4]**  6/19 6/24 8/2 9/9

**THIS [25]**  4/19 4/20 5/10 7/6 9/7 9/24 11/3 11/9 12/2 16/4 16/5 16/19 16/20 17/2 17/22 17/25 21/1 21/9 23/5 24/19 24/25 31/9 33/2 33/14 35/12

**THOSE [10]**  6/7 6/14 7/14 17/12 17/19 19/18 20/23 26/5 30/8 33/2

**THOUGH [1]**  13/4

**THOUGHTS [1]**  5/14

**THOUSANDS [2]**  11/20 24/7

**THREE [9]**  5/16 5/20 6/3 6/4 7/14 7/18 10/13 16/10 27/3

**THROUGH [4]**  14/24 15/11 18/6 20/22

**THRUST [1]**  27/24

**TIME [2]**  1/19 9/3

**TITLE [2]**  21/13 30/19

**TITLED [1]**  15/9

**TITLING [1]**  21/14

**TODAY [1]**  4/22

**TOMMY [2]**  4/8 4/10

**TOTALITY [1]**  22/20

**TOTALLY [1]**  13/4

**TRACEABLE [1]**  15/21

**TRADE [8]**  10/21 12/1 12/15 12/18 13/7 13/8 13/23 17/6

**TRADED [1]**  11/6

**TRADER [2]**  11/6 24/1

**TRADES [2]**  11/20 24/7

**TRADING [17]**  5/24 7/10 10/12 10/13 11/17 11/21 13/3 13/20 14/2 14/19 14/20 16/12 21/22 23/18 23/22 25/14 32/23

**TRANSACTION [1]**  20/10

**TRANSACTIONS [5]**  16/24 18/23 20/13 20/15 28/17

**TRANSCRIBE [1]**  35/6

**TRANSCRIPT [2]**  5/7 35/8

**TRANSCRIPTS [1]**  16/9

**TRANSFER [30]**  5/21 6/4 6/6 7/10 8/1 10/16 11/14 13/19 16/12 20/17 21/21 22/1 22/8 22/8 22/10 22/11 22/15 22/16 22/19 23/7 23/13 23/17 24/18 25/3 25/5 25/12 25/16 32/21 33/1 33/18

**TRANSFEREE [1]**  23/8

**TRANSFEROR [1]**  23/16

**TRANSFERORS [1]**  23/18

**TRANSFERRED [12]**  5/25 9/11 9/22 11/25 12/8 12/10 13/22 14/11 16/13 24/13 27/8 32/24

**TRANSFERRING [1]**  15/6

**TRANSFERS [6]**  10/19 15/19 15/25 17/7 18/13 22/21

**TRANSMISSION [1]**  32/9

**TRANSMITTAL [2]**  31/22 31/24

**TREATED [1]**  21/1

**TRIAL [3]**  4/23 5/1 5/3

**TROUBLED [1]**  30/8

**TROUBLING [1]**  29/19

**TRUE [3]**  29/13 30/22 35/8

**TRUSTEE [21]**  2/5 2/6 4/10 4/16 14/10 16/5 16/22 19/8 21/17 22/7 23/7 25/15 26/9 26/17 27/3 27/23 28/10 29/21 32/20 33/10 33/15

**TRUSTEE'S [16]**  3/4 4/24 8/17 10/14 11/11 11/24 12/1 12/12 13/24 14/22 14/22 14/25 21/18 31/6 31/9 31/18

**TRY [1]**  24/19

**TWO [13]**  6/13 6/14 8/15 10/18 15/9 15/12 21/12 22/4 29/25 30/2 30/3 30/16 30/16

**U**

**U.S [2]**  17/18 26/20

**U.S.C [1]**  21/25

**UCF [1]**  4/11

**UN [1]**  15/17

**UN-IRA-RELATED [1]**  15/17

**UNACCOUNTED [1]**  14/12

**UNDER [18]**  5/4 5/18 6/2 6/15 7/13 7/18 18/23 19/19 21/22 21/25 22/16 23/6 27/3 27/19 28/8 28/22 31/4 32/19

**UNDERSTAND [3]**  8/3 10/25 13/11

**UNDERSTATED [2]**  31/1 31/5

**UNDISPUTED [3]**  13/5 14/1 15/16

**UNEMPLOYED [2]**  8/10 9/5

**UNEXPLAINED [1]**  15/20

**UNIQUE [1]**  23/2

**UNITED [4]**  1/3 1/20 8/25 26/19

**UNSECURED [3]**  21/25 22/4 30/20

**UP [4]**  15/3 18/4 20/5 21/1

**UPON [3]**  7/18 19/3 26/10

**USE [3]**  20/17 21/9 21/15

**USED [8]**  14/3 14/6 15/8 15/24 18/11 24/21 24/22 28/2

**USES [2]**  14/24 15/2

**V**

**VALUABLE [1]**  30/10

**VALUE [3]**  22/14 25/12 25/12

**VANDERHEID [1]**  15/22

**VANDERHEID'S [2]**  14/23 20/21

**VARIOUS [11]**  7/18 13/11 14/3 15/1 19/5 19/19 19/25 20/7 20/22 22/24 33/8

**VASTLY [1]**  31/1

**VEHICLES [1]**  30/16

**VENTURE [2]**  26/1 29/1

**VERSED [1]**  11/5

**VERY [4]**  11/21 20/5 20/24 33/25

**W**

**WAIT [1]**  7/21

**WANT [2]**  6/13 17/22

**WANTED [3]**  7/2 7/3 8/2

**WARRANT [1]**  28/8

**WAS [120]**

**WASHINGTON [1]**  1/20

**WASN'T [3]**  18/25 20/5 21/14

**WE [7]**  4/10 4/22 6/18 6/22 7/4 13/3 22/4

**WE'LL [1]**  29/6

**WE'VE [1]**  32/14

**WEBBER [6]**  1/10 2/5 2/6 4/10 6/13 29/15

**WELCOME [1]**  4/13

**WELL [10]**  5/1 5/22 11/5 11/22 16/6 20/24 22/23 27/13 30/1 32/15

**WELL-VERSED [1]**  11/5

**WENT [7]**  6/21 7/1 10/21 12/17 15/25 24/8 33/2

**WERE [31]**  5/15 5/20 6/7 8/16 8/22 8/24 10/11 10/12 11/20 14/17 15/8 15/9 15/19 15/19 15/23 17/7 18/13 18/22 20/14 21/14 23/22 23/24 24/7 24/14 24/15 24/21 24/22 30/2 30/5 32/17 34/2

**WEST [1]**  1/20

**WESTLAW [1]**  26/13

**WETZEL [1]**  23/15

**WHAT [15]**  4/18 7/2 7/3 9/12 11/4 13/11 14/9 14/13 14/14 18/1 20/25 21/6 21/7 21/10 30/9

**WHEN [7]**  6/22 7/17 9/14 10/10 14/17 16/12 27/17

**WHENEVER [1]**  19/14

**WHERE [1]**  33/2

**WHEREUPON [1]**  34/2

**WHETHER [14]**  6/15 7/9 7/9 7/12 16/10 16/11 16/15 16/23 17/2 18/25 19/4 23/20 25/19 27/17

**WHICH [9]**  4/23 8/15 15/19 15/20 20/12 21/8 23/19 29/19 32/14

**WHILE [1]**  31/1

**WHO [3]**  4/7 5/25 26/17

**WHOLE [2]**  11/3 27/16

**WHY [2]**  6/19 20/22

**WIFE [7]**  8/11 9/12 16/1 20/17 20/19 24/16 29/18

**WILL [11]**  4/23 5/7 5/13 7/5 7/16 7/17 16/20 17/12 21/17 26/11 33/11

**WILLIS [1]**  18/3

**WILLS [1]**  28/4

**WISH [1]**  21/9

**WITHDRAWN [2]**  6/7 33/14

**WITHHELD [1]**  27/22

**WITHIN [1]**  27/10

**WITHOUT [4]**  15/7 26/7 26/8 30/10

**WOLFF [2]**  2/2 4/6

**WORKED [2]**  8/7 9/2

**WORKSHEET [2]**  31/23 32/5

**WOULD [23]**  11/14 12/15 13/1 13/14 22/15 23/13 23/21 24/2 25/8 25/15 27/2 29/21 30/7 30/12 30/13 30/22 30/25 31/5 31/9 31/20 32/17 32/20 33/15

**W**

**WRITTEN [2]**  5/10 5/13
**WRONG [1]**  29/5

**Y**

**YEAR [4]**  15/23 20/12 20/19
27/10
**YEARS [6]**  8/8 8/12 11/6 12/7
12/23 24/9
**YERIAN [50]**
**YERIAN'S [6]**  7/12 13/16 25/17
29/12 29/18 32/4
**YOU [12]**  6/3 6/23 6/24 7/21
13/2 18/1 21/2 21/8 21/9
21/12 29/7 33/25
**YOU'RE [1]**  7/1
**YOUR [4]**  4/5 4/14 21/9 33/24
**YUNG [1]**  5/25