**<u>Exhibit Cover Sheet</u>**

**Party
submitting:** Plaintiff ___ **Ex. #** 44

**Admitted: Yes   or    No  (circle one)**

**Debtor:** Keith A. Yerian ___

**Case No.:** 6:15-bk-01720-KSJ ___

*Adv. No.:* 6:15-ap-00064-KSJ ___

**Nature of Hearing/
Docket No:** Trial ___

---

**United States Bankruptcy Court
Middle District of Florida**

**Dated** ___ , 20___.

**By:** ___ , **Deputy Clerk**

**APPENDIX B**

# OPERATING AGREEMENT

## OF

### Yerian Properties LLC

**DECLARATION OF AGREEMENT**, made this _2b_ day of _Sept_ , 2014, by IRA Services Trust Company FBO Keith Alan Yerian Account # _IRA313038_ , Member, having an address at P.O. Box 7080, San Carlos CA 94070-7080 ("Member"). Said Member and such other persons or entities that hereafter become Members in accordance with the provisions of this Agreement are hereinafter referred to as "Members".

### W I T N E S S E T H :

**WHEREAS**, the Member desires to form a limited liability company pursuant to the laws of the State of Florida for the purposes hereinafter set forth, and to establish the rights and obligations of Members in connection with the limited liability company;

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and other valuable consideration, the agreement of the Members shall be as follows:

### 1. Formation

The Member hereby has formed a limited liability company (the "Limited Liability Company") pursuant to the provisions of the Florida LLC law, for the purposes and the period and upon the terms and conditions hereinafter set forth. The Member has caused to be filed the Articles of Organization of the Limited Liability Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.

### 2. Name

The name of the Limited Liability Company shall be Yerian Properties LLC, and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Members from time to time may determine.

### 3. Purposes

The purposes of the Limited Liability Company are for all lawful purposes. The Limited Liability Company may acquire such assets and engage in investments of all types. The company may enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Liability Company; and to carry on any other activities necessary to, in connection with or incidental to the foregoing, as the Manager(s) in their discretion may deem desirable.

The Limited Liability Company may also incur indebtedness; so long as retirement plan assets are not used to secure the debt (see prohibited transactions, Article 11). The managers understand and agree that unrelated business income tax may apply to certain LLC activities and debt financing.



EXHIBIT # 21
Trustee # 21
Yerian
5/7/16 DxB
FB640 800-631-6989

# OPERATING AGREEMENT

## OF

### Yerian Properties LLC

**DECLARATION OF AGREEMENT**, made this _____ day of _____, 2014, by IRA Services Trust Company FBO Keith Alan Yerian Account # _____, Member, having an address at P.O. Box 7080, San Carlos CA 94070-7080 ("Member"). Said Member and such other persons or entities that hereafter become Members in accordance with the provisions of this Agreement are hereinafter referred to as "Members".

## W I T N E S S E T H :

**WHEREAS**, the Member desires to form a limited liability company pursuant to the laws of the State of Florida for the purposes hereinafter set forth, and to establish the rights and obligations of Members in connection with the limited liability company;

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and other valuable consideration, the agreement of the Members shall be as follows:

### 1. Formation

The Member hereby has formed a limited liability company (the "Limited Liability Company") pursuant to the provisions of the Florida LLC law, for the purposes and the period and upon the terms and conditions hereinafter set forth. The Member has caused to be filed the Articles of Organization of the Limited Liability Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.

### 2. Name

The name of the Limited Liability Company shall be Yerian Properties LLC, and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Members from time to time may determine.

### 3. Purposes

The purposes of the Limited Liability Company are for all lawful purposes. The Limited Liability Company may acquire such assets and engage in investments of all types. The company may enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Liability Company; and to carry on any other activities necessary to, in connection with or incidental to the foregoing, as the Manager(s) in their discretion may deem desirable.

The Limited Liability Company may also incur indebtedness; so long as retirement plan assets are not used to secure the debt (see prohibited transactions, Article 11). The managers understand and agree that unrelated business income tax may apply to certain LLC activities and debt financing.

KY000038

Unrelated Business Taxable Income (UBTI), if incurred, the Manager of the company will be responsible for and ensure the timely filing of all Federal and State tax returns with the appropriate authorities.

### 4. Place of Business

The principal place of business and specified office of the Limited Liability Company shall be at 5767 Treasure Lane, Grant FL 32949, or at such other or additional places of business within or outside of the State of Florida as the Manager from time to time may designate.  The office at which the records required to be maintained by the Limited Liability Company are to be kept at 5767 Treasure Lane, Grant FL 32949, or at such other or additional places of business within or outside of the State of Florida as the Manager from time to time may designate.  The Manager shall notify the other Members of any change of the principal place of business and specified office.

The Limited Liability Company hereby designates Nationwide Corporate Services Inc. as the Registered Agent of the Limited Liability Company, with an address of 80 SW 8th St., Suite 2000, Miami FL 33130, for service of process.

The registered office and Registered Agent may be changed from time to time by the Manager by filing the prescribed forms with the appropriate governmental authorities.

### 5. Term

The term of the Limited Liability Company shall commence on the filing of the Certificate of Formation of the Limited Liability Company, and continue until Limited Liability Company is terminated in accordance with this Agreement.

### 6. Capital Contributions

The Member shall contribute to the capital of the Limited Liability Company as outlined in Appendix A.  The Members shall not be required to make any additional capital contributions unless (a) agreed in writing by a new Subscription agreement; or (b) required pursuant to the terms of Section 7 of this Operating Agreement to restore a deficit balance in a Member's capital account

Subsequent investments by a Member are permitted and do not create a prohibited transaction under IRC Sec. 4975.

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce his contributions to the capital of the Limited Liability Company until the termination of the Limited Liability Company.  No Member shall have the right to demand and receive any distribution from the Limited Liability Company in any form other than cash, regardless of the nature of such Member's capital contribution.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Liability Company shall be limited to paying:  the capital contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Liability Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Liability Company.

## 7.  Allocations and Distributions

**7.1      Definitions**.

As used in this Agreement, the terms "net profits" and "net losses" shall mean the profits or losses of the Limited Liability Company from the conduct of the Limited Liability Company's business, after all expenses incurred in connection therewith have been paid or provided for, including any allowance for depreciation or amortization of the cost of the realty.  The net profits or net losses of the Limited Liability Company shall be determined by the Limited Liability Company's accountants in accordance with generally accepted accounting principles applied in determining the income, gains, expenses, deductions or losses, as the case may be, reported by the Limited Liability Company for Federal income tax purposes.

The term "cash receipts" shall mean all cash receipts of the Limited Liability Company from whatever source derived, including without limitation capital contributions made by the Members; the proceeds of any sale, exchange, condemnation or other disposition of all or any part of the realty or other assets of the Limited Liability Company; the proceeds of any loan to the Limited Liability Company; the proceeds of any mortgage or refinancing of any mortgage on all or any part of the realty or other assets of the Limited Liability Company; the proceeds of any insurance policy for fire or other casualty damage payable to the Limited Liability Company; and the proceeds from the liquidation of the realty or other assets of the Limited Liability Company following a termination of the Limited Liability Company.

The term "capital transactions" shall mean any of the following:  the sale of all or any part of the realty or other assets of the Limited Liability Company or interests therein; the refinancing or recasting of mortgages or other liabilities of the Limited Liability Company; the condemnation of the realty to the extent the award is not used for restoration; the receipt of insurance proceeds; and any other similar or extraordinary receipts or proceeds which in accordance with generally accepted accounting principles are attributable to capital, including transactions in connection with the termination and dissolution of the Limited Liability Company.

The "capital account" for each Member shall mean the account established, determined and maintained for such Member in accordance with Section 704(b) of the Internal Revenue Code and Treasury Regulation Section 1.704-1(b)(2)(iv).

The term "Members' Percentage Interests" shall mean the percentages set forth opposite the name of each Member on the attached Subscription page.

**7.2      Allocations to Have Significant Economic Effect**.

**Maintenance of Capital Accounts**:      The capital account for each Member shall be maintained in accordance with the requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(1) as now existing or hereafter amended.  Without limiting the generality of that requirement, the capital account for each Member shall be **increased by** (1) the amount of money contributed by such Member to the Limited Liability Company, (2) the fair market value of property contributed by such Member to the Limited Liability Company (net of liabilities secured by such contributed property that the Limited Liability Company is considered to assume or take subject to under Section 752 of the Internal Revenue Code), and (3) allocations to such Member of Limited Liability Company income and gain (or items thereof), including income and gain exempt from tax and income and gain described in Treas. Reg. Section 1.704-1(b)(2)(iv)(g), but excluding income and gain described in subsection (b)(4)(i) of said Regulation, and shall be **decreased by** (4) the amount of money distributed to such Member by the Limited Liability Company, (5) the fair market value of property distributed to such Member by the Limited Liability Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Section 752 of the Code), (6) allocations to such Member of expenditures of the Limited Liability Company described in Section 705(a)(2)(B) of the Code, and (7)

KY000040

allocations of Limited Liability Company loss and deduction (or items thereof) including loss and deduction described in Treas. Reg. Section 1.704-1(b)(2)(iv)(g), but excluding items described in (6) above and loss or deduction described in subsections (b)(4)(i) or (b)(4)(iii) of said Regulation. Net profits and net losses of the Limited Liability Company from other than capital transactions, as of the end of any fiscal year or other period, shall be credited or charged to the capital accounts of the Members prior to any charge or credit to said capital accounts for net profits and net losses of the Limited Liability Company from capital transactions as of the end of such fiscal year or other period. The capital account for each Member shall be otherwise adjusted in accordance with the additional rules of Treas. Reg. Section 1.704-1(b)(2)(iv).

During each fiscal year, the net profits and net losses of the Limited Liability Company (other than from capital transactions), and each item of income, gain, loss, deduction or credit entering into the computation thereof, shall be credited or charged, as the case may be, to the capital accounts of each Member in proportion to the Members' Percentage Interests. The net profits of the Limited Liability Company from capital transactions shall be allocated in the following order of priority: (a) to offset any negative balance in the capital accounts of the Members in proportion to the amounts of the negative balance in their respective capital accounts, until all negative balances in the capital accounts have been eliminated; then (b) to the Members in proportion to the Members' Percentage Interests. The net losses of the Limited Liability Company from capital transactions shall be allocated in the following order of priority: (a) to the extent that the balances in the capital accounts of any Members are in excess of their original contributions, to such Members in proportion to such excess balances in the capital accounts until all such excess balances have been reduced to zero; then (b) to the Members in proportion to the Members' Percentage Interests.

The cash receipts of the Limited Liability Company shall be applied in the following order of priority: (a) to the payment by the Limited Liability Company of amounts due on debts and liabilities of the Limited Liability Company other than to any Member, and operating expenses of the Limited Liability Company; (b) to the payment of interest and amortization due on any loan made to the Limited Liability Company by any Member; (c) to the establishment of cash reserves determined by the Manager to be necessary or appropriate, including without limitation reserves for the operation of the Limited Liability Company's business, taxes and contingencies; and (d) to the repayment of any loans made to the Limited Liability Company by any Member. Thereafter, the cash receipts of the Limited Liability Company shall be distributed among the Members as hereafter provided.

Except as otherwise provided in this Agreement or required by law, distributions of cash receipts of the Limited Liability Company, other than from capital transactions, shall be allocated among the Members in proportion to the Members' Percentage Interests.

Except as otherwise provided in this Agreement or required by law, distributions of cash receipts from capital transactions shall be allocated in the following order of priority: (a) to the Members in proportion to their respective capital accounts until each Member has received cash distributions equal to any positive balance in his capital account; then (b) to the Members in proportion to the Members' Percentage Interests.

**Liquidation of Capital Accounts**:   Upon liquidation of the Limited Liability Company (or any Member's interest in the Limited Liability Company), liquidating distributions shall be made in accordance with the requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(2) as now existing or hereafter amended.

**Deficit Makeup Requirement**:   If after liquidation any Member has a deficit in his or her capital account, such Member is unconditionally obligated to restore that deficit pursuant to the requirements of Treas. Reg. Section 1.704(b)(2)(ii)(b)(3)

It is the intention of the Members that the allocations hereunder shall be deemed to have "substantial economic effect" within the meaning of Section 704 of the Internal Revenue Code and Treas. Reg. Section 1.704-1, as now existing or hereafter amended. Should the provisions of this Agreement be inconsistent with or in conflict with Section 704 of the Code or the related Treasury Regulations, then

KY000041

Section 704 of the Code and the Regulations shall be deemed to override the contrary provisions hereof. If Section 704 or the Regulations at any time require that limited liability company operating agreements contain provisions which are not expressly set forth herein in order for the allocations to have significant economic effect, such provisions shall be incorporated into this Agreement by reference and shall be deemed a part of this Agreement to the same extent as though they had been expressly set forth herein, and the Members shall amend the terms of this Agreement to add such provisions, and any such amendment shall be retroactive to whatever extent required to create allocations with a substantial economic effect.

### 8.  Books, Records and Tax Returns

At all times during the continuance of the Limited Liability Company, the Manager shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The Limited Liability Company shall furnish to each Member, within seventy-five days after the end of each fiscal year, financial statements of the Limited Liability Company which shall include a balance as of the end of such fiscal year; a profit and loss statement of the Limited Liability Company for such fiscal year; a statement of the balance in the capital account of such Member; and the amount of such Member's share of the Limited Liability Company's income, gain, losses, deductions and other relevant items for Federal income tax purposes.

The Limited Liability Company shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. Within seventy-five days after the end of each fiscal year, the Limited Liability Company shall forward to each person who was a Member during the preceding fiscal year a true copy of the Limited Liability Company's information return filed with the Internal Revenue Service for the preceding fiscal year.

All such records, books of account, tax and information returns, and reports and statements, together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Liability Company, and shall be open to the inspection and examination of the Members or their duly authorized representatives during regular business hours. Each Member, or a duly authorized representative of such Member, may make copies of the Limited Liability Company's books of account and records at the expense of such Member. Any Member, at the expense of such Member, may conduct an audit of the Limited Liability Company's books of account and records.

The Limited Liability Company shall furnish to each Member, promptly upon request, a current list of the names and addresses of all of the Managers and Members of the Limited Liability Company, and any other persons or entities having any financial interest in the Limited Liability Company.

The cost of preparing all of the aforesaid records, books, returns and other items shall be borne by the Limited Liability Company. Upon request of the Limited Liability Company, the Members shall pay to the Limited Liability Company, in proportion to the Members' Percentage Interests, the cost of preparing same.

### 9.  Bank/Brokerage Accounts

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such bank/brokerage account or accounts as shall be designated by the Manager. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Liability Company and shall be made upon such signature or signatures as the Manager from time to time may designate.

KY000042

### 10.  Management of the Limited Liability Company

The Members hereby designate Keith Alan Yerian and Sun Yo Pak, Manager(s), having an address at 5767 Treasure Lane, Grant FL 32949 to serve as Managers for the Limited Liability Company.  The Managers shall serve until their successors are duly elected and qualified.

The Managers for the Limited Liability Company shall be elected, and can be discharged (without cause), as Managers by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.   The Manager(s) need not be a Member of the Limited Liability Company.

The business and affairs of the Limited Liability Company shall be conducted and managed by the Managers of the Limited Liability Company in accordance with this Agreement and the laws of the State of Florida.

The number of Managers may be changed from time to time by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests, but in no instance shall there be less than one Manager.  At any time there is more than one Manager, any difference arising as to any matter within the authority of Managers shall be decided by a majority in number of the Managers.

The Manager shall have responsibility for the day-to-day management of the business and affairs of the Limited Liability Company and shall devote such time and attention as the Manager deem necessary to the conduct and management of the business and affairs of the Limited Liability Company.

Each of the Managers hereby is given sole power and authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company.  Unless authorized by the Manager, no other person shall have the power or authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company.  No person, firm or corporation dealing with the Limited Liability Company shall be required to investigate the authority of the Manager or to secure the approval of or confirmation by the Members of any act of the Manager in connection with the business or affairs of the Limited Liability Company.

No Member shall have the authority, or shall take any action as a Member, to bind the Limited Liability Company.  Each Member shall indemnify the Limited Liability Company from and against any cost or expense incurred by the Limited Liability Company as a result of any unauthorized action by such Member.

Except as provided elsewhere in this Agreement, or by non-waivable provisions of applicable law, the Manager shall possess and enjoy all rights and powers necessary or appropriate for the conduct and management of the business and affairs of the Limited Liability Company and hereby are authorized to make all decisions relating to the business and affairs of the Limited Liability Company.  The Manager may make decisions relating to: the purchase, sale, exchange, lease, transfer, encumbrance or other acquisition or disposition of any property, for cash, other property, or on terms; the borrowing of money and the obtaining of loans, secured and unsecured, for the Limited Liability Company and in connection therewith the issuance of notes, debentures and other debt securities and the securing of the same by assigning for security purposes, pledging or hypothecating all or part of assets of the Limited Liability Company; the expenditure of the capital and receipts of the Limited Liability Company in furtherance of the business of the Limited Liability Company; the purchase of equipment, supplies and services as the Manager deem appropriate; the lending or advancing of money to third parties in connection with the business of the Limited Liability Company; the investment of funds of the Limited Liability Company in interest-bearing bank deposits, governmental obligations, institutional and insured short-term debt securities and short-term commercial paper, pending disbursement of the Limited Liability Company's funds or to provide a source from which to meet contingencies; the purchase of hazard,

KY000043

liability and other insurance which the Manager may deem necessary or proper; the employment of attorneys, accountants, brokers, consultants and other persons, firms and corporations to render services to the Limited Liability Company as the Manager may deem necessary or proper; the enforcement, compromise and settlement of any rights or claims in favor of or against the Limited Liability Company or any nominee of the Limited Liability Company; and the taking of all other actions and the execution and delivery of any and all other instruments and agreements as the Manager may deem appropriate to carry out the intents and purposes of this Agreement.

The Manager may employ on behalf of the Limited Liability Company, on such terms and for such compensation as the Manager may determine, any persons, firms or corporations, including accountants and attorneys, as the Manager, in their sole judgment shall deem desirable for the business and affairs of the Limited Liability Company. Any such person, firm or corporation may also be employed by the Manager in connection with any other business of the Manager. The fact that any Member, or a member of his family or any affiliate of a Member, is directly or indirectly interested in or connected with any person, firm or corporation employed by the Limited Liability Company or from whom the Limited Liability Company may buy merchandise or services, shall not prohibit the Manager from employing or dealing with such person, firm or corporation on behalf of the Limited Liability Company upon reasonable terms and conditions, and subject to the Prohibited Transactions described in Article 11.

The Manager shall not receive any compensation for providing services as Manager to the Limited Liability Company.

A Manager's duty of care in the discharge of the Manager's duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law. In discharging the duties of a Manager, the Manager shall be fully protected in relying in good faith upon the records of the Limited Liability Company and upon such information, opinions, reports or statements by other Managers, Members, agents or other persons as to matters the Manager reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Liability Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold each Manager harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Manager by reason of any act or omission of the Manager made in good faith on behalf of the Limited Liability Company.

Any Manager may resign at any time by giving written notice to the Members of the Limited Liability Company, and such resignation shall take effect upon receipt of such notice or at such later time as may be specified in such notice. The acceptance of such resignation shall not be necessary to make it effective.

Except as expressly provided elsewhere in this Agreement, any decisions which are to be made by the Members, rather than the Managers, shall be made by the unanimous vote or consent of the Members.

### 11.  Prohibited Transactions

The Limited Liability Company Manager(s) hereby agree that no transactions will be made on behalf of the LLC members that are prohibited under IRC Sec. 4975. The term "Prohibited transaction" means any direct or indirect--

(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person (unless such loan is exempt from this section in accordance with the provisions of § 4975(d));

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

The term "disqualified person" means *a person or family member* who is—

(A) a fiduciary of the plan(s) that is a member of the LLC;

(B) a person providing services to the plan(s) that is a member of the LLC;

(C) an employer any of whose employees are covered by the plan;

(D) an employee organization any of whose members are covered by the plan;

(E) an owner, direct or indirect, of 50 percent or more of a corporation, partnership, or trust or estate.

(F) an officer, director (or an individual having powers or responsibilities similar to those of officers or directors), a 10 percent or more shareholder, or a highly compensated employee (earning 10 percent or more of the yearly wages of an employer) of a person described herein.

The term "family member" of any individual shall include a spouse, ancestor, lineal descendant, and any spouse of a lineal descendant.

### 12.  Meetings of Manager(s)/Members

The annual meeting of the Manager(s) shall be held on the first Tuesday in the month of January, at 10:00 A.M., at the principal office of the Limited Liability Company, for the purpose of transacting such business as may come before the meeting. If the day fixed for the annual meeting shall be a legal holiday, such meeting shall be held on the next succeeding business day.

The Manager(s) may by resolution prescribe the time and place for the holding of regular meetings and may provide that the adoption of such resolution shall constitute notice of such regular meetings.

Special meetings of the Manager(s), for any purpose or purposes, may be called by any two Members or Manager(s) holding 50% or more of the LLC units.

Written or telephonic notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than three days before the date of the meeting, either personally or by mail, to each Member of record entitled to vote at such meeting. When all the Manager(s) of the Limited Liability Company are present at any meeting, or if those not present sign a written waiver of notice of such meeting, or subsequently ratify all

the proceedings thereof, the transactions of such meeting shall be valid as if a meeting had been formally called and notice had been given.

At all meetings of the Manager(s) or Members, a Member may vote by proxy executed in writing by the Member or by a duly authorized attorney-in-fact of the Member.  Such proxy shall be filed with the Limited Liability Company before or at the time of the meeting.  No proxy shall be valid after three months from the date of execution, unless otherwise provided in the proxy.

If at any time a Member is a corporation, partnership or limited liability company, the interest of such Member may be voted by such officer, partner, agent or proxy of such Member as the bylaws, board directors, or other organization documents of such entity may duly authorize.

Unless otherwise provided by law, any action required to be taken at a meeting of the Members, or any other action which may be taken at a meeting of the Members, may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all of the Members entitled to vote with respect to the subject thereof.

Members of the Limited Liability Company may participate in any meeting of the Members or Managers by means of conference telephone or similar communication if all persons participating in such meeting can hear one another for the entire discussion of the matters to be voted upon.  Participation in a meeting pursuant to this paragraph shall constitute presence in person at such meeting.

### 13.  Assignment of Interests

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Liability Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, including without limitation the capital, profits or distributions of the Limited Liability Company without the prior written consent of the Manager(s) in each instance.

The Members agree that no Member may voluntarily withdraw from the Limited Liability Company without the unanimous vote or consent of the Manager(s).

No assignment, transfer or other disposition of all or any part of the interest of any Member permitted under this Agreement shall be binding upon the Limited Liability Company unless and until a duly executed and acknowledged counterpart of such assignment or instrument of transfer, in form and substance satisfactory to the Limited Liability Company, has been delivered to the Limited Liability Company.

As between a Member and an assignee or transferee of such Member's interest in accordance with this Agreement, allocations and distributions for any fiscal year shall be apportioned as of the date of the assignment or transfer, on the basis of the number of days before and after said date, without regard to the results of the Limited Liability Company's operations before or after the assignment or transfer.

No assignment or other disposition of any interest of any Member may be made if such assignment or disposition, alone or when combined with other transactions, would result in the termination of the Limited Liability Company within the meaning of Section 708 of the Internal Revenue Code or under any other relevant section of the Code or any successor statute.  No assignment or other disposition of any interest of any Member may be made without an opinion of counsel satisfactory to the Limited Liability Company that such assignment or disposition is subject to an effective registration under, or exempt from the registration requirements of, the applicable State and Federal securities laws.  No interest in the Limited Liability Company may be assigned or given to any person below the age of 21 years or to a person who has been adjudged to be insane or incompetent.

KY000046

Anything herein contained to the contrary, the Manager and the Limited Liability Company shall be entitled to treat the record holder of the interest of a Member as the absolute owner thereof, and shall incur no liability by reason of distributions made in good faith to such record holder, unless and until there has been delivered to the Limited Liability Company the assignment or other instrument of transfer and such other evidence as may be reasonably required by the Limited Liability Company to establish to the satisfaction of the Limited Liability Company that an interest has been assigned or transferred in accordance with this Agreement.

### 14.  Right of First Refusal

If a Member desires to sell, transfer or otherwise dispose of all or any part of his interest in the Limited Liability Company, such Member (the "Selling Member") shall first offer to sell and convey such interest to the other Members before selling, transferring or otherwise disposing of such interest to any other person, corporation or other entity.  Such offer shall be in writing, shall be given to every other Member, and shall set forth the interest to be sold, the purchase price to be paid, the date on which the closing is to take place (which date shall be not less than thirty nor more than sixty days after the delivery of the offer), the location within the State of Florida at which the closing is to take place, and all other material terms and conditions of the sale, transfer or other disposition.

Within fifteen days after the delivery of said offer the other Members shall deliver to the Selling Member a written notice either accepting or rejecting the offer.  Failure to deliver said notice within said fifteen days conclusively shall be deemed a rejection of the offer.  Any or all of the other Members may elect to accept the offer, and if more than one of the other Members elects to accept the offer, the interest being sold and the purchase price therefore shall be allocated among the Members so accepting the offer in proportion to their Members' Percentage Interests, unless they otherwise agree in writing.

If any or all of the other Members elect to accept the offer, then the closing of title shall be held in accordance with the offer and the Selling Member shall deliver to the other Members who have accepted the offer an assignment of the interest being sold by the Selling Member, and said other Members shall pay the purchase price prescribed in the offer.

If no other Member accepts the offer, or if the Members who have accepted such offer default in their obligations to purchase the interest, then the Selling Member within 120 days after the delivery of the offer may sell such interest to any other person or entity at a purchase price which is not less than the purchase price prescribed in the offer and upon terms and conditions which are substantially the same as the terms and conditions set forth in the offer, provided all other applicable requirements of this Agreement are complied with.  An assignment of such interest to a person or entity who is not a Member of the Limited Liability Company shall only entitle such person or entity to the allocations and distributions to which the assigned interest is entitled, unless such person or entity applies for admission to the Limited Liability Company and is admitted to the Limited Liability Company as a Member in accordance with this Agreement.

If the Selling Member does not sell such interest within said 120 days, then the Selling Member may not thereafter sell such interest without again offering such interest to the other Members in accordance with this Article 14.

### 15.  Admission of New Members

The Manager may admit new Members (or transferees of any interests of existing Members) into the Limited Liability Company by the unanimous vote or consent of the Managers.

KY000047

As a condition to the admission of a new Member, such Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Limited Liability Company, as the Limited Liability Company may deem necessary or desirable to effectuate such admission and to confirm the agreement of such Member to be bound by all of the terms, covenants and conditions of this Agreement, as the same may have been amended.   Such new Member shall pay all reasonable expenses in connection with such admission, including without limitation reasonable attorneys' fees and the cost of the preparation, filing or publication of any amendment to this Agreement or the Certificate of Formation, which the Limited Liability Company may deem necessary or desirable in connection with such admission.

No new Member shall be entitled to any retroactive allocation of income, losses, or expense deductions of the Limited Liability Company.  The Limited Liability Company may make pro rata allocations of income, losses or expense deductions to a new Member for that portion of the tax year in which the Member was admitted in accordance with Section 706(d) or the Internal Revenue Code and regulations thereunder.

In no event shall a new Member be admitted to the Limited Liability Company if such admission would be in violation of applicable Federal or State securities laws or would adversely affect the treatment of the Limited Liability Company as a partnership for income tax purposes.

### 16.  Withdrawal Events Regarding Members and Election to Continue the Limited Liability Company

In the event of the death, retirement, withdrawal, expulsion, or dissolution of a Member, or an event of bankruptcy or insolvency, as hereinafter defined, with respect to a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Limited Liability Company pursuant to the laws of the State of Florida (each of the foregoing being hereinafter referred to as a "Withdrawal Event"), the Limited Liability Company shall terminate sixty days after notice to the Members of such Withdrawal Event unless the business of the Limited Liability Company is continued as hereinafter provided.

Notwithstanding a Withdrawal Event with respect to a Member, the Limited Liability Company shall not terminate, irrespective of applicable law, if within aforesaid sixty day period the remaining Members, by the unanimous vote or consent of the Members (other than the Member who caused the Withdrawal Event), shall elect to continue the business of the Limited Liability Company.

In the event of a Withdrawal Event with respect to any Member, any successor in interest to such Member (including without limitation any executor, administrator, heir, committee, guardian, or other representative or successor) shall not become entitled to any rights or interest of such Member in the Limited Liability Company, other than the allocations and distributions to which such Member is entitled, unless such successor in interest is admitted as a Member in accordance with this Agreement.

Notwithstanding the foregoing, if the Limited Liability Company has only one Member and a Withdrawal Event occurs with respect to such Member, the successors in interest to such Member shall be entitled to elect to continue the Limited Liability Company as aforesaid.

An "event of bankruptcy or insolvency" with respect to a Member shall occur if such Member:  applies for or consents to the appointment of a receiver, trustee or liquidator of all or a substantial part of his assets; or makes a general assignment for the benefit of creditors; or is adjudicated a bankrupt or an insolvent; or files a voluntary petition in bankruptcy or a petition or an answer seeking an arrangement with creditors or to take advantage of any bankruptcy, insolvency, readjustment of debt or similar law or statute, or an answer admitting the material allegations of a petition filed against him in any bankruptcy, insolvency, readjustment of debt or similar proceedings; or takes any action for the purpose of effecting any of the foregoing; or an order, judgment or decree shall be entered, with or without the application, approval or consent of such Member, by any court of competent jurisdiction, approving a

KY000048

petition for or appointing a receiver or trustee of all or a substantial part of the assets of such Member, and such order, judgment or decree shall continue unstayed and in effect for thirty days.

## 17. Dissolution and Liquidation

The Limited Liability Company shall terminate upon the occurrence of any of the following: the expiration of the period fixed for the duration of the Limited Liability Company pursuant to Article 5, as the same may be extended by the Members; the election by the Members to dissolve the Limited Liability Company made by the unanimous vote or consent of the Members; the occurrence of a Withdrawal Event with respect to a Member and the failure of the remaining Members to elect to continue the business of the Limited Liability Company as provided for in Article 16 above; or any other event which pursuant to this Agreement, as the same may hereafter be amended, shall cause a termination of the Limited Liability Company.

The liquidation of the Limited Liability Company shall be conducted and supervised by a person designated for such purposes by the unanimous vote or consent of the Members (the "Liquidating Agent"). The Liquidating Agent hereby is authorized and empowered to execute any and all documents and to take any and all actions necessary or desirable to effectuate the dissolution and liquidation of the Limited Liability Company in accordance with this Agreement.

Promptly after the termination of the Limited Liability Company, the Liquidating Agent shall cause to be prepared and furnished to the Members a statement setting forth the assets and liabilities of the Limited Liability Company as of the date of termination. The Liquidating Agent, to the extent practicable, shall liquidate the assets of the Limited Liability Company as promptly as possible, but in an orderly and businesslike manner so as not to involve undue sacrifice.

The proceeds of sale and all other assets of the Limited Liability Company shall be applied and distributed in the following order of priority: (a) to the payment of the expenses of liquidation and the debts and liabilities of the Limited Liability Company, other than debts and liabilities to Members; (b) to the payment of debts and liabilities to Members; (c) to the setting up of any reserves which the Liquidating Agent may deem necessary or desirable for any contingent or unforeseen liabilities or obligations of the Limited Liability Company, which reserves shall be paid over to an attorney-at-law admitted to practice in the State of Florida as escrow agent, to be held for a period of two years for the purpose of payment of the aforesaid liabilities and obligations, at the expiration of which period the balance of such reserves shall be distributed as hereinafter provided; (d) to the Members in proportion to their respective capital accounts until each Member has received cash distributions equal to any positive balance in his capital account, in accordance with the rules and requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b); and (e) to the Members in proportion to the Members' Percentage Interests.

The liquidation shall be complete within the period required by Treas. Reg. Section 1.704-1(b)(2)(ii)(b).

If the Liquidating Agent shall determine that it is not practicable to liquidate all of the assets of the Limited Liability Company, the Liquidating Agent may retain assets having a fair market value equal to the amount by which the net proceeds of liquidated assets are insufficient to satisfy the debts and liabilities referred to above. If, in the absolute judgment of the Liquidating Agent, it is not feasible to distribute to each Member his proportionate share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Member in such manner as the Liquidating Agent shall determine to be fair and equitable, taking into consideration the basis for tax purposes of each asset.

Upon compliance with the distribution plan, the Members shall cease to be such, and the Limited Liability Company shall execute, acknowledge and cause to be filed such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Liability Company.

KY000049

### 18. Representations of Members

Each of the Members represents, warrants and agrees that the Member is acquiring the interest in the Limited Liability Company for the Member's own account as an investment and not with a view to the sale or distribution thereof.   Member shall not dispose of such interest or any part thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any State or other governmental authorities, as the same may be amended.

### 19. Certificates Evidencing Membership

Every membership interest in the Limited Liability Company shall be evidenced by a Certificate of Membership issued by the Limited Liability Company. Each Certificate of Membership shall set forth the name of the Member holding the membership interest and the Member's Percentage Interest held by the Member.  The membership interest represented by this certificate is subject to, and may not be transferred except in accordance with, the provisions of the Operating Agreement of Yerian Properties LLC, as the same from time to time may be amended, a copy of which Operating Agreement is on file at the principal office of the Limited Liability Company.

### 20. Notices

All notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be in writing and shall be deemed to have been properly given if sent by Federal Express courier or by registered or certified mail, return receipt requested, with postage prepaid, addressed as follows:  (a) if to the Limited Liability Company, to the Limited Liability Company c/o the Manager at their address first above written or to such other address or addresses as may be designated by the Limited Liability Company or the Manager by notice to the Members pursuant to this Article 20; (b) if to the Manager, to the Manager at their address first above written or to such other address or addresses as may be designated by the Manager by notice to the Limited Liability Company and the Members pursuant to this Article 20; and (c) if to any Member, to the address of said Member first above written, or to such other address as may be designated by said Member by notice to the Limited Liability Company and the other Members pursuant to this Article 20. Each Member shall keep the Limited Liability Company and the other Members informed of such Member's current address.

### 21. Power of Attorney

Each Member agrees to execute, acknowledge, swear to, deliver, file, record and publish such further certificates, instruments and documents, and do all such other acts and things as may be required by law, or as may, in the opinion of the Manager, be necessary or desirable to carry out the intents and purposes of this Agreement.

Each Member, whether a signatory hereto or a subsequently admitted Member, hereby irrevocably constitutes and appoints the Manager (including any successor Manager) the true and lawful attorney-in-fact of such Member, and empower and authorize such attorney-in-fact, in the name, place and stead of each Member, to execute, acknowledge, swear to and file the Certificate of Formation and any amendments thereto, and any other certificates, instruments and documents which may be required to be executed or filed under laws of any State or of the United States, or which the Manager shall deem

advisable to execute or file, including without limitation all instruments which may be required to effectuate the formation, continuation, termination, distribution or liquidation of the Limited Liability Company.

It is expressly acknowledged by each Member that the foregoing power of attorney is coupled with an interest and shall survive any assignment by such Member of such Member interest in the Limited Liability Company; provided, however, that if such Member shall assign all of his interest in the Limited Liability Company and the assignee shall become a substituted Member in accordance with this Agreement, then such power of attorney shall survive such assignment only for the purpose of enabling the Manager to execute, acknowledge, swear to and file all instruments necessary or appropriate to effectuate such substitution.

A power of attorney similar to the foregoing shall be one of the instruments which the Manager may require a new Member to execute and acknowledge; however, the power of attorney in this Agreement shall be binding upon any new Member even in the absence of such separate power of attorney.

Upon the election of any new Manager, each Member at the request of the Manager shall execute and acknowledge a new power of attorney as provided above expressly in favor of such new Manager; however, the power of attorney provided above shall inure to the benefit of each new Manager even in the absence of such new confirmatory power of attorney.

### 22. Arbitration

Any dispute, controversy or claim arising out of or in connection with this Agreement or any breach or alleged breach hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in the city in which the principal place of business of the Limited Liability Company is then located, pursuant to the commercial arbitration rules then in effect of the American Arbitration Association (or at any other time or place or under any other form of arbitration mutually acceptable to the parties involved). Any award rendered shall be final and conclusive upon the parties and a judgment thereon may be entered in a court of competent jurisdiction. The expenses of the arbitration shall be borne equally by the parties to the arbitration, provided that each party shall pay for and bear the cost of its own experts, evidence and attorneys' fees, except that in the discretion of the arbitrator any award may include the attorneys' fees of a party if the arbitrator expressly determines that the party against whom such award is entered has caused the dispute, controversy or claim to be submitted to arbitration as a dilatory tactic or in bad faith.

### 23. Amendments

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the affirmative vote or consent of Members holding two-thirds of the Members' Percentage Interests. No amendment may be made to Articles 6, 8, 13 and 17 hereof, insofar as said Articles apply to the financial interests of the Members, except by the vote or consent of all of the Members. No amendment of any provision of this Agreement relating to the voting requirements of the Members on any specific subject shall be made without the affirmative vote or consent of at least the number or percentage of Members required to vote on such subject.

### 24. Miscellaneous

This Agreement and the rights and liabilities of the parties hereunder shall be governed by and determined in accordance with the laws of the State of Florida. Every provision of this Agreement

KY000051

is intended to be severable.  If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement.  All pronouns shall be deemed to be the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.  References to a person or persons shall include partnerships, corporations, limited liability companies, unincorporated associations, trusts, estates and other types of entities.  References to the Internal Revenue Code shall mean the Internal Revenue Code of 1986, as amended, and any successor or superseding Federal revenue statute.

This Agreement, and any amendments hereto may be executed in counterparts all of which taken together shall constitute one agreement.

This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter hereof.  It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of Federal income tax rules or is expressly prohibited or ineffective under the State of Florida LLC Law, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule.  To the extent any provision of this Agreement is prohibited or otherwise ineffective under the State of Florida LLC Law, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the State of Florida LLC Law.  If the State of Florida LLC Law is subsequently amended or interpreted in such a way to make any provision of this Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

**SEE APPENDIX A – SUBSCRIPTION PAGE**

KY000052

==========================================================

# OPERATING AGREEMENT

## OF

**Yerian Properties LLC**

==========================================================

KY000053

# APPENDIX A - SUBSCRIPTION PAGE

Yerian Properties LLC

Dated: _____, 2014

**UNITS TO BE PURCHASED:** The number and value of the units currently offered by the Limited Liability Company are set forth below. Each of the Members shall contribute to the capital of the Limited Liability Company the amount set forth below. As per Article VI of the Operating Agreement, the Manager is not required to make a capital contribution, and shall not contribute to the capital. Further, the LLC manager, if the account holder shall not be paid a fee for management services.

The manager shall keep records of any additional capital added to the Limited Liability Company at the Company's place of business listed in the records of the Secretary of State for the State of Florida. The name and address of the Limited Liability Company Registered Agent is: Nationwide Corporate Services Inc. with an address of: 80 SW 8th St., Suite 2000, Miami FL 33130.

I hereby subscribe to purchase the units issued by the LLC and to purchase the amount of the units specified below in accordance with the terms and condition of this.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the date first above written.

## MANAGER(S):

| NAME OF MANAGER(S) | PERCENTAGE INTEREST |
|---|---|
| Name: Keith Alan Yerian and Sun Yo Pak<br>Address:5767 Treasure Lane, Grant FL 32949<br><br>Phone:<br>SSN: | No financial interest in the LLC.<br><br>No management fees to be paid from LLC funds. |

Signature of Manager(s):

_____Date:_____

_____Date:_____

KY000054

## MEMBER

| CUSTODIAL AGENT: | |
|---|---|
| Name of Custodial Agent: IRA Services Trust Company | **Total LLC units:** |
| Name of Account Holder: Keith Alan Yerian | |
| IRA #: | |
| SSN: | **Total purchased:** |
| Custodial Agent's Address: P.O. Box 7080 | At $_____ per unit |
| San Carlos, CA 94070-7080 | |

**Signature of Member:**

_____ Date:_____

For: _____

# APPENDIX A - SUBSCRIPTION PAGE

Yerian Properties LLC

Dated: _Sept 26_ , 2014

**UNITS TO BE PURCHASED:** The number and value of the units currently offered by the Limited Liability Company are set forth below.   Each of the Members shall contribute to the capital of the Limited Liability Company the amount set forth below. As per Article VI of the Operating Agreement, the Manager is not required to make a capital contribution, and shall not contribute to the capital.  Further, the LLC manager, if the account holder shall not be paid a fee for management services.

The manager shall keep records of any additional capital added to the Limited Liability Company at the Company's place of business listed in the records of the Secretary of State for the State of Florida.  The name and address of the Limited Liability Company Registered Agent is: Nationwide Corporate Services Inc. with an address of: 80 SW 8th St., Suite 2000, Miami FL 33130.

I hereby subscribe to purchase the units issued by the LLC and to purchase the amount of the units specified below in accordance with the terms and condition of this.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the date first above written.

## MANAGER(S):

| NAME OF MANAGER(S) | PERCENTAGE INTEREST |
|---|---|
| Name: Keith Alan Yerian and Sun Yo Pak<br>Address:5767 Treasure Lane, Grant FL 32949 | **No financial interest in the LLC.** |
| Phone:<br>SSN: | **No management fees to be paid from LLC funds.** |

Signature of Manager(s):

Date: _Sept 26 /2014_

Date:

KY000056