# Exhibit Cover Sheet

**Party submitting:** Defendants'  **Ex. # 4**

**Admitted: Yes   or    No  (circle one)**

**Debtor:  Keith A. Yerian**

**Case No.: 6:15-bk-01720-KSJ**

*Adv. No.***: 6:15-ap-00064-KSJ**

**Nature of Hearing/Docket No: Trial on Amended Complaint (Adv. Pro. Doc. No. 55) & Trustee's Objection to Property Claimed Exempt (Main Case Doc. No. 46)**

**United States Bankruptcy Court**
**Middle District of Florida**

**Dated         _____, 2016.**

**By:  _____,   Deputy Clerk**

===========================================================

# OPERATING AGREEMENT

## OF

Yerian Properties LLC

===========================================================

TIRA0037

# OPERATING AGREEMENT

## OF

### Yerian Properties LLC

**DECLARATION OF AGREEMENT**, made this _____ day of _____, 2012, by IRA Services Trust Company FBO Keith Alan Yerian Account # _____, Member, having an address at P.O. Box 7080, San Carlos CA 94070-7080 ("Member"). Said Member and such other persons or entities that hereafter become Members in accordance with the provisions of this Agreement are hereinafter referred to as "Members".

**WITNESSETH**:

**WHEREAS**, the Member desires to form a limited liability company pursuant to the laws of the State of Florida for the purposes hereinafter set forth, and to establish the rights and obligations of Members in connection with the limited liability company;

**NOW, THEREFORE**, in consideration of the mutual covenants set forth herein and other valuable consideration, the agreement of the Members shall be as follows:

### 1. Formation

The Member hereby has formed a limited liability company (the "Limited Liability Company") pursuant to the provisions of the Florida LLC law, for the purposes and the period and upon the terms and conditions hereinafter set forth. The Member has caused to be filed the Articles of Organization of the Limited Liability Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.

### 2. Name

The name of the Limited Liability Company shall be Yerian Properties LLC, and all business of the Limited Liability Company shall be conducted under said name, or such other name as the Members from time to time may determine.

### 3. Purposes

The purposes of the Limited Liability Company are for all lawful purposes. The Limited Liability Company may acquire such assets and engage in investments of all types. The company may enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Liability Company; and to carry on any other activities necessary to, in connection with or incidental to the foregoing, as the Manager(s) in their discretion may deem desirable.

The Limited Liability Company may also incur indebtedness; so long as retirement plan assets are not used to secure the debt (see prohibited transactions, Article 11). The managers understand and agree that unrelated business income tax may apply to certain LLC activities and debt financing.

#### 4. Place of Business

The principal place of business and specified office of the Limited Liability Company shall be at 17878 Galehouse Rd., Doylestown OH 44230, or at such other or additional places of business within or outside of the State of Florida as the Manager from time to time may designate. The office at which the records required to be maintained by the Limited Liability Company are to be kept at 17878 Galehouse Rd., Doylestown OH 44230, or at such other or additional places of business within or outside of the State of Florida as the Manager from time to time may designate. The Manager shall notify the other Members of any change of the principal place of business and specified office.

The Limited Liability Company hereby designates Nationwide Corporate Services Inc. as the Registered Agent of the Limited Liability Company, with an address of 80 SW 8th St., Suite 2000, Miami FL 33130, for service of process.

The registered office and Registered Agent may be changed from time to time by the Manager by filing the prescribed forms with the appropriate governmental authorities.

#### 5. Term

The term of the Limited Liability Company shall commence on the filing of the Certificate of Formation of the Limited Liability Company, and continue until Limited Liability Company is terminated in accordance with this Agreement.

#### 6. Capital Contributions

The Member shall contribute to the capital of the Limited Liability Company as outlined in Appendix A. The Members shall not be required to make any additional capital contributions unless (a) agreed in writing by a new Subscription agreement; or (b) required pursuant to the terms of Section 7 of this Operating Agreement to restore a deficit balance in a Member's capital account.

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce his contributions to the capital of the Limited Liability Company until the termination of the Limited Liability Company. No Member shall have the right to demand and receive any distribution from the Limited Liability Company in any form other than cash, regardless of the nature of such Member's capital contribution.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Liability Company shall be limited to paying: the capital contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Liability Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Liability Company.

#### 7. Allocations and Distributions

7.1   Definitions.

As used in this Agreement, the terms "net profits" and "net losses" shall mean the profits or losses of the Limited Liability Company from the conduct of the Limited Liability Company's business, after all expenses incurred in connection therewith have been paid or provided for, including any allowance for depreciation or amortization of the cost of the realty. The net profits or net losses of the Limited Liability Company shall be determined by the Limited Liability Company's accountants in accordance with generally accepted accounting principles applied in determining the income, gains,

expenses, deductions or losses, as the case may be, reported by the Limited Liability Company for Federal income tax purposes.

The term "cash receipts" shall mean all cash receipts of the Limited Liability Company from whatever source derived, including without limitation capital contributions made by the Members; the proceeds of any sale, exchange, condemnation or other disposition of all or any part of the realty or other assets of the Limited Liability Company; the proceeds of any loan to the Limited Liability Company; the proceeds of any mortgage or refinancing of any mortgage on all or any part of the realty or other assets of the Limited Liability Company; the proceeds of any insurance policy for fire or other casualty damage payable to the Limited Liability Company; and the proceeds from the liquidation of the realty or other assets of the Limited Liability Company following a termination of the Limited Liability Company.

The term "capital transactions" shall mean any of the following: the sale of all or any part of the realty or other assets of the Limited Liability Company or interests therein; the refinancing or recasting of mortgages or other liabilities of the Limited Liability Company; the condemnation of the realty to the extent the award is not used for restoration; the receipt of insurance proceeds; and any other similar or extraordinary receipts or proceeds which in accordance with generally accepted accounting principles are attributable to capital, including transactions in connection with the termination and dissolution of the Limited Liability Company.

The "capital account" for each Member shall mean the account established, determined and maintained for such Member in accordance with Section 704(b) of the Internal Revenue Code and Treasury Regulation Section 1.704-1(b)(2)(iv).

The term "Members' Percentage Interests" shall mean the percentages set forth opposite the name of each Member on the attached Subscription page.

### 7.2    Allocations to Have Significant Economic Effect.

**Maintenance of Capital Accounts**:    The capital account for each Member shall be maintained in accordance with the requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(1) as now existing or hereafter amended. Without limiting the generality of that requirement, the capital account for each Member shall be **increased by** (1) the amount of money contributed by such Member to the Limited Liability Company, (2) the fair market value of property contributed by such Member to the Limited Liability Company (net of liabilities secured by such contributed property that the Limited Liability Company is considered to assume or take subject to under Section 752 of the Internal Revenue Code), and (3) allocations to such Member of Limited Liability Company income and gain (or items thereof), including income and gain exempt from tax and income and gain described in Treas. Reg. Section 1.704-1(b)(2)(iv)(g), but excluding income and gain described in subsection (b)(4)(i) of said Regulation, and shall be **decreased by** (4) the amount of money distributed to such Member by the Limited Liability Company, (5) the fair market value of property distributed to such Member by the Limited Liability Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Section 752 of the Code), (6) allocations to such Member of expenditures of the Limited Liability Company described in Section 705(a)(2)(B) of the Code, and (7) allocations of Limited Liability Company loss and deduction (or items thereof) including loss and deduction described in Treas. Reg. Section 1.704-1(b)(2)(iv)(g), but excluding items described in (6) above and loss or deduction described in subsections (b)(4)(i) or (b)(4)(iii) of said Regulation. Net profits and net losses of the Limited Liability Company from other than capital transactions, as of the end of any fiscal year or other period, shall be credited or charged to the capital accounts of the Members prior to any charge or credit to said capital accounts for net profits and net losses of the Limited Liability Company from capital transactions as of the end of such fiscal year or other period. The capital account for each Member shall be otherwise adjusted in accordance with the additional rules of Treas. Reg. Section 1.704-1(b)(2)(iv).

During each fiscal year, the net profits and net losses of the Limited Liability Company (other than from capital transactions), and each item of income, gain, loss, deduction or credit entering

into the computation thereof, shall be credited or charged, as the case may be, to the capital accounts of each Member in proportion to the Members' Percentage Interests. The net profits of the Limited Liability Company from capital transactions shall be allocated in the following order of priority: (a) to offset any negative balance in the capital accounts of the Members in proportion to the amounts of the negative balance in their respective capital accounts, until all negative balances in the capital accounts have been eliminated; then (b) to the Members in proportion to the Members' Percentage Interests. The net losses of the Limited Liability Company from capital transactions shall be allocated in the following order of priority: (a) to the extent that the balances in the capital accounts of any Members are in excess of their original contributions, to such Members in proportion to such excess balances in the capital accounts until all such excess balances have been reduced to zero; then (b) to the Members in proportion to the Members' Percentage Interests.

The cash receipts of the Limited Liability Company shall be applied in the following order of priority: (a) to the payment by the Limited Liability Company of amounts due on debts and liabilities of the Limited Liability Company other than to any Member, and operating expenses of the Limited Liability Company; (b) to the payment of interest and amortization due on any loan made to the Limited Liability Company by any Member; (c) to the establishment of cash reserves determined by the Manager to be necessary or appropriate, including without limitation reserves for the operation of the Limited Liability Company's business, taxes and contingencies; and (d) to the repayment of any loans made to the Limited Liability Company by any Member. Thereafter, the cash receipts of the Limited Liability Company shall be distributed among the Members as hereafter provided.

Except as otherwise provided in this Agreement or required by law, distributions of cash receipts of the Limited Liability Company, other than from capital transactions, shall be allocated among the Members in proportion to the Members' Percentage Interests.

Except as otherwise provided in this Agreement or required by law, distributions of cash receipts from capital transactions shall be allocated in the following order of priority: (a) to the Members in proportion to their respective capital accounts until each Member has received cash distributions equal to any positive balance in his capital account; then (b) to the Members in proportion to the Members' Percentage Interests.

**Liquidation of Capital Accounts**:   Upon liquidation of the Limited Liability Company (or any Member's interest in the Limited Liability Company), liquidating distributions shall be made in accordance with the requirements of Treas. Reg. Section 1.704-1(b)(2)(ii)(b)(2) as now existing or hereafter amended.

**Deficit Makeup Requirement**:   If after liquidation any Member has a deficit in his or her capital account, such Member is unconditionally obligated to restore that deficit pursuant to the requirements of Treas. Reg. Section 1.704(b)(2)(ii)(b)(3)

It is the intention of the Members that the allocations hereunder shall be deemed to have "substantial economic effect" within the meaning of Section 704 of the Internal Revenue Code and Treas. Reg. Section 1.704-1, as now existing or hereafter amended. Should the provisions of this Agreement be inconsistent with or in conflict with Section 704 of the Code or the related Treasury Regulations, then Section 704 of the Code and the Regulations shall be deemed to override the contrary provisions hereof. If Section 704 or the Regulations at any time require that limited liability company operating agreements contain provisions which are not expressly set forth herein in order for the allocations to have significant economic effect, such provisions shall be incorporated into this Agreement by reference and shall be deemed a part of this Agreement to the same extent as though they had been expressly set forth herein, and the Members shall amend the terms of this Agreement to add such provisions, and any such amendment shall be retroactive to whatever extent required to create allocations with a substantial economic effect.

### 8. Books, Records and Tax Returns

At all times during the continuance of the Limited Liability Company, the Manager shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Liability Company in accordance with generally accepted accounting principles.

The Limited Liability Company shall furnish to each Member, within seventy-five days after the end of each fiscal year, financial statements of the Limited Liability Company which shall include a balance as of the end of such fiscal year; a profit and loss statement of the Limited Liability Company for such fiscal year; a statement of the balance in the capital account of such Member; and the amount of such Member's share of the Limited Liability Company's income, gain, losses, deductions and other relevant items for Federal income tax purposes.

The Limited Liability Company shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the Limited Liability Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. Within seventy-five days after the end of each fiscal year, the Limited Liability Company shall forward to each person who was a Member during the preceding fiscal year a true copy of the Limited Liability Company's information return filed with the Internal Revenue Service for the preceding fiscal year.

All such records, books of account, tax and information returns, and reports and statements, together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Liability Company, and shall be open to the inspection and examination of the Members or their duly authorized representatives during regular business hours. Each Member, or a duly authorized representative of such Member, may make copies of the Limited Liability Company's books of account and records at the expense of such Member. Any Member, at the expense of such Member, may conduct an audit of the Limited Liability Company's books of account and records.

The Limited Liability Company shall furnish to each Member, promptly upon request, a current list of the names and addresses of all of the Managers and Members of the Limited Liability Company, and any other persons or entities having any financial interest in the Limited Liability Company.

The cost of preparing all of the aforesaid records, books, returns and other items shall be borne by the Limited Liability Company. Upon request of the Limited Liability Company, the Members shall pay to the Limited Liability Company, in proportion to the Members' Percentage Interests, the cost of preparing same.

### 9. Bank/Brokerage Accounts

All funds of the Limited Liability Company shall be deposited in the Limited Liability Company's name in such bank/brokerage account or accounts as shall be designated by the Manager. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Liability Company and shall be made upon such signature or signatures as the Manager from time to time may designate.

### 10. Management of the Limited Liability Company

The Members hereby designate Keith Alan Yerian and Sun Yo Pak, Manager(s), having an address at 17878 Galehouse Rd., Doylestown OH 44230 to serve as Managers for the Limited Liability Company. The Managers shall serve until their successors are duly elected and qualified.

The Managers for the Limited Liability Company shall be elected, and can be discharged (without cause), as Managers by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests. The Manager(s) need not be a Member of the Limited Liability Company.

The business and affairs of the Limited Liability Company shall be conducted and managed by the Managers of the Limited Liability Company in accordance with this Agreement and the laws of the State of Florida.

The number of Managers may be changed from time to time by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests, but in no instance shall there be less than one Manager. At any time there is more than one Manager, any difference arising as to any matter within the authority of Managers shall be decided by a majority in number of the Managers.

The Manager shall have responsibility for the day-to-day management of the business and affairs of the Limited Liability Company and shall devote such time and attention as the Manager deem necessary to the conduct and management of the business and affairs of the Limited Liability Company.

Each of the Managers hereby is given sole power and authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. Unless authorized by the Manager, no other person shall have the power or authority to execute instruments on behalf of the Limited Liability Company and to otherwise bind the Limited Liability Company. No person, firm or corporation dealing with the Limited Liability Company shall be required to investigate the authority of the Manager or to secure the approval of or confirmation by the Members of any act of the Manager in connection with the business or affairs of the Limited Liability Company.

No Member shall have the authority, or shall take any action as a Member, to bind the Limited Liability Company. Each Member shall indemnify the Limited Liability Company from and against any cost or expense incurred by the Limited Liability Company as a result of any unauthorized action by such Member.

Except as provided elsewhere in this Agreement, or by non-waivable provisions of applicable law, the Manager shall possess and enjoy all rights and powers necessary or appropriate for the conduct and management of the business and affairs of the Limited Liability Company and hereby are authorized to make all decisions relating to the business and affairs of the Limited Liability Company. The Manager may make decisions relating to: the purchase, sale, exchange, lease, transfer, encumbrance or other acquisition or disposition of any property, for cash, other property, or on terms; the borrowing of money and the obtaining of loans, secured and unsecured, for the Limited Liability Company and in connection therewith the issuance of notes, debentures and other debt securities and the securing of the same by assigning for security purposes, pledging or hypothecating all or part of assets of the Limited Liability Company; the expenditure of the capital and receipts of the Limited Liability Company in furtherance of the business of the Limited Liability Company; the purchase of equipment, supplies and services as the Manager deem appropriate; the lending or advancing of money to third parties in connection with the business of the Limited Liability Company; the investment of funds of the Limited Liability Company in interest-bearing bank deposits, governmental obligations, institutional and insured short-term debt securities and short-term commercial paper, pending disbursement of the Limited Liability Company's funds or to provide a source from which to meet contingencies; the purchase of hazard, liability and other insurance which the Manager may deem necessary or proper; the employment of attorneys, accountants, brokers, consultants and other persons, firms and corporations to render services to the Limited Liability Company as the Manager may deem necessary or proper; the enforcement, compromise and settlement of any rights or claims in favor of or against the Limited Liability Company or any nominee of the Limited Liability Company; and the taking of all other actions and the execution and delivery of any and all other instruments and agreements as the Manager may deem appropriate to carry out the intents and purposes of this Agreement.

The Manager may employ on behalf of the Limited Liability Company, on such terms and for such compensation as the Manager may determine, any persons, firms or corporations, including accountants and attorneys, as the Manager, in their sole judgment shall deem desirable for the business and affairs of the Limited Liability Company. Any such person, firm or corporation may also be employed by the Manager in connection with any other business of the Manager. The fact that any Member, or a

member of his family or any affiliate of a Member, is directly or indirectly interested in or connected with any person, firm or corporation employed by the Limited Liability Company or from whom the Limited Liability Company may buy merchandise or services, shall not prohibit the Manager from employing or dealing with such person, firm or corporation on behalf of the Limited Liability Company upon reasonable terms and conditions, and subject to the Prohibited Transactions described in Article 11.

The Manager shall not receive any compensation for providing services as Manager to the Limited Liability Company.

A Manager's duty of care in the discharge of the Manager's duties to the Limited Liability Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law. In discharging the duties of a Manager, the Manager shall be fully protected in relying in good faith upon the records of the Limited Liability Company and upon such information, opinions, reports or statements by other Managers, Members, agents or other persons as to matters the Manager reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Liability Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Liability Company's assets, and to the extent permitted by law, the Limited Liability Company shall indemnify and hold each Manager harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Manager by reason of any act or omission of the Manager made in good faith on behalf of the Limited Liability Company.

Any Manager may resign at any time by giving written notice to the Members of the Limited Liability Company, and such resignation shall take effect upon receipt of such notice or at such later time as may be specified in such notice. The acceptance of such resignation shall not be necessary to make it effective.

Except as expressly provided elsewhere in this Agreement, any decisions which are to be made by the Members, rather than the Managers, shall be made by the unanimous vote or consent of the Members.

## 11. Prohibited Transactions

The Limited Liability Company Manager(s) hereby agree that no transactions will be made on behalf of the LLC members that are prohibited under IRC Sec. 4975. The term "Prohibited transaction" means any direct or indirect--

(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person (unless such loan is exempt from this section in accordance with the provisions of § 4975(d));

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

The term "disqualified person" means *a person or family member* who is—

(A) a fiduciary of the plan(s) that is a member of the LLC;

(B) a person providing services to the plan(s) that is a member of the LLC;

(C) an employer any of whose employees are covered by the plan;

(D) an employee organization any of whose members are covered by the plan;

(E) an owner, direct or indirect, of 50 percent or more of a corporation, partnership, or trust or estate.

(F) an officer, director (or an individual having powers or responsibilities similar to those of officers or directors), a 10 percent or more shareholder, or a highly compensated employee (earning 10 percent or more of the yearly wages of an employer) of a person described herein.

The term "family member" of any individual shall include a spouse, ancestor, lineal descendant, and any spouse of a lineal descendant.

### 12. Meetings of Manager(s)/Members

The annual meeting of the Manager(s) shall be held on the first Tuesday in the month of January, at 10:00 A.M., at the principal office of the Limited Liability Company, for the purpose of transacting such business as may come before the meeting. If the day fixed for the annual meeting shall be a legal holiday, such meeting shall be held on the next succeeding business day.

The Manager(s) may by resolution prescribe the time and place for the holding of regular meetings and may provide that the adoption of such resolution shall constitute notice of such regular meetings.

Special meetings of the Manager(s), for any purpose or purposes, may be called by any two Members or Manager(s) holding 50% or more of the LLC units.

Written or telephonic notice stating the place, day and hour of the meeting and, in the case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than three days before the date of the meeting, either personally or by mail, to each Member of record entitled to vote at such meeting. When all the Manager(s) of the Limited Liability Company are present at any meeting, or if those not present sign a written waiver of notice of such meeting, or subsequently ratify all the proceedings thereof, the transactions of such meeting shall be valid as if a meeting had been formally called and notice had been given.

At all meetings of the Manager(s) or Members, a Member may vote by proxy executed in writing by the Member or by a duly authorized attorney-in-fact of the Member. Such proxy shall be filed with the Limited Liability Company before or at the time of the meeting. No proxy shall be valid after three months from the date of execution, unless otherwise provided in the proxy.

If at any time a Member is a corporation, partnership or limited liability company, the interest of such Member may be voted by such officer, partner, agent or proxy of such Member as the bylaws, board directors, or other organization documents of such entity may duly authorize.