**<u>Exhibit Cover Sheet</u>**

**Party
submitting:     Defendants'  Ex. # 11**

**Admitted: Yes   or     No  (circle one)**

**Debtor:  Keith A. Yerian**

**Case No.: 6:15-bk-01720-KSJ**

*Adv. No.*: **6:15-ap-00064-KSJ**

**Nature of Hearing/Docket No: Trial on Amended Complaint
(Adv. Pro. Doc. No. 55) & Trustee's Objection to Property
Claimed Exempt (Main Case Doc. No. 46)**

**United States Bankruptcy Court
Middle District of Florida**

**Dated            _____, 2016.**

**By:  _____,   Deputy Clerk**

Complaint DY v KY etal Case # 11-CV-0720.pdf

IN THE COURT OF COMMON PLEAS
WAYNE COUNTY, OHIO

| | |
|---|---|
| ETC COMPUTERS, INC.<br>68 North Portage<br>Doylestown, OH 44230 | CASE NO. |
| | JUDGE |
| and | COMPLAINT |
| DEBORAH W. YERIAN<br>17830 Galehouse Road<br>Doylestown, OH 44230 | (JURY DEMAND ENDORSED HEREON) |
| Plaintiffs, | |
| vs. | |
| KEITH ALAN YERIAN<br>17878 Galehouse Road<br>Doylestown, OH 44230 | |
| and | |
| SUN YO PAK dba OPEN CLAIMS AND<br>MYP PUBLISHING<br>17878 Galehouse Road<br>Doylestown, OH 44230 | |
| and | |
| ROBERT W. MESSNER<br>3711 Dogwood Street, NW<br>Uniontown, OH 44685 | |
| and | |
| JOHN McLEOD dba SYSTEM<br>APPLICATIONS – SOFTWARE<br>SOLUTIONS<br>3845 Cedarbend Drive<br>La Crescenta, California 91214 | |
| and | |
| MWAGUSI SOFTWARE, LLC<br>7260 West Azure Drive<br>Las Vegas, Nevada 89130 | |
| Defendants. | |

CRITCHFIELD,
CRITCHFIELD
& JOHNSTON
ATTORNEYS AT LAW
125 NORTH MARKET STREET
P.O. BOX 599
WOOSTER, OH 44691-0599
(330) 264-4444

(stamp) FILED COMMON PLEAS COURT WAYNE COUNTY, OHIO 2011 NOV -8 PM 4:17 CLERK OF COURTS

Trustee's 1963

Complaint DY v KY etal Case # 11-CV-0720.pdf

Plaintiffs, ETC Computers, Inc. ("ETC") and Deborah Yerian ("Ms. Yerian") (collectively referred to as "Plaintiffs") and for their Complaint against Defendants Keith Yerian ("Mr. Yerian"), Sun Yo Pak dba Open Claims ("Ms. Pak" or "Open Claims"), Ms. Pak dba MYP Publishing ("MYP"), Robert W. Messner ("Mr. Messner"), John McLeod dba System Applications – Software Solutions ("Mr. McLeod" or "System Applications"), and Mwagusi Software, LLC ("Mwagusi") (collectively referred to as "Defendants"), state as follows:

## PARTIES, VENUE AND JURISDICTION

1.      ETC is a duly formed corporation under the laws of the State of Ohio with its principal place of business located in Doylestown, Ohio.

2.      Ms. Yerian is an individual who resides at 17830 Galehouse Road, Doylestown, Ohio, 44230. Ms. Yerian is Vice President and Secretary/Treasurer of ETC and a 50% shareholder.

3.      Mr. Yerian is an individual who resides at 17878 Galehouse Road, Doylestown, Ohio 44230. Mr. Yerian is the President of ETC and a 50% shareholder.

4.      Ms. Pak is an individual who resides at 17878 Galehouse Road, Doylestown, Ohio 44230. Ms. Pak, along with her husband, Mr. Yerian, operate businesses under the fictitious names of Open Claims and MYP Publishing.

5.      Mr. Messner is an individual who resides at 3711 Dogwood Street NW, Uniontown, Ohio, 44685. Mr. Messner is a former subcontractor of ETC pursuant to a Subcontractor Agreement for Consulting and Programming Services ("Subcontractor Agreement") attached as Exhibit A.

Trustee's 1964

Complaint DY v KY etal Case # 11-CV-0720.pdf

6.   Mr. McLeod is an individual who resides at 3845 Cedarbend Drive, La Crescenta, California, 91214. Mr. McLeod, along with Mr. Yerian, operate a business known as System Applications – Software Solutions with a principal place of business in La Crescenta, California.

7.   Upon information and belief, Mwagusi is a Nevada limited liability company located at 7260 West Azure Drive, Suite 140-862, Las Vegas, Nevada 89130.

8.   Venue is proper in this county under Civil Rule 3(B)(1), (2), (3), and/or (6) since at least one of the Defendants resides in this county and all the Defendants participated in tortious activity in this county that gave rise to these claims set forth below.

9.   This court has and may assert personal jurisdiction over Mr. McLeod and Mwagusi, pursuant to Ohio Rev. Code § 2307.382 (A)(1)and Civ. R. 4.3(A)(1) since they purposefully conducted and transacted business in the State of Ohio, including the transactions which are the subject of this lawsuit and engaged in a civil conspiracy with Mr. Yerian, an Ohio resident.

## FACTUAL BACKGROUND

10.   Mr. Yerian and Ms. Yerian were married on December 6, 1980 and the marriage ended in dissolution on December 20, 2004.

11.   The Yerians formed ETC on or about December 1996 and continued to conduct business and employed by ETC after the dissolution of their marriage.

12.   ETC primarily engages in the business of computer technology services, including but not limited to, providing computer hardware and software sales and service, including consulting, programming and website design and management.

13.   Mr. Yerian provided the majority of the technical expertise for ETC while Ms. Yerian provided the office administration, accounting and business services for ETC.

Trustee's 1965

Complaint DY v KY etal Case # 11-CV-0720.pdf

14. At its peak, ETC employed 40 individuals and had yearly revenue is excess of $2.5 million with three offices.

15. Beginning in 2007 and continuing to the present, Mr. Yerian began providing computer services for ventures outside of ETC.

16. Upon information and belief, Mr. Yerian formed, assisted and/or had an ownership interest in a business called Universal Sales Solutions, Ltd. ("Universal Sales").

17. Universal Sales provided similar consulting services as ETC and began serving one of ETC's biggest customers, J.L. Smith and its related entities.

18. Universal Sales and/or Mr. Yerian allowed or permitted J.L. Smith to retain ETC proprietary software and programming codes.

19. In addition, Mr. Yerian formed, assisted and/or had an ownership interest in System Applications and Mwagusi along with Mr. McLeod.

20. Upon information and belief, System Applications has used ETC trade secrets and confidential information to solicit and take customers of ETC and to compete with ETC.

21. Upon information and belief, Mwagusi has used ETC trade secrets and confidential information to take customers and compete with ETC.

22. In addition, Mr. Yerian, along with Ms. Pak, created a company known as Open Claims.

23. Open Claims engaged in the business of selling front load washer kits over the internet.

24. Open Claims engaged in the same business as one of ETC's biggest customers, Custom Movers Services.

4

Complaint DY v KY etal Case # 11-CV-0720.pdf

25.    Upon information and belief, Mr. Yerian and Ms. Pak have taken and used proprietary information developed by ETC for its customer Custom Movers Services for their own benefit and profit.

26.    Mr. Yerian and Ms. Pak also conduct business under the name MYP Publishing.

27.    MYP Publishing competes with ETC and has completed and been paid for work from ETC customers.

28.    Mr. Messner worked for ETC as a subcontractor from December 15, 2007 until approximately, July 20, 2010, pursuant to the Subcontractor Agreement.

29.    As part of the Subcontractor Agreement, Mr. Messner agreed, among other things, not to solicit or perform work for any ETC customers for a period of two years after termination of the Subcontractor Agreement.

30.    Mr. Messner has repeatedly solicited and performed work for ETC's customers and taken multiple customers from ETC.

31.    Upon information and belief, Mr. Yerian has been complicit, assisted and/or profited from Mr. Messner's work with current and former ETC customers.

32.    On or around May 28, 2010, Mr. Yerian opened at least one separate bank account for ETC and began running ETC's business through the accounts.

33.    Mr. Yerian has exclusive access to the bank account despite Ms. Yerian's position as Vice President and Secretary/Treasurer of ETC.

34.    Upon information and belief, Mr. Yerian has been using ETC's funds for his and Ms. Pak's personal benefit.

35.    Upon information and belief, Mr. Yerian has transferred the monies he has made in these various ventures to Ms. Pak.

5

Trustee's 1967

Complaint DY v KY etal Case # 11-CV-0720.pdf

36. Upon information and belief, Ms. Pak has received these monies for no consideration.

## COUNT I
### (Defamation against Mr. Yerian)

37. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

38. Mr. Yerian has openly made false and disparaging statements about Plaintiffs to their business clients, customers or other parties.

39. This has adversely affected and/or injured the reputation of Plaintiffs and cast a doubt on their ability to provide computer services in Wayne County and its surrounding areas.

40. Mr. Yerian has acted with actual malice and conscious disregard to the rights of Plaintiffs.

41. Consequently, Plaintiffs have suffered damages, including, but not limited to, a loss of business, loss of clients and/or loss of reputation.

42. As a direct and proximate result of Mr. Yerian's actions, Plaintiffs have suffered damages in an amount in excess of $25,000.00.

## COUNT II
### (Conversion against Mr. Yerian and Ms. Pak)

43. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

44. Mr. Yerian and Ms. Pak have fraudulently taken and/or converted and/or plan to convert for their own use property belonging to Plaintiffs.

45. The property which Mr. Yerian and Ms. Pak have converted includes confidential and private business information of Plaintiffs, Plaintiffs' business and client lists, and/or money owed by Plaintiffs' business clients to Plaintiffs.

6

Trustee's 1968

Complaint DY v KY etal Case # 11-CV-0720.pdf

46.     Mr. Yerian and Ms. Pak have acted with actual malice in wrongfully exercising dominion and control over such property of Plaintiffs for their own purpose or benefit.

47.     As a direct and proximate result of the conversion of Mr. Yerian and Ms. Pak, Plaintiffs have been damaged in an amount in excess of $25,000.00

## COUNT III
### (Unfair Competition and/or Misappropriation against Mr. Yerian and Ms. Pak)

48.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

49.     The conduct of Mr. Yerian and Ms. Pak as alleged herein constitutes unfair competition and/or misappropriation.

50.     Open Claims and MYP have engaged in unfair competition and/or misappropriation.

51.     Defendants' conduct as described herein was undertaken with actual malice.

52.     As a direct and proximate result of the conduct of Mr. Yerian and Ms. Pak, Plaintiffs have been damaged in an amount in excess of $25,000.00 or as determined at trial.

## COUNT IV
### (Tortious Interference with Business Relations and/or Contractual Relations against Mr. Yerian and Ms. Pak)

53.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

54.     ETC possesses business and/or contractual relationships with numerous business clients, customers or vendors with whom Mr. Yerian was in contact since 1996.

55.     Mr. Yerian and Ms. Pak have intentionally and improperly interfered with ETC's business or contractual relationships with its clients by inducing or otherwise causing them to disrupt their day-to-day business or contractual relationships with ETC.

7

Trustee's 1969

Complaint DY v KY etal Case # 11-CV-0720.pdf

56.     Mr. Yerian and Ms. Pak acted with actual malice in intentionally and improperly interfering with ETC's relationships with its clients or customers.

57.     ETC has valid and legitimate expectancies of ongoing or future relationships with its customers; Mr. Yerian and Ms. Pak should have known of such expectancies.

58.     ETC possesses business relationships with numerous business clients, customers or vendors with which Mr. Yerian and Ms. Pak were in contact.

59.     The above-described conduct of Mr. Yerian and Ms. Pak constitute tortious interference with business relations in that they interfered with existing and prospective business relationships with the purpose or intent to harm ETC by preventing those relationships from forming or continuing and/or destroying those relationships, and Mr. Yerian and Ms. Pak were without privilege or justification in doing so.

60.     As a direct and proximate result of Mr. Yerian and Ms. Pak's conduct, ETC has been damaged in an amount in excess of $25,000.00 or as determined at trial.

## COUNT V
### (Declaratory Judgment against Mr. Yerian)

61.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

62.     As a shareholder of ETC, Mr. Yerian is in a position of special confidence and trust and owes a fiduciary duty to ETC and Ms. Yerian as ETC's shareholder.

63.     Based upon his actions and his failure to act in the best interest of ETC, Mr. Yerian has betrayed the trust and fiduciary duties owed to ETC and Ms. Yerian.

64.     Due to the breach of his duties to Ms. Yerian and ETC, Mr. Yerian must be stripped of control of ETC.

65.     A genuine dispute exists regarding the control of ETC.

66.     Ms. Yerian and ETC have no adequate remedy at law.

8

Trustee's 1970

Complaint DY v KY etal Case # 11-CV-0720.pdf

67. Unless Mr. Yerian is immediately enjoined, Ms. Yerian and ETC will suffer irreparable harm including, but not limited to, their credit and ability to conduct their affairs.

68. Ms. Yerian and ETC are entitled to an order from this Court placing control of ETC with Ms. Yerian or a third-party to act in the best interest of ETC, and for shares owned by Mr. Yerian transferred back to ETC for an appraised value, offset by the monetary damages caused by Mr. Yerian.

**COUNT VI**
**(Breach of Director Duties against Mr. Yerian)**

69. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

70. Pursuant to R.C. § 1701.59(B), Mr. Yerian owed a duty to Ms. Yerian and ETC to perform his duties as President of ETC in good faith, to act in a manner he reasonably believed to be in or not opposed to the best interests of ETC, and to act with the care that an ordinarily prudent person in a similar position would use under similar circumstances.

71. Mr. Yerian breached this duty by, among other things, the following:

a. Assisting, profiting from and working for Open Claims and MYP;

b. Opening a separate bank account under ETC's name and refusing to give Ms. Yerian access to the account;

c. Assisting, profiting from and working for System Applications;

d. Assisting, profiting from and working for Universal Sales;

e. Usurping corporate opportunities of ETC for his own benefit and profit;

f. Assisting Mr. Messner in taking ETC's customers and clients in violation of Mr. Messner's Subcontract Agreement.

72. Mr. Yerian has failed to perform any of his responsibilities regarding ETC.

Trustee's 1971

Complaint DY v KY etal Case # 11-CV-0720.pdf

73.     Mr. Yerian has acted with malice and conscious indifference to his responsibilities as President of ETC and the rights of Ms. Yerian and ETC.

74.     Mr. Yerian's actions have been for his own financial interest and to the detriment of ETC and Ms. Yerian.

75.     Plaintiffs have suffered damages as a result of Mr. Yerian's breach of his duties in an amount greater than $25,000.00.

**COUNT VII**
**(Breach of Fiduciary Duties and Duty of Loyalty against Mr. Yerian)**

76.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

77.     Mr. Yerian owed a fiduciary duty to ETC and Ms. Yerian as a Director and officer of ETC.

78.     Mr. Yerian owed a duty of loyalty to ETC and Ms. Yerian as a Director, officer, and employee of ETC.

79.     Mr. Yerian failed to act in the best interest of ETC as set forth above.

80.     Mr. Yerian usurped business opportunities belong to ETC.

81.     Mr. Yerian has breached his fiduciary duties to ETC and Ms. Yerian.

82.     ETC and Ms. Yerian have suffered damages as a result of Mr. Yerian's breach of his fiduciary duties in an amount greater than $25,000.00.

**COUNT VIII**
**(Breach of Subcontractor Agreement against Mr. Messner)**

83.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

84.     The Subcontractor Agreement states in relevant part that

Subcontractor agrees that during the period of engagement and for a period of two (2) years thereafter, Subcontractor will not, directly or indirectly, and in any capacity

10

**Trustee's 1972**

Complaint DY v KY etal Case # 11-CV-0720.pdf

whatsoever, perform of solicit the performance of service which are similar to or competitive with services of the type performed or offered by ETC to: (i) any Client and/or contractor of ETC; (ii) any contractor of ETC's Clients of (iii) any current client prospect of ETC for whom Subcontractor directly or indirectly assisted in the preparation or submission of a proposal made by ETC to such Client prospect during the two-year period preceding Subcontractor's cessation of work.

85.     Mr. Messner has repeatedly solicited customers of ETC.

86.     Mr. Messner has performed computer consulting work for current and former ETC customers.

87.     The above-described conduct of Mr. Messner constitutes breach of the Subcontract Agreement.

88.     Mr. Messner's violations of the Subcontract Agreement have caused, are causing and, unless enjoined, will continue to cause irreparable harm to ETC.

89.     ETC has no adequate remedy at law for the irreparable harm caused by Mr. Messner's breaches of the Subcontract Agreement.

90.     In addition, as a direct and proximate result of Mr. Messner's actions and his breach of the Subcontract Agreement, ETC has suffered damages in excess of $25,000.

## COUNT IX
### (Violation of Trade Secrets Act against Mr. Messner)

91.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

92.     ETC's proprietary concepts, strategic and business marketing plans, business processes and summaries, pricing strategies, sales and marketing information.

93.     ETC has taken steps which were reasonable under the circumstances to maintain the secrecy and confidentiality of its confidential and proprietary information.

94.     ETC's confidential and proprietary information constitute trade secrets.

11

Trustee's 1973

Complaint DY v KY etal Case # 11-CV-0720.pdf

95.     Mr. Messner acquired knowledge of ETC's trade secrets under circumstances giving rise to a duty to maintain the secrecy of this information and to limit its use.

96.     Upon information and belief, Mr. Messner misappropriated ETC's trade secrets by using the information obtained through the Subcontractor Agreement with ETC without ETC's consent to gain an unfair competitive advantage in soliciting business from ETC's customers.

97.     Mr. Messner has been unjustly enriched, and ETC has been wrongfully damaged, by Mr. Messner's continued use and disclosure of ETC's trade secrets.

98.     Mr. Messner's continued use and disclosure of ETC's trade secrets was, and is, willful and malicious.

99.     As a direct and proximate result of Mr. Messner's violation of the Ohio's Uniform Trade Secrets Act, ETC has been damaged in excess of $25,000.

## COUNT X
**(Unfair Competition and/or Misappropriation against Mr. McLeod)**

100.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

101.    Mr. McLeod's conduct as alleged herein constitutes unfair competition and/or misappropriation.

102.    Mr. McLeod and System Applications engaged in unfair competition and/or misappropriation.

103.    Mr. McLeod's conduct as described herein was undertaken with actual malice.

104.    As a direct and proximate result of Mr. McLeod's conduct, Plaintiffs have been damaged in an amount in excess of $25,000.00 or as determined at trial.

12

Trustee's 1974

Complaint DY v KY etal Case # 11-CV-0720.pdf

## COUNT XI
### (Tortious Interference with Business Relations and/or Contractual Relations against Mr. McLeod)

105. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

106. ETC possesses business and/or contractual relationships with numerous business clients, customers or vendors.

107. Mr. McLeod and System Applications have intentionally and improperly interfered with ETC's business or contractual relationships with its clients by inducing or otherwise causing them to disrupt their day-to-day business or contractual relationships with ETC.

108. Mr. McLeod acted with actual malice in intentionally and improperly interfering with ETC's relationships with its clients or customers.

109. ETC has valid and legitimate expectancies of ongoing or future relationships with its customers; Mr. McLeod should have known of such expectancies.

110. ETC possesses business relationships with numerous business clients, customers or vendors with which Mr. McLeod through Mr. Yerian were in contact.

111. The above-described conduct of Mr. McLeod and System Applications constitute tortious interference with business relations in that they interfered with existing and prospective business relationships with the purpose or intent to harm ETC by preventing those relationships from forming or continuing and/or destroying those relationships, and Mr. McLeod and System Applications were without privilege or justification in doing so.

112. As a direct and proximate result of Mr. McLeod's and System Applications tortious conduct, ETC has been damaged in an amount in excess of $25,000.00 or as determined at trial.

13

Trustee's 1975

Complaint DY v KY etal Case # 11-CV-0720.pdf

## COUNT XII
### (Violation of Trade Secrets Act against Mr. McLeod)

113.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

114.    ETC's proprietary, strategic and business marketing plans, new business presentations and/or proposals, business processes and summaries, profit margins, business revenues, pricing strategies, customer lists, sales and marketing information, training and operations material and memoranda, and financial information concerning or relating to the business, among other information, was developed by ETC at great expense over many years, and derived an independent economic value from not being generally known or readily ascertainable through proper means to persons other than ETC employees and subcontractors who need to know the information to perform their jobs for ETC.

115.    ETC has taken steps which were reasonable under the circumstances to maintain the secrecy and confidentiality of its confidential and proprietary information.

116.    ETC's confidential and proprietary information constitute trade secrets.

117.    Mr. McLeod acquired knowledge of ETC's trade secrets under circumstances giving rise to a duty to maintain the secrecy of this information and to limit its use or through other illegal means.

118.    Upon information and belief, Mr. McLeod misappropriated ETC's trade secrets by using the information obtained through Mr. Yerian without ETC's consent to gain an unfair competitive advantage in soliciting business from ETC customers and prospects.

119.    Mr. McLeod has been unjustly enriched, and ETC has been wrongfully damaged, by Mr. McLeod's continued use and disclosure of ETC's trade secrets.

120.    Mr. McLeod's continued use and disclosure of ETC's trade secrets was, and is, willful and malicious.

14

Trustee's 1976

Complaint DY v KY etal Case # 11-CV-0720.pdf

121.    As a direct and proximate result of Mr. McLeod's conduct, Plaintiffs have been damaged in an amount in excess of $25,000.00 or as determined at trial.

### COUNT XIII
**(Unfair Competition and/or Misappropriation against Mwagusi)**

122.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

123.    Mwagusi's conduct as alleged herein constitutes unfair competition and/or misappropriation.

124.    Mwagusi engaged in unfair competition and/or misappropriation.

125.    Mwagusi's conduct as described herein was undertaken with actual malice.

126.    As a direct and proximate result of Mwagusi's conduct, Plaintiffs have been damaged in an amount in excess of $25,000.00 or as determined at trial.

### COUNT XIV
**(Tortious Interference with Business Relations and/or Contractual Relations against Mwagusi)**

127.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

128.    ETC possesses business and/or contractual relationships with numerous business clients, customers or vendors.

129.    Mwagusi has intentionally and improperly interfered with ETC's business or contractual relationships with its clients by inducing or otherwise causing them to disrupt their day-to-day business or contractual relationships with ETC.

130.    Mwagusi acted with actual malice in intentionally and improperly interfering with ETC's relationships with its clients or customers.

15

Trustee's 1977

Complaint DY v KY etal Case # 11-CV-0720.pdf

131.   ETC has valid and legitimate expectancies of ongoing or future relationships with its customers; Mwagusi should have known of such expectancies.

132.   ETC possesses business relationships with numerous business clients, customers or vendors with which Mwagusi through Mr. Yerian were in contact.

133.   The above-described conduct of Mwagusi constitutes tortious interference with business relations in that they interfered with existing and prospective business relationships with the purpose or intent to harm ETC by preventing those relationships from forming or continuing and/or destroying those relationships, and Mwagusi was without privilege or justification in doing so.

134.   As a direct and proximate result of Mwagusi's tortious conduct, ETC has been damaged in an amount in excess of $25,000.00 or as determined at trial.

## COUNT XV
### (Violation of Trade Secrets Act against Mwagusi)

135.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

136.   Mwagusi acquired knowledge of ETC's trade secrets under circumstances giving rise to a duty to maintain the secrecy of this information and to limit its use or through other illegal means.

137.   Upon information and belief, Mwagusi misappropriated ETC's trade secrets by using the information obtained through Mr. Yerian without ETC's consent to gain an unfair competitive advantage in soliciting business from ETC customers and prospects.

138.   Mwagusi has been unjustly enriched, and ETC has been wrongfully damaged, by Mwagusi's continued use and disclosure of ETC's trade secrets.

139.   Mwagusi's continued use and disclosure of ETC's trade secrets was, and is, willful and malicious.

Trustee's 1978

Complaint DY v KY etal Case # 11-CV-0720.pdf

140.   As a direct and proximate result of Mwagusi's conduct, Plaintiffs have been damaged in an amount in excess of $25,000.00 or as determined at trial.

## COUNT XVI
### (Fraudulent Transfer against Mr. Yerian and Ms. Pak)

141.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully rewritten herein.

142.   Upon information and belief, at a point in time after Mr. Yerian and Ms. Pak were fully aware that Mr. Yerian owed Plaintiffs significant sums of money, plus interest, Mr. Yerian transferred certain of its assets to Ms. Pak without receiving anything of reasonably equivalent value in return.

143.   Upon information and belief, the above-described transfer(s) were made when Mr. Yerian was insolvent as defined in R.C. § 1336.02, or Mr. Yerian became insolvent as a result of the transfer(s).

144.   The transfer(s) were made by Mr. Yerian for the purpose of defrauding Plaintiffs and hindering and/or delaying the collection of the indebtedness owed to Plaintiffs by Mr. Yerian.

145.   The transfer(s) of the assets were fraudulent in that they were made without Mr. Yerian receiving any reasonably equivalent value from Ms. Pak in exchange for the transfer of the assets.

146.   At the time of the transfer(s), Mr. Yerian intended to incur, or believed or reasonably should have believed that it would incur debts beyond his ability to pay as the debts became due.

147.   As a direct and proximate result of Mr. Yerian and Ms. Pak's fraudulent actions, Plaintiffs have incurred damages in an amount in excess of $25,000.00.

Trustee's 1979

Complaint DY v KY etal Case # 11-CV-0720.pdf

## COUNT XVII
### (Declaratory Judgment for Constructive Trust against Accounts of ETC, Mr. Yerian and Ms. Pak)

148.    Plaintiffs incorporate by reference herein the allegations contained in the preceding paragraphs as if fully rewritten herein.

149.    Mr. Yerian has opened at least one account for ETC without granting Ms. Yerian access to the account, despite her holding the offices of Vice President and Secretary/Treasurer of ETC.

150.    Upon information and belief, Mr. Yerian has fraudulently and/or wrongfully used the funds of ETC which were placed in this account for his personal benefit and/or has transferred these funds to Ms. Pak.

151.    Mr. Yerian is fraudulently and/or wrongfully holding these funds to which Plaintiffs are entitled in the account he controls for ETC to the exclusion of Ms. Yerian and/or in his personal accounts or the account(s) of Ms. Pak including but not limited to a PNC Bank account and E*Trade Financial account(s).

152.    Plaintiffs have the right to recover the ETC funds that have been fraudulently and/or wrongfully held and/or transferred and Plaintiffs have no adequate remedy at law.

153.    Plaintiffs are entitled to an order imposing a constructive trust over the funds of ETC that are fraudulently and/or wrongfully held in the ETC account(s) controlled by Mr. Yerian to the exclusion of Ms. Yerian, and over any ETC funds which have been fraudulently and/or wrongfully transferred to the personal accounts of Mr. Yerian or Ms. Pak.

WHEREFORE, Plaintiffs, ETC Computers, Inc. and Deborah W. Yerian, hereby pray for judgment against the Defendants as follows:

Trustee's 1980

Complaint DY v KY etal Case # 11-CV-0720.pdf

A.  With respect to Count I, granting judgment to Plaintiffs against Mr. Yerian in an amount in excess of $25,000 for actual damages and in excess of $25,000 for punitive damages, or as proven at trial;

B.  With respect to Counts II, III and IV, granting judgment to Plaintiffs against Mr. Yerian and Ms. Pak, jointly and severally, in an amount in excess of $25,000 for actual damages and in excess of $25,000 for punitive damages, or as proven at trial;

C.  With respect to Count V, an order declaring that Mr. Yerian shall divest his interest as a shareholder of ETC;

D.  With respect to Counts VI and VII, granting judgment to Plaintiffs against Mr. Yerian in an amount in excess of $25,000 for actual damages and in excess of $25,000 for punitive damages, or as proven at trial;

E.  With respect to Counts VIII and IX, granting judgment to Plaintiffs against Mr. Messner in an amount in excess of $25,000, for actual damages and in excess of $25,000 for punitive damages, or as proven at trial, and further, for an order that Mr. Messner be enjoined from further violations of the Subcontractor Agreement and from use/or disclosure of ETC trade secrets;

F.  With respect to Counts X, XI and XII, granting judgment to Plaintiffs against Mr. McLeod in an amount in excess of $25,000 for actual damages and in excess of $25,000 for punitive damages, or as proven at trial, and further, for an order enjoining Mr. McLeod from use/disclosure of ETC trade secrets;

G.  With respect to Counts XIII, XIV and XV, granting judgment to Plaintiffs against Mwagusi in an amount in excess of $25,000 for actual damages and in excess of $25,000 for punitive damages, or as proven at trial, and further, for an order enjoining Mwagusi from use/disclosure of ETC trade secrets;

19

Trustee's 1981

Complaint DY v KY etal Case # 11-CV-0720.pdf

H. As to Count XVI, judgment in favor of Plaintiffs and against Mr. Yerian and Ms. Pak, jointly and severally, in an amount in excess of $25,000.00;

I. As to Count XVII, an order imposing a constructive trust in favor of Plaintiffs over the bank accounts of ETC, controlled by Mr. Yerian to the exclusion of Ms. Yerian, and any ETC funds fraudulently and/or wrongfully transferred to Mr. Yerian or Ms. Pak;

J. Plus interest, reasonable attorneys' fees, costs, and any other relief which this Court deems appropriate in law or equity.

Respectfully submitted,

CRITCHFIELD, CRITCHFIELD & JOHNSTON, LTD.

By: _Timothy B. Pettorini /TLP_

Timothy B. Pettorini (S.Ct. #0070107)
Tricia L. Pycraft (S.Ct. #0075137)
225 N. Market, P.O. Box 599
Wooster, OH
Phone: (330) 264-4444
Fax: (330) 263-9278
Email: pettorini@ccj.com; tpycraft@ccj.com
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs demand a trial by jury in this action of all issues properly triable to a jury.

_Timothy B. Pettorini /TLP_

Timothy B. Pettorini

20

Trustee's 1982

Complaint DY v KY etal Case # 11-CV-0720.pdf

## ENDORSEMENT

TO THE CLERK:

Please issue and serve summons, together with a copy of the Complaint, upon the following Defendants, Keith Alan Yerian, Sun Yo Pak dba Open Claims and MYP Publishing by PERSONAL SERVICE  via ProVest, LLC, pursuant to Cv.R.4.1(B) and the Standing Order of this Court (copy attached). Please notify the undersigned at (330) 264-4444 when the service packet is ready for pickup.

Please issue and serve summons, together with a copy of the Complaint, upon the remaining Defendants, Robert W. Messner, John McLeod dba System Applications-Software Solutions and Mwagusi Software, LLC at the addresses given in the caption via CERTIFIED MAIL, RETURN RECEIPT REQUESTED, in accordance with Civ.R.4.1(A). Please notify the undersigned immediately if service is not obtained.

_Timothy B. Pettorini / TBP_
_____
Timothy B. Pettorini

21

**Trustee's 1983**