# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

## CASE NO. 6:17-cv-459-Orl-31

IN RE:

KEITH A. YERIAN,                                   Bkr. Case No. 6:15-bk-1720-KSJ

     Debtor.

_____/

KEITH A. YERIAN,

     Appellant,

v.

RICHARD B. WEBBER, II, as TRUSTEE,

     Appellee.

_____/

## APPELLEE'S AMENDED[1] ANSWER BRIEF

Kevin P. Robinson, Esquire
Florida Bar No.: 0014650
Bradley J. Anderson, Esquire
Florida Bar No.: 0105695
315 E. Robinson Street, Suite 600
ZIMMERMAN, KISER & SUTCLIFFE, P.A.
Orlando, FL 32801
Tel: (407) 425-7010
krobinson@zkslawfirm.com
banderson@zkslawfirm.com
service@zkslawfirm.com
*Counsel for Appellee*

_____

[1] Amended to comply with the Court's Order dated August 29, 2017.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iii

STATEMENT OF THE CASE AND FACTS ......................................................... 1

SUMMARY OF THE ARGUMENT ...................................................................... 5

ARGUMENT ........................................................................................................ 10

I.    The Bankruptcy Court is Vested with Authority to Determine Whether the Appellant's Prohibited Transactions Resulted in a Loss of the IRA's Exemption from Creditors Regardless of Whether the Exemption Arises under State or Federal Law....................................................................... 10

    A.    Florida Statute § 222.21 Does Not Limit the Authority of Bankruptcy Courts to Render a Determination of the Tax-Exempt Status of Subject Plans or Accounts, and Any Attempt by the Florida Legislature to Do So Would Be Unconstitutional…………………………………………12

    B.    Federal Bankruptcy Courts Routinely Make Determinations Regarding the Tax Exempt Status of Debtors' Assets……14

    C.    The Plain Language of Florida Statute § 222.21 is Clear and Unambiguous so the Legislative History Cited by Appellant is Irrelevant to this Appeal…………………………………18

II.    There is No Requirement that a Final Determination that an Account is Non-Exempt be Rendered Prior to the Petition Date…………………20

    A.    As of the Petition Date, Appellant Had Committed All Acts Necessary to Render His Self-Directed IRA Non-Exempt…20

    B.    A Bankruptcy Court Sustains an Objection to a Claim of Exemption Effective as of the Petition Date, Because The Facts and Circumstances that Exist Pre-Petition Determine Whether a Claim of Exemption is Valid…………………………….23

C.     The Petition Date Is Relevant Only to Establish the Facts and Circumstances Relevant to a Claim of Exemption, Not to Prohibit Subsequent Legal Determinations Based Upon the Judicial Application of Governing Law to the Facts that Existed Upon the Petition Date……………………………….26

D.     To Apply Florida Statute § 222.21 as Appellant Argues Would Require an Absurd Result That Would be Inconsistent with the Principles Behind the Bankruptcy Code…………………….27

CONCLUSION.......................................................................................................31

CERTIFICATE OF COMPLIANCE.......................................................................33

CERTIFICATE OF SERVICE ...............................................................................34

# TABLE OF AUTHORITIES

## CASES

CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217 (11th Cir. 2001)..........18

Colwell v. Royal Int'l Trading Corp., 196 F.3d 1225 (11th Cir. 1999) ...............17

Hines v. Davidowitz, 312 U.S. 52 (1941) ..............................................................13

In re Bartowszewski, 36 B.R. 424 (Bankr. N.D.N.Y. 1984) ................................24

In re Casseday, 2012 WL 2803725 (W.D.N.C. 2012) ..........................................31

In re Fodor, 339 B.R. 519 (Bankr. M.D. Fla. 2006)......................................20, 23

In re Helsel, Sr., 326 B.R. 59 (Bankr. W.D. Pa. 2005) .................................23, 25

In re Hrncirik, 138 B.R. 835 (Bankr. N.D. Tex. 1992) ........................................24

In re Hughes, 293 B.R. 528 (Bankr. M.D. Fla. 2003) .............................. 10-11, 18

In re Kulakowski, 735 F.3d 1296 (11th Cir. 2013) ...............................................27

In re Magelitz, 386 B.R. 879 (Bankr. N.D. Fla. 2008)..........................................17

In re Marrama, 430 F.3d 474 (1st Cir. 2005) .......................................................27

In re Schumacher, 400 B.R. 831 (M.D. Fla. 2008) ......................................... 17-18

In re Rivera, 5 B.R. 313 (Bankr. M.D. Fla. 1980)................................................27

In re Willis, 424 Fed. Appx. 880 (11th Cir. 2011) ..................................10, 14, 18

Ratzlaf v. United States, 510 U.S. 135 (1994) ......................................................19

U.S. v. Silva, 443 F.3d 795 (11th Cir. 2006).........................................................19

Willis v. Menotte, 2010 WL 1408343 ...................................................................15

Wyeth v. Levine, 555 U.S. 555 (2009)...................................................................13

## STATUTES

11 U.S.C. § 157(b)(2)(B) ................................................................. 10, 11, 13-14

11 U.S.C. § 522(b)(3)(C) .....................................................................10, 14, 16

11 U.S.C. § 727.........................................................................................................2

28 U.S.C. § 1334(d) ...............................................................................................10

Federal Rule of Bankruptcy Rule 7052 ...................................................................4

Fla. Stat. § 222.21 ..........................................1-3, 6-7, 9, 11-14, 17-19, 27-29, 31

Fla. Stat. § 222.21(2)(a)(1) ...............................................................................3, 12

Fla. Stat. § 222.21(2)(a)(2) ...................................................................... 3, 12, 15-18

Fla. Stat. § 222.25(4) ............................................................................................17

I.R.C. § 401(a) ................................................................................................12, 16

I.R.C. § 403(a) ................................................................................................12, 16

I.R.C. § 403(b) ................................................................................................12, 16

I.R.C. § 408 ....................................................................................... 3, 12, 15-16

I.R.C. § 408A.............................................................................................3, 12, 16

I.R.C. § 408(e)(2)...........................................................................................22
I.R.C. § 409..............................................................................................12, 16
I.R.C. § 414..............................................................................................12, 16
I.R.C. § 457(b)........................................................................................12, 16
I.R.C. § 501(a)........................................................................................12, 16
I.R.C. § 4975(c)(1)(D)...................................................................................20
I.R.C. § 4975(c)(1)(E)....................................................................................20
I.R.C. § 4975(e)(2)(A)...................................................................................21
I.R.C. § 4975(e)(2)(F)....................................................................................21

## STATEMENT OF THE CASE AND FACTS

Appellant, Keith A. Yerian ("Appellant"), appeals the Order Sustaining Trustee's Objection to Debtor's Claim of Exemption in his self-directed IRA by Bankruptcy Court Judge Karen S. Jennemann ("Order") in favor of the Chapter 7 Trustee, Richard B. Webber, II ("Trustee").  [R. 3-1; 3-5].  The Bankruptcy Court held that Appellant engaged in prohibited transactions with disqualified persons which caused the self-directed IRA ("IRA") to lose its exempt status pre-petition and directed the Trustee to administer the assets of the IRA for the benefit of Appellant's Creditors.  [R. 9-15, pgs. 20:6 – 21:19; 3-5].

As background, on February 27, 2015 (the "Petition Date"), Appellant filed a voluntary Petition for Chapter 7 Bankruptcy, and the Court appointed the Trustee as the Chapter 7 Trustee of the Appellant's Bankruptcy Estate.  [R. 12-1; 14-18, pg. 1].  Appellant did not identify his interest in the IRA in his initial Schedules but later amended his Schedules multiple times and disclosed his ownership of the IRA in the subsequent amendments.  [R. 3-7, pgs. 8-9; 5-2, pgs. 4-5; 5-13, pgs. 3-4; 5-15, pgs. 3-4; 7-6, pgs. 3-4; 7-8, pgs. 3-4; 9-13, pg. 162:11-20].  On the Petition Date, the IRA owned: (a) Yerian Properties, LLC, a Florida limited liability company, which in turn owned a residential condominium located in Puerto Rico; (b) a single-family residence in Palm

1

Bay, Florida; and (c) a bank account with Fifth Third Bank  (collectively, the "IRA Assets").  [R. 10-2, pg. 4; 13-1; 13-2].  Appellant also purchased pre-petition two vehicles using IRA Assets but improperly titled one of the vehicles in his own name and one in the name of his wife, Sun Y. Pak.  [R. 10-2, pg.4; 8-1; 9-13, pg. 32:6-11 and 21-25].

On August 5, 2017, the Trustee timely filed his Objection to the Appellant's claim of exemption for the IRA.  [R. 3-6].  The Trustee also filed an Adversary Proceeding Complaint (Case No.: 15-ap-00064-KSJ) (which was subsequently amended) against Appellant's non-filing spouse, Sun Y. Pak, seeking to avoid and recover a fraudulent transfer of $128,000 that she received from her and Appellant's jointly held E-Trade Account and against Appellant seeking to deny the Appellant's Bankruptcy Discharge under three sub-sections of Section 727 of the Bankruptcy Code (the "Adversary Proceeding").  [R. 5-6; 9-15, pgs. 5:15 – 6:4].  The Bankruptcy Court consolidated the Adversary Proceeding and the Objection for discovery and Trial.  [R. 9-15, pg. 6:8 – 15].

Trial on the Objection was conducted on November 30, 2016 and continued on December 12, 2016.  [R. 9-15, pgs. 4:22 – 5:4].  The Bankruptcy Court admitted the Trustee's expert witness, Mr. Joseph Van Heyde, Esq., as an expert on individual retirement accounts and self-directed IRAs and

accepted into evidence Mr. Van Heyde's expert report pursuant to a stipulation by Appellant. [R. 9-13, pgs. 4:19 – 6:5 and 18:25 – 19:7]. Mr. Van Heyde's expert conclusion, which he testified to at Trial, was that Appellant mismanaged the IRA by engaging in multiple prohibited transactions with disqualified persons, which caused the IRA to lose its exempt status. [R. 10-2; 9-13, pgs. 35:19 – 40:23].

According to Mr. Van Heyde, and as the Bankruptcy Court concluded, Appellant caused the IRA to lose its exemption by improperly: (1) using IRA Assets to purchase two vehicles, which Appellant had titled in his and Pak's individual names; (2) using IRA Assets to improve the vehicles; and (3) occupying the Puerto Rico condominium for his personal use. [R. 10-2; 9-13, pgs. 35:19 – 40:23; 9-15, pgs. 20:6 – 21:19]. In short, Appellant used what he claimed to be his exempt IRA in the same manner as his non-exempt bank account – for his personal purposes – which was the conclusion reached by the Bankruptcy Court. [R. 9-15, pgs. 20:25 – 21:5]. Even though Appellant engaged in multiple prohibited transactions, just one prohibited transaction is sufficient for the IRA to lose its exemption under the Internal Revenue Code. [R. 10-2, pgs. 3 – 4; 9-15, pg. 20:6 – 24]. Appellant did not cross-examine Mr. Van Heyde or ask him a single question to challenge his testimony and conclusion. [R. 9-13, pg. 40:19 – 25]. At Trial, Appellant testified that his

3

mistakes in managing the IRA were unintentional or the fault of third parties. [R. 9-13, pgs. 181:6 – 17 and 182:1 – 19]. Appellant did not, however, dispute the existence of those prohibited transactions. [R. 9-13, pgs. 181:6 – 17, 182:1 – 19, and 203:19 – 25].

On February 14, 2017, the Bankruptcy Court issued findings of fact and law pursuant to Bankruptcy Rule 7052 in an oral ruling (the "Oral Ruling"). [R. 9-15]. The Bankruptcy Court held that the Trustee carried his burden of proof that Appellant's claim of exemption in the IRA was improper and sustained the Objection, finding that the IRA was not exempt from Appellant's Creditors and subject to liquidation by the Trustee. [R. 9-15, pgs. 20:14 – 21:19]. The Bankruptcy Court adopted Mr. Van Heyde's conclusion that the IRA had lost its exempt status as a result of Appellant's prohibited transactions with disqualified persons. [R. 9-15, pgs. 20:20 – 21:5]. The Bankruptcy Court also noted that Appellant could not explain or trace his use of funds from the IRA and that Appellant's testimony that his mistakes were mere titling errors was not credible due to "other indicia of use of these properties that was not explained credibly." [R. 9-15, pgs. 15:16 – 21 and 21:11 – 16]. In other findings, Bankruptcy Judge Jennemann stated that she "did not find either Ms. Pak or [Appellant's] testimony credible," that their

explanations "just did not ring true," and that she "did not find their testimony believable." [R. 9-15, pg. 29:10 – 14].

The Bankruptcy Court found that Appellant had engaged in "intentional fraud" in an attempt to defraud his creditors. [R. 9-15, pg. 25:7 – 10]. The Bankruptcy Court also ruled in the Trustee's favor on all six Counts of the Adversary Proceeding, resulting in the entry of a fraudulent transfer judgment against Sun Y. Pak for $128,000 and denial of Appellant's Discharge. [R. 18-11]. The Bankruptcy Court's ruling in favor of the Trustee on the spousal transfer issue is the subject of a separate appeal before this Court. See Case 6:17-cv-00460-RBD. Appellant now appeals entry of the Order Sustaining the Trustee's Objection to Appellant's claim of exemption in the IRA. [R. 3-1; 3-5].

## SUMMARY OF THE ARGUMENT

Appellant's argument on appeal is premised entirely upon the implied notion that the Florida legislature has divested (or even could if it wanted to) the federal bankruptcy courts of their core jurisdiction by preventing them from adjudicating objections to claims to an exemption in cases where a debtor fraudulently uses exempt property for his personal benefit, all because no final, non-appealable determination of non-exemption had been rendered by the IRS or a tax court as of the petition date. Appellant's claim misapplies

the relevant statute, is unsupported by any case law, and if allowed would sanction a vehicle for fraud that could be abused by all future debtors without fear of reprisal.

Appellant's Initial Brief advances two primary arguments on appeal. Appellant's first argument is that the Bankruptcy Court erroneously applied the federal statute to Appellant's claim of exemption in his IRA instead of the similar, but not identical, Florida Statute. Both the Federal and Florida Statutes are identical, except that the Florida Statute includes an additional provision that a properly established IRA is exempt from creditors unless it is "subsequently determine[d] that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable." Appellant maintains that this additional provision requires a tax court or the IRS, and not the bankruptcy court, to determine whether the IRA is non-exempt, and absent such a finding, the IRA maintains its exemption, even where the existence of actual fraud in the misuse of the IRA is unchallenged.

Not only would Appellant's interpretation of the Florida Statute provide for the elimination of a bankruptcy court's core jurisdiction to adjudicate a claim of exemption in an IRA, but Appellant reads into Florida Statute § 222.21 a requirement that does not exist. Florida Statute § 222.21 does not

limit the authority of bankruptcy courts to render a determination of the tax-exempt status of subject plans or accounts.   The case law is clear that in addition to tax courts and the IRS, bankruptcy courts also have authority to determine whether an IRA is exempt, regardless of whether the debtor claims an exemption under federal law or Florida law.

Appellant's first argument must fail because (a) the plain language of Florida Statute § 222.21 does not restrict federal bankruptcy courts from make determinations as to the tax-exempt status of subject accounts; (b) the Florida state legislature has no authority to divest the federal bankruptcy courts of their core jurisdiction to determine the existence (or non-existence) of creditor exemptions; (c) federal bankruptcy courts routinely make determinations as to the tax-exempt (and therefore creditor-exempt) status of a debtor's assets; (d) federal bankruptcy courts routinely interpret and apply exemptions and other rights that arise out of state law; and (e) Appellant concedes that not a single case exists that would support his position that bankruptcy courts are prohibited from making a determination of tax exemption under Florida Statute § 222.21.

Appellant's second argument is that regardless of whether prohibited transactions resulting in the loss of exempt status occurred prior to the Petition Date, the IRA must retain its creditor exemption because there had not been a

final and non-appealable determination by the IRS or a tax court as to whether the IRA was exempt prior to the Petition Date.  The unrefuted evidence at Trial established that Appellant committed all acts necessary to render his self-directed IRA non-exempt prior to the Petition Date.

While the law is clear that claims of exemption are determined as of the Petition Date, there is no requirement that a final determination that an account is non-exempt be rendered prior to the Petition Date.  As a matter of law, even though an order comes later in the bankruptcy process, a bankruptcy court sustains an objection to a claim of exemption effective as of the petition date, because the facts that exist pre-petition determine whether a claim of exemption is valid.  The petition date is relevant only to establish the facts and circumstances relevant to a claim of exemption, not to prohibit subsequent legal determinations based upon the judicial application of governing law to the facts that existed upon the petition date.  The retroactive nature of post-petition orders sustaining objections to claims of exemption is dispositive of this appeal, as the Bankruptcy Court's Order in this case is effective as of the Petition Date.  Since Appellant's claim on appeal is premised upon the non-existence of an effective determination of non-exemption on the Petition Date, the retroactive application of the Bankruptcy Court's Order as of that date resolves the issue.

Finally, and as a practical matter perhaps most importantly, the interpretation of Florida Statute § 222.21 advanced by Appellant would lead to an absurd result inconsistent with the principles of the Bankruptcy Code and would sanction the fraudulent conduct that Appellant was found to have engaged in and encourage others to do the same.   Under Appellant's interpretation of the law, the fact that Appellant engaged pre-petition in prohibited transactions that rendered the IRA non-exempt for tax purposes is irrelevant; rather, Appellant is entitled to place those funds into an exempt vehicle, violate the IRS rules and regulations prohibited the use of those funds, and maintain those funds as exempt from his Creditors because neither the IRS nor a tax court was able to make a final and non-appealable determination as to the exemption pre-Petition.   This would result in a windfall to any debtor who, despite engaging in prohibited transactions, obtains the benefits of a bankruptcy discharge and insulates the assets of the IRA from his creditors.   If this Court adopts the Appellant's interpretation of Florida Statute § 222.21, it would have the effect of rendering Florida bankruptcy courts helpless to prevent the kind of fraud that Appellant was found to have engaged in, which would lead to an absurd result.

## ARGUMENT

I.   **The Bankruptcy Court is Vested with Authority to Determine Whether the Appellant's Prohibited Transactions Resulted in a Loss of the IRA's Exemption from Creditors Regardless of Whether the Exemption Arises under State or Federal Law.**

Appellant argues, in part, that only the IRS or a federal tax court has authority to render a determination regarding the exempt status of a self-directed IRA.  <u>See</u> Initial Brief at pgs. 9 – 10, 19 – 20, 23 – 24, 29.  While Trustee agrees that both the IRS and the federal tax courts are vested with the necessary authority to determine that an otherwise exempt retirement account has lost its tax-exempt status due to the acts or omissions of its owner, those are not the only tribunals with exclusive authority to make that determination. The federal bankruptcy courts also have authority to determine whether a retirement account is exempt, **regardless of whether the debtor claims an exemption under federal law or Florida law**.  <u>See</u> <u>In re Willis</u>, 424 Fed. Appx. 880, 880 (11th Cir. 2011)(applying the federal exemption in 11 U.S.C. § 522(b)(3)(C) and concluding that the debtor's prohibited transactions resulted in a loss of exemption in three retirement accounts); <u>see</u> <u>also</u> <u>In re Hughes</u>, 293 B.R. 528, 529-30 (Bankr. M.D. Fla. 2003)(concluding that the Bankruptcy Court had jurisdiction by virtue of 28 U.S.C. §§ 1334(d) and 157(b)(2)(B) to make a final determination of a claim of exemption asserted

by a debtor in an individual retirement account under Florida Statute § 222.21[2]).

To the extent that Appellant argues that the Bankruptcy Court is not an appropriate forum to adjudicate a claim of exemption in an IRA, that argument must fail.  As confirmed by In re Hughes, the United States Code provides in 28 U.S.C. § 157(b)(2)(B) that bankruptcy courts have jurisdiction to determine all core proceedings arising under Title 11, with "core proceedings" specifically defined to include "allowance or disallowance of. . . exemptions from property of the estate."  Determining challenges to a debtor's right to an exemption is "an integral part of the administration of the estate in a debtor in Chapter 7," regardless of whether the debtor's claim of exemption arises under Florida or federal law.  Hughes, 293 B.R. at 529 – 30.

For these reasons, and as stated by Bankruptcy Judge Jennemann in her Oral Ruling, not only did she have the authority to adjudicate the Trustee's Objection, but she had "the responsibility, upon request, to determine whether [Appellant] maintained the IRA in accordance with the various tax codes requirements."  [R. 9-15, pg. 19:2 – 6].

---

[2] The Court in Hughes applied the 2003 version of Florida Statute § 222.21 and not the 2005 version which is the version that is at issue in this appeal. The analysis of the issue as to whether the Bankruptcy Court is vested without authority to issue a final determination as to a debtor's claim of exemption under Florida Statute is the same.

### A. Florida Statute § 222.21 Does <u>Not</u> Limit the Authority of Bankruptcy Courts to Render a Determination of the Tax-Exempt Status of Subject Plans or Accounts, and Any Attempt by the Florida Legislature to Do So Would Be Unconstitutional.

The actual text of Florida Statute § 222.21(2)(a)(1) and (2) bears quoting, as there is nothing in the plain language of the Statute that purports to limit or restrict the authority of the federal bankruptcy courts to render a determination regarding the tax-exempt status of the types of assets that are the subject of the statute.  Those provisions provide that subject accounts are:

> exempt from all claims of creditors of the owner, beneficiary, or participant if the fund is maintains in accordance with [a governing instrument] that has been determined by the Internal Revenue Service to be exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended, unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable.

While the Statute does state that only the Internal Revenue Service may determine whether a governing instrument is sufficient to render an account or plan exempt from taxation in the first instance, the Statute contains no such limitation with respect to what bodies may "subsequently determine[] that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable."  In fact, Appellant admits as much by recognizing that federal tax courts have authority to determine assets to be non-exempt, despite the fact that federal tax courts are not identified in the text

12

of Florida Statute § 222.21.  If the Florida legislature wished to restrict the tribunals with authority to do so to just the IRS or the federal tax courts, it could have attempted to do so within the language of the Statute.  It did not, and therefore, no such restriction exists and Appellant implicitly acknowledges as much.

Perhaps the Florida legislature elected not to do so because it recognized that principles of federalism prevent the state legislature from directing the federal government as to what agencies, branches, or departments of the federal government have authority to take any given action.  Such a limitation would violate the Supremacy Clause of the United States Constitution, because federal law pre-empts state law when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Wyeth v. Levine, 555 U.S. 555, 589 (2009)(quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)(Thomas, J., concurring)).  As addressed above, 28 U.S.C. § 157(b)(2)(B) provides bankruptcy courts with core jurisdiction to determine the allowance or disallowance of exemptions from property of a debtor's bankruptcy estate.  If the Florida legislature had limited or restricted the authority of the federal bankruptcy courts to render a determination regarding the tax-exempt status of retirement accounts in Florida Statute § 222.21, such a restriction would

13

restrict the bankruptcy courts' ability to determining the allowance of claims as authorized by 28 U.S.C. § 157(b)(2)(B) and would be an unconstitutional violation of the Supremacy Clause.  Wyeth, 555 U.S. at 589.

Just as the Florida legislature cannot direct the IRS to engage in any particular form of activity, it cannot prohibit the federal bankruptcy courts from acting in a manner that is consistent with the jurisdiction and authority vested upon them under federal law.

## B. Federal Bankruptcy Courts Routinely Make Determinations Regarding the Tax Exempt Status of Debtors' Assets.

Because Florida Statute § 222.21 does not (and cannot for the reasons set forth in Section I(A), *supra*) restrict the federal bankruptcy courts from making determinations regarding an asset's tax-exempt status, the question becomes whether those tribunals are vested with authority by the federal government to do so.   Federal bankruptcy courts unquestionably have the necessary authority to make such determinations.

Appellant himself acknowledges in his Initial Brief that a bankruptcy court "may itself" and "in fact should[] determine retroactively that the account at issue lost its tax-exempt status pre-petition, and therefore is not exempt under 11 U.S.C. § 522(b)(3)(C)."   Initial Brief at pgs. 16 – 17. Appellant cites In re Willis, 424 Fed. Appx. 880 (11th Cir. 2011) to support

14

this uncontroversial proposition.   In <u>Willis</u>, "the bankruptcy court . . . determined that Willis engaged in several prohibited transactions under section 408 of the Internal Revenue Code and caused the assets to lose their tax-exempt status."  424 Fed. Appx. 880 at *1.  That determination was clearly within the court's authority and not reversed on appeal.  <u>See</u> <u>Willis v. Menotte</u>, 2010 WL 1408343 at *7 (S.D. Fla. 2010)(recognizing that "the bankruptcy court [in the case of <u>In re Willis</u>] properly applied **both** bankruptcy **and** tax law in arriving at its conclusions" that a self-directed IRA had lost its exemption).

Appellant tries to suggest that the bankruptcy court's authority to make a determination regarding the tax-exempt (and therefore creditor-exempt) status of an asset within a bankruptcy estate is limited to those situations in which the exemption is a creature of federal law, as opposed to state law. Appellant cites absolutely **no authority** to support this distinction.  The lack of case law supporting Appellant's position on this point is telling.

First, the actual exemptions provided by the applicable federal and state statutes are substantively identical.  For ease of comparison, both the Florida Statute and its federal counter-part are reproduced below with the provision from Florida Statute §222.21(2)(a)(2) appearing first:

> [A] fund or account is exempt from all claims of creditors of the owner, beneficiary, or participant if the fund or account is maintained in

accordance with [a governing instrument] that has been determined by the Internal Revenue Service to be exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended, unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable.

The federal exemption provided for in 11 U.S.C. § 522(b)(3)(C) provides for an exemption of "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."

The only difference between the federal and state statutes is the provision in the Florida Statute that states "unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable."  Appellant argues that this additional provision, which has been in effect in Florida since 2005, divests the bankruptcy court with the ability to determine the creditor-exempt status of the IRA.  See Initial Brief, pgs. 16 – 20.  Despite the fact that this version of the statute has been in effect for twelve years, Appellant does not cite a single case that would support Appellant's interpretation of Florida Statute § 222.21(2)(a)(2) and concedes that "there is no apparent case law interpreting the language or the amendments to the statute."  See Initial Brief p. 22.  Trustee incorporates his argument from Section I(A), *supra*, that there

16

is nothing in Florida Statute § 222.21(2)(a)(2) that would support Appellant's interpretation of the Statute that federal bankruptcy courts do not have the authority to render a determination regarding the tax-exempt status of the types of assets that are the subject of the Statute.

Second, Appellant's suggestion that federal bankruptcy courts are somehow restricted from interpreting and applying creditor exemptions that arise out of state law is inconsistent with customary and wide-spread practice and clearly established black-letter law. In fact, a "bankruptcy court <u>must</u> interpret and apply the Florida exemption law in the same manner as a Florida State Court." <u>In re Schumacher</u>, 400 B.R. 831, 835 (M.D. Fla. 2008)(quoting <u>Colwell v. Royal Int'l Trading Corp.</u>, 196 F.3d 1225, 1226 (11th Cir. 1999)). The amount of case law in which federal bankruptcy courts have interpreted and applied the Florida homestead exemption alone would be enough to exceed this Brief's text limitations. <u>See</u> <u>e.g.</u>, <u>In re Magelitz</u>, 386 B.R. 879, 884 (Bankr. N.D. Fla. 2008)(holding that the debtor received the benefits of Florida's constitutional homestead exemption and did not qualify for the wildcard exemption under Florida Statute § 222.25(4)).

In summary: (a) the plain language of Florida Statute § 222.21 does not restrict federal bankruptcy courts from make determinations as to the tax-exempt status of subject accounts; (b) the Florida state legislature has no

authority to divest the federal bankruptcy courts of their core jurisdiction to determine the existence (or non-existence) of creditor exemptions; (c) federal bankruptcy courts routinely make determinations as to the tax-exempt (and therefore creditor-exempt) status of a debtor's assets, which is what occurred in In re Willis and In re Schumacher; (d) federal bankruptcy courts routinely interpret and apply exemptions and other rights that arise out of state law (In re Hughes, 293 B.R. at 529 – 30); and (e) Appellant has been unable to cite a single case prohibiting bankruptcy courts from making a determination of tax exemption under Florida Statute § 222.21 to support his argument.  For those reasons, Appellant's claim that only the IRS or a federal tax court could have found Appellant's IRA to be non-exempt must be rejected.

### C. The Plain Language of Florida Statute §222.21 is Clear and Unambiguous so the Legislative History Cited by Appellant is Irrelevant to this Appeal.

Appellant's Initial Brief contains a lengthy summary of the legislative intent in acting Florida Statute § 222.21(2)(a)(2) (see Initial Brief pgs. 16 – 20), but the legislative intent is not relevant and should not be considered when the language of the statute is clear and unambiguous.   CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001).  Even where there is contrary indications in the statute's legislative history, courts do not resort to legislative history "to cloud a statutory text that is clear."  Id.

(quoting <u>Ratzlaf v. United States</u>, 510 U.S. 135, 147 (1994)).   Courts must assume that legislatures meant what is said in drafting legislation.   <u>Id</u>.   If a statute's meaning is clear and unambiguous, there is no need for further inquiry.   <u>U.S. v. Silva</u>, 443 F.3d 795, 798 (11th Cir. 2006).   Statutes are to be interpreted by looking at the entire statutory contest and in a manner consistent with the plain language of the statue unless doing so would lead to an absurd result.   <u>Id</u>.

Moreover, mere legislative history from one chamber of the bicameral Florida legislature that passed Florida Statute § 222.21 is inadequate to overcome the federalism problems discussed above – the Florida legislature simply cannot, as a matter of law, divest the federal bankruptcy courts of their inherent authority to determine the existence of exemptions.   Yet that is exactly what Appellant contends, as under the Appellant's theory of the case there must be a final, non-appealable determination under Florida Statute § 222.21 that a self-directed IRA has lost its exempt status as of the petition date.   As a practical matter, the federal bankruptcy courts **cannot** enter such an order by the petition date, as there is no party in position to raise an objection to a claimed exemption on the petition date to even place the issue before the court.   Therefore, Appellant's interpretation of Fla. Stat. § 222.21 would

necessarily divest the bankruptcy court of one of its core responsibilities –
determining the existence (or non-existence) of creditor exemptions.

## II.    There is No Requirement that a Final Determination that an Account is Non-Exempt be Rendered **Prior to** the Petition Date.

### A. As of the Petition Date, Appellant Had Committed All Acts Necessary to Render His Self-Directed IRA Non-Exempt.

Trustee and Appellant both acknowledge the well-established law that
the controlling date for determining a proper claim of exemption is the petition
date.  In re Fodor, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006).  The evidence
at Trial clearly established, and the Bankruptcy Court held, that the Appellant
had committed all acts necessary for the IRA to lose its exempt status prior to
the Petition Date by engaging in prohibited transactions by disqualified
persons.  [R. 10-2; 9-13, pgs. 35:19 – 40:23].

A "prohibited transaction" is defined in the Internal Revenue Code as
the transfer to, or use by, or for the benefit of, a disqualified person of the
income or assets of the IRA.  I.R.C. § 4975(c)(1)(D).  A prohibited transaction
also includes "an act by a disqualified person who is a fiduciary whereby he
deals with the income or assets of a plan in his own interest or his own
account."  I.R.C.  § 4975(c)(1)(E). A "disqualified person" is defined as a
fiduciary (one who controls the IRA) and also includes a member of the

family of the fiduciary.   I.R.C. § 4975(e)(2)(A) and (F).   By definition, Appellant and his wife are disqualified persons.

The uncontroverted testimony from Mr. Van Heyde at Trial, along with the record evidence introduced by the Trustee, confirms that Appellant and his wife, as disqualified persons, were the beneficiaries of prohibited transactions involving the IRA Assets that benefited their own interests.   [R. 10-2; 9-13, pgs. 35:19 – 40:23].   As the Bankruptcy Court held, prior to the Petition Date the IRA was subject to the following prohibited transactions involving Appellant and his wife:

1. Appellant purchased a 2014 Smart Car with IRA Assets and subsequently titled the Smart Car in his own name.   [R.10-2, pg. 4].   The title to the 2014 Smart Car is dated December 3, 2014, which is prior to the Petition Date of February 27, 2015.   [R. 8-1].   9-13, pg. 32:6-11 and 21-25]

2. Appellant purchased a 2007 Chevrolet Suburban with IRA Assets and subsequently titled the Chevrolet Suburban in the name of his wife.   [R.10-2, pg. 4; 9-13, pgs. 32:12 – 25 and 140:18 – 141:7].   The title to the 2007 Chevrolet Suburban was transferred to Appellant's wife, Pak, in 2014, which is prior to the Petition Date of February 27, 2015.[3]

---

[3] This sentence has been slightly altered from the original text to strictly comport with the record cited.

21

3.  Appellant spent thousands of dollars of IRA Assets on parts for the two vehicles.  [R. 10-2, pg. 4].

4.  Appellant and his wife used the 2007 Suburban and the 2014 Smart Car for their own benefit.  [R. 9-13, pgs. 37:6 – 38:4; 141:1 – 24]; and

5.  Appellant visited the Puerto Rico condominium owed by the IRA and stayed in the condominium.  [R. 10-2, pg. 4; 9-13, pgs. 166:19 – 167:4].

Appellant did not cross-examine Mr. Van Heyde or ask him a single question to attempt to refute his testimony.  [R. 9-13, pg. 40:19 – 25].   While multiple prohibited transactions occurred, only one is required for the IRA to lose its exempt status.  See I.R.C. § 408(e)(2); see also [R. 10-2, pgs. 3-4].  All of the prohibited transactions occurred during the year 2014, which was prior to the Petition Date of February 25, 2015.

The Bankruptcy Court applied the facts of this case as they existed on the Petition Date to the governing law and concluded that all of the prohibited transactions engaged in by appellant had rendered the IRA as non-exempt on the Petition Date.

**B. A Bankruptcy Court Sustains an Objection to a Claim of Exemption Effective as of the Petition Date, Because the Facts and Circumstances that Exist Pre-Petition Determine Whether a Claim of Exemption is Valid.**

The Trustee agrees with the case law cited by Appellant that the "fact[s] and circumstances as of the petition date control" whether an exemption is available to a bankruptcy debtor.   Initial Brief at pg. 23.   The law is also clearly established that the relevant date for "determining" a proper claim of exemption is the petition date.   In re Fodor, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006).   "Because the determination of the propriety of an exemption **of necessity** is made after the filing of the bankruptcy petition, the court must take a '**retroactive snapshot**' of the facts of the instant the case commenced." In re Helsel, Sr., 326 B.R. 591, 602 (Bankr. W.D. Pa. 2005)(emphasis added). Bankruptcy courts apply the law of exemptions to the facts as they exist of the petition date, because it is the facts that exist on the petition date that are relevant to the determination of whether the claim of exemption is proper.   In re Fodor, 339 B.R. at 521.

Therefore, post-petition orders that sustain objections to claims of exemption are by their very nature orders that have a *nunc pro tunc* effect going back to the petition date.   When the court applies its "retroactive snapshot" of the facts at the petition date, it is determining whether on that

23

date an asset was exempt or not, and therefore the post-petition order necessarily is effective dating back to the petition date.   That conclusion is well-supported by the law, which provides that "bankruptcy exemptions **are determined** and evaluated as of the date the petition for relief is filed," even though the actual order comes later.  In re Bartowszewski, 36 B.R. 424 (Bankr. N.D.N.Y. 1984); see also In re Hrncirik, 138 B.R. 835, 839 (Bankr. N.D. Tex. 1992).  Very plainly, the post-petition determination of exemptions is effective as of the petition date.

Appellant argues that because a final determination that the IRA lost its exempt status was not made prior to the Petition Date, the IRA maintains its exemption regardless of whether prohibited transactions had occurred prior to the Petition Date.  See Initial Brief pgs. 23-24.  Appellant's argument is fatally flawed, because the Bankruptcy Court's Order is effective as of the Petition Date and Appellant had already engaged in the acts that were necessary to cause the IRA to lose its claim of exemption prior to the Petition Date.  **The retroactive nature of post-petition orders sustaining objections to claims of exemption is dispositive of this appeal, as the Bankruptcy Court's Order in this case is effective as of the Petition Date.**  Since Appellant's claim on appeal is premised upon the non-existence of an effective determination of non-exemption on the Petition Date, the retroactive

application of the Bankruptcy Court's Order as of that date resolves the issue. Stated differently, because the Bankruptcy Court's Order was effective as of the Petition Date, it is dispositive of Appellant's Appeal that is based entirely upon the argument that no such determination existed on the Petition Date.

When a party objects to a debtor's claim of exemption, it is fundamental that the bankruptcy court must consider the evidence set forth by the parties and apply the facts as they existed on the petition date to the applicable law. The bankruptcy court ultimately enters an order sustaining or overruling the objection to the claim of exemption.  Depending on the complexity of the issues, a judge's ruling on the validity of the exemption may not occur for several months or even years after the petition date.  Regardless, as the Helsel case confirms, the ruling – whenever it is issued – is a retroactive snapshot as of the petition date determining the existence of an exemption as of the petition date.  326 B.R. at 602.  To hold otherwise would be to create a form of legal purgatory where the bankruptcy court is, as Appellant contends, making a ruling regarding the existence of an exemption based upon the facts as they existed on the petition date, yet the ruling does not take effect until the

date that it is issued some weeks, months, or years later[4].    There is no reasonable legal theory that would support that conclusion.

### C. The Petition Date Is Relevant Only to Establish the Facts and Circumstances Relevant to a Claim of Exemption, Not to Prohibit Subsequent Legal Determinations Based Upon the Judicial Application of Governing Law to the Facts that Existed Upon the Petition Date.

Appellant's appeal is predicated almost entirely upon the argument that a judicial determination that Appellant's pre-petition actions rendered his self-directed IRA non-exempt would only act to make that IRA available to creditors if the judicial determination itself was also rendered pre-petition. See Initial Brief at § II.  The wellspring of Appellant's argument is his citation at pages 21 through 23 to case law stating the proposition that "a debtor's exemptions are determined as of the time of the filing of his petition."  Id. at pg. 21.  Appellant's argument misapplies that otherwise uncontroversial legal principle.

The Trustee acknowledges and agrees with the general rule that the "fact[s] and circumstances as of the petition date control" whether an exemption is available to a bankruptcy debtor.   Initial Brief at pg. 23.

---

[4] Under Appellant's theory, would interest earned on the once-exempt asset during the period between the petition date and an order sustaining an objection to exemption be exempt since Appellant necessarily contends that such an order is not effective until rendered?

However, the legal proposition is limited to just that – the ***facts and circumstances*** existing on the petition date.   In re Rivera, 5 B.R. 313, 315 (Bankr. M.D. Fla. 1980)(stating that when reviewing a debtor's claim of exemption, the court's decision whether to allow the exemption is "governed by the facts and governing circumstances which existed on the date the petition was filed and not by any changes which may have occurred thereafter.")  The legal principal cannot be stretched beyond that to prohibit post-petition judicial determinations regarding the effect of pre-petition acts or omissions on a debtor's claim of exemption.  Rather, bankruptcy courts are specifically tasked with applying the facts of the case as they exist on the petition date to the then existing applicable law to determine whether a debtor properly claims an exemption.  See id.

### D. To Apply Florida Statute § 222.21 as Appellant Argues Would Require an Absurd Result That Would be Inconsistent with the Principles Behind the Bankruptcy Code.

A bankruptcy court, sitting in equity, is "duty bound to take a reasonable steps to prevent a debtor from abusing or manipulating the bankruptcy process to undermine the essential purposes of the Bankruptcy Code, including the principle that all the debtor's assets are to be gather and deployed in a bona fide effort to satisfy valid claims."  In re Kulakowski, 735 F.3d 1296, 1301 (11th Cir. 2013) (quoting In re Marrama, 430 F.3d 474, 477

(1st Cir. 2005)).  If this Court were to give Florida Statute § 222.21 the interpretation that Appellant argues, the result would be to create a statutory framework that sanctions and promotes fraud.

Under Appellant's interpretation of the law, anyone could create a self-directed IRA that merely uses the proper opening forms and then place all of the individual's assets within that IRA, thereby putting the those assets out of the reach of creditors pursuant to Florida's exemption for retirement accounts. The individual could then engage in prohibited transactions and use those assets for his personal purposes in intentional violation of the restrictions against doing so.  As long as that individual filed bankruptcy a single day before the IRS or a federal tax court issued a determination that the individual's improper transactions rendered the account non-exempt, under the Appellant's interpretation of Florida Statute § 222.21, that individual would still be able to exempt those assets from creditor claims in his bankruptcy merely because he used the proper form to open an account that he intended to use solely to protect his assets from creditors, as Appellant's interpretation of Florida Statute § 222.21 requires a final, non-appealable determination of non-exemption to be in existence as of the petition date[5].

---

[5] In fact, under Appellant's theory of the case an actual determination of non-exemption by the IRS or a tax court would not prevent a debtor from gaming

If a creditor discovered the improper transactions that were ongoing with the IRA and took actions to levy upon the IRA believing it to be non-exempt, then the owner of the IRA could file for bankruptcy protection and prevent further collection attempts due to the imposition of the automatic stay. Even if after filing for bankruptcy the IRS or tax court determined the IRA to be non-exempt for tax purposes, then the debtor would only have to pay the penalties assessed by the IRS.  Under this scenario, because the IRS or tax court determined the IRA to be non-exempt post-petition, then the debtor would be entitled to retain as creditor-exempt the balance of the IRA that remained after deducting the penalties.  The net effect of these actions is that a debtor uses the bankruptcy process to eliminate any challenge to the exemption by a creditor or a bankruptcy trustee, thereby insulating the IRA from liquidation, all while standing to gain a windfall from the debtor's actual intentional fraud.   Would-be fraudsters take note: a holding endorsing Appellant's interpretation of Florida Statute § 222.21 would create a new vehicle to shield assets from creditors that eliminates the ability of a bankruptcy court to address actual fraud, even when the existence of the fraud is uncontested.  Just file a bankruptcy case before an IRS determination of non-exempt status becomes "final and nonappealable" and a debtor may retain

---

the system so long as he initiated a bankruptcy proceeding before such finding became final and non-appealable.

his creditor exemption by merely placing his assets in a self-directed IRA that was opened by using an approved form.

While this would create an absurd result, and one that the Florida legislature could not have intended, that is the exact position that Appellant argues in his Initial Brief.  Appellant argues that even if the "Bankruptcy Court was correct that [prohibited transactions occurred] which would eventually result in a determination by the IRS or a Tax Court that the IRA had lost its tax exempt status" there had been no such determination as of the Petition Date so "under Florida law, the IRA is exempt from creditors, even if the tax-exempt status will be eventually be determined by the IRS to have been lost in 2014."  See Initial Brief at pgs. 23 – 24.  As a result, according to Appellant, the fact that Appellant engaged pre-petition in prohibited transactions that rendered the IRA non-exempt for tax purposes is irrelevant; rather, Appellant is entitled to place those funds into an exempt vehicle, violate the IRS rules and regulations prohibited the use of those funds, and maintain those funds as exempt from his Creditors because neither the IRS or a tax court was able to make a final and non-appealable determination as to the exemption pre-Petition.  Such a result would be absurd.

"Bankruptcy courts have traditionally drawn upon their powers of equity to prevent abuse of the bankruptcy process. . . . [c]learly, this judicial

authority to police bankruptcy cases includes the ability to deny a debtor's exemptions, or amendments to exemptions, upon a showing of bad faith." In re Casseday, 2012 WL 2803725 (W.D.N.C. 2012)(internal citations omitted). Despite the bankruptcy court's inherent power to prevent abuse of the process in bad faith, if this Court adopts the Appellant's interpretation of Florida Statute § 222.21, it would have the effect of rendering Florida bankruptcy courts helpless to prevent the kind of fraud that Appellant was found to have engaged in.

## III.    Conclusion.

For the reasons set forth above, the Bankruptcy Court correctly found the Appellant's IRA was non-exempt and the Trustee should liquidate the IRA Assets for the benefit of Appellant's Creditors.  The Order against Appellant must be affirmed.

Dated: September 8, 2017

Respectfully submitted,

**ZIMMERMAN, KISER & SUTCLIFFE, P.A.**

*/s/ Kevin P. Robinson*
Kevin P. Robinson, Esquire
FBN: 0014650
Bradley J. Anderson, Esquire
FBN: 0105695

31

315 E. Robinson Street, Suite 600
Orlando, FL 32801
Tel: (407) 425-7010
Fax: (407) 425-2747
Email: krobinson@zkslawfirm.com
Email: banderson@zkslawfirm.com
Email: service@zkslawfirm.com
*Counsel for Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

**I HEREBY CERTIFY** that Appellee's Answer Brief complies with the type-volume limitations set forth in Rule 8015(a)(7)(B).  The Microsoft Word word check tool identifies 7,061 words and 640 lines of text within the Answer Brief, including headings, footnotes, and quotations.

**ZIMMERMAN, KISER &
SUTCLIFFE, P.A.**


*/s/ Kevin P. Robinson*

Kevin P. Robinson, Esquire
FBN: 0014650
Bradley J. Anderson, Esquire
FBN: 0105695
315 E. Robinson Street, Suite 600
Orlando, FL 32801
Tel: (407) 425-7010
Fax: (407) 425-2747
Email: krobinson@zkslawfirm.com
Email: banderson@zkslawfirm.com
Email: service@zkslawfirm.com
*Counsel for Appellee*

33

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true copy of the foregoing Appellee's Appeal Brief has been furnished by electronic transmission and/or U.S. Mail, postage prepaid to: **Frank M. Wolff, Esquire**, Frank Martin Wolff, P.A., 19 E. Central Blvd., Orlando, FL 32801; and **Michael A. Nardella, Esquire**, Nardella & Nardella PLLC, 250 E. Colonial Dr., Ste. 102, Orlando, FL 32801 (mnardella@nardellalaw.com), this 8th day of September, 2017.

> **ZIMMERMAN, KISER &**
> **SUTCLIFFE, P.A.**

> */s/ Kevin P. Robinson*
> Kevin P. Robinson, Esquire
> FBN: 0014650
> Bradley J. Anderson, Esquire
> FBN: 0105695
> 315 E. Robinson Street, Suite 600
> Orlando, FL 32801
> Tel: (407) 425-7010
> Fax: (407) 425-2747
> Email: krobinson@zkslawfirm.com
> Email: banderson@zkslawfirm.com
> Email: service@zkslawfirm.com
> *Counsel for Appellee*

34