# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                          Bkr Case No. 6:15-BK-1720-KSJ

**KEITH A. YERIAN,**

**Debtor.**

_____/

**KEITH A. YERIAN.**
                                                Case No. 6:17-CV-459-Orl-31
**Appellant,**

**v.**

**RICHARD B. WEBBER, II, as TRUSTEE,**

**Appellee.**

_____/

_____

## AMENDED[1] INITIAL BRIEF OF APPELLANT
## KEITH A. YERIAN

_____

**Michael A. Nardella, Esq.**
**Florida Bar No.: 51265**
**Christian J. Graham, Esq.**
**Florida Bar No.: 94245**
**Nardella & Nardella, PLLC**
**250 E. Colonial Dr., Suite 102**
**Orlando, Florida 32801**
**Telephone (407) 966-2680**
**mnardella@nardellalaw.com**

_____

[1] Amended to ensure compliance with the Court's Order dated August 29, 2017.

cgraham@nardellalaw.com
**Attorneys for Appellant**

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ................................................................................. 1

STATEMENT OF ISSUES ........................................................................................... 2

STANDARD OF APPELLATE REVIEW ........................................................................ 3

STATEMENT OF THE CASE ....................................................................................... 3

SUMMARY OF ARGUMENT………………………………………………………...9

ARGUMENT ……………………………………………………………………………12

I.      Federal and Florida Law Provide Separate, Distinct Exemptions
        for Individual Retirement Accounts…………………………………………….....12

A.      The Federal Statute and Florida Statute Differ Significantly Regarding the Effect
        of Tax-exempt Status on Creditor Exempt Status………………………………...17

II.     Bankruptcy Exemptions are Determined on the Petition Date……………………22

A.      On Yerian's Petition Date, the IRA Was an Asset Exempt from Creditors and
        Therefore Exempt from Property of the Estate, Regardless of Whether or Not Tax-
        exempt Status Was Lost Due to Prohibited Transactions…………………….…...24

III.    The Bankruptcy Court Only Analyzed the IRA Under the Federal Statute Standard
        and Ignored the 2005 Amendments to Sec. 222.21, Florida Statutes…………….26

CONCLUSION………………………………………………………………………….30

CERTIFICATE OF COMPLIANCE……………………………………………............32

CERTIFICATE OF SERVICE……………………………………………………..........33

i

# TABLE OF AUTHORITIES

**Cases**

Crawford v. W. Electric Co., Inc.,
745 F.2d 1373, 1378 (11th Cir. 1984)…………………………………………….3

In re Baker,
590 F.3d 1261, 1263 (11th Cir. 2009)…………………………………………..13, 14

In re Colortex Indus., Inc.,
19 F.3d 1371, 1374 (11th Cir. 1994)…………………………………………..... 3

In re Fodor,
339 B.R. 519, 521 (Bankr. M.D. Fla. 2006)…………………………………………..22

In re Friedman,
38 B.R. 275, 276 (Bankr. E.D. Pa. 1984)……………………………...…………….11, 22

In re Gentry,
459 B.R. 861, 863-64 (Bankr. M.D. Fla. 2011)…………………………………………..22

In re Globe Mfg. Corp.,
567 F.3d 1291, 1296 (11th Cir. 2009)…………………………………………………..3

In re Mathusa,
446 B.R. 601, 603 (Bankr. M.D. Fla. 2011)……………………………..13, 14, 17, 26, 27, 28, 29

In re McFarland,
790 F.3d 1182, 1193-94 (11th Cir. 2015)………………………………….................12, 30

In re McRae,
308 B.R. 572, 575 (N.D. Fla. 2003)…………………………………………………….3

In re Meddock,
25 Fla. L. Weekly Fed. B 145 (Bankr. M.D. Fla 2014)……………………………………..22

In re Swarup,
521 B.R. 382, 387 (Bankr. M.D. Fla. 2014)……………………………………….10, 16

In re Willis,
424 Fed. Appx. 880, 880 (11th Cir. 2011)…………………………………..9, 17, 18, 26, 29, 30

Matter of Rivera,
5 B.R. 313, 315 (Bankr. M.D. Fla. 1980)…………………………………………….22, 24

Willis v. Menotte,
105 A.F.T.R. 2d 2010-1877 (S.D. Fla. 2010)…………………………………………..17, 29

**Statutes**

11 U.S.C. § 522 ……………………………………………………………………12
11 U.S.C. § 522(b) ................................................................................. 12
11 U.S.C. § 522(b)(1) ............................................................................. 12
11 U.S.C. § 522(b)(2) ....................................................................... 12, 13
11 U.S.C. § 522(b)(3) ............................................................... 12, 13, 15, 27
11 U.S.C. § 522(b)(3)(A)...........................................................2, 10, 14, 16, 18
11 U.S.C. § 522(b)(3)(C) ......................................2, 9, 14, 16, 17, 18, 26, 27, 28, 29, 30
11 U.S.C. § 522(d) …………………………………………………………………12
11 U.S.C. § 523(b)(c) ……………………………………………………………...............11

11 U.S.C. § 523(b)(3)(A)……………………………………………………………...11
26 U.S.C. § 408(e)(2)………………………………………………………………………28
28 U.S.C. § 158(a)(1)…………………………………………………………………1, 2
 Federal Rule of Bankruptcy Procedure 8001(a)……………………………………...1
Florida Statutes Section 222.20……………………………………………..................14
Florida Statutes Section 222.21 …………………………………………………...2, 14, 15, 19, 26
Florida Statutes Section 222.21(a)……………………………………………………21
Florida Statutes Section 222.21(2) …………………………...............11, 14, 16, 18, 26, 27, 28, 29, 30
Florida Statutes Section 222.21(2)(a) ……………………………………………..9, 10, 16

**Other Authorities**

Retirement and Pensions, Debtors and Creditors, 2005 Fla. Sess. Law Serv. Ch.
2005-101(C.S.S.B. 660)……………………………………………………………………19
*Senate Staff Analysis and Economic Impact Statement* dated March 22, 2005……………………19
s. 401 of the Internal Revenue Code of 1986……………………………………………..9, 13, 17
s. 401(a) of the Internal Revenue Code of 1986……………………………10, 14, 15, 16, 18, 20
s. 403 of the Internal Revenue Code of 1986…………………………………….............9, 13, 17
s. 403(a) of the Internal Revenue Code of 1986…………………………….............10, 15, 16, 18, 20
s. 403(b) of the Internal Revenue Code of 1986…………………………………10, 15, 16, 18, 20
s. 408 of the Internal Revenue Code of 1986…………………4, 9, 10, 13, 15, 16, 17, 18, 20, 24
s. 408A of the Internal Revenue Code of 1986…………………………9, 10, 13, 15, 16, 17, 18, 20
s. 409 of the Internal Revenue Code of 1986…………………………………….............10, 15, 16, 18, 20
s. 414 of the Internal Revenue Code of 1986……………………………9, 10, 13, 15, 16, 17, 18, 20
s. 457 of the Internal Revenue Code of 1986……………………………………………..………9, 13, 17
s. 457(b) of the Internal Revenue Code of 1986…………………………….………10, 15, 16, 18, 20
s. 501(a) of the Internal Revenue Code of 1986…………………..………...9, 10, 13, 15, 16, 17, 18, 20

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

In re:                                            Bkr Case No. 6:15-BK-1720-KSJ

**KEITH A. YERIAN,**

**Debtor.**

_____/

**KEITH A. YERIAN.**
                                                  **Case No. 6:17-CV-460-Orl-31**
**Appellant,**

**v.**

**RICHARD B. WEBBER, II, as TRUSTEE,**

**Appellee.**

_____/

## INITIAL BRIEF OF APPELLANT KEITH A. YERIAN

## STATEMENT OF JURISDICTION

Appellant, Keith A. Yerian ("Yerian" or "Appellant"), brings this appeal from the United States Bankruptcy Court, Middle District of Florida (the "Bankruptcy Court") to the United States District Court for the Middle District of Florida (the "District Court") pursuant to 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a). Yerian appeals from the final "Order Sustaining Trustee's Objection to Debtor's Claim of

Exemptions" entered by the Bankruptcy Court (the "Order"). *See* Record Doc. 5-16, citing Dkt. #100. The District Court has jurisdiction over the appeal of the Bankruptcy Court's Order, pursuant to 28 U.S.C. § 158(a)(1), which provides that the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts.

**<u>STATEMENT OF ISSUES</u>**

1.      Whether the Bankruptcy Court committed reversible error when it sustained the Trustee's Objection to the Debtor's Claim of Exemption in the Debtor's self-directed Individual Retirement Account (the "IRA") ruling that the IRA was not exempt pursuant to 11 U.S.C. § 522(b)(3)(C), but did not apply the separate, but not identical, exemption provided by § 222.21, *Florida Statutes*, as incorporated by 11 U.S.C. § 522(b)(3)(A).

2.      Whether § 222.21, *Florida Statutes*, as incorporated by 11 U.S.C. § 522(b)(3)(A), would cause the IRA to be exempt property as no final and non-appealable determination had yet been made as of the petition date declaring that the IRA was not tax-exempt.

2

## STANDARD OF APPELLATE REVIEW

The District Court functions as an appellate court in reviewing decisions of the Bankruptcy Court. *In re Colortex Indus., Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994). The legal conclusions of the Bankruptcy Court are reviewed *de novo*, while findings of fact are reviewed for clear error. *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Crawford v. W. Electric Co., Inc.*, 745 F.2d 1373, 1378 (11th Cir. 1984) (citations omitted). "Review of a bankruptcy court's ruling on a trustee's objection to claimed exemptions is a mixed question of law and fact." *In re McRae*, 308 B.R. 572, 575 (N.D. Fla. 2003).

## STATEMENT OF THE CASE

This case concerns whether the Debtor/Appellant Yerian's self-directed Individual Retirement Account (the "IRA") is an asset exempt from administration by the Trustee/Appellee Richard B. Webber, II (the "Trustee" or "Appellee"). As testified to by the Trustee's expert witness, Joseph Jay Van Heyde, II ("Heyde"), Yerian established the IRA on June 1, 2012, when

he executed that certain IRA LLC Agreement (the "IRA Agreement").  *See* Record Doc. 12, Attachment #10, citing Dkt. #120, Part 50, Exhibit 31; Record Doc. 9, Attachment #13 citing to Dkt. #135, pg. 20. The IRA Agreement was a "basic IRA agreement to establish a Section 408 individual retirement account."  *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20. The IRA Agreement properly established an individual retirement account for Yerian. *See* Record Doc. 9, Attachment #13, citing to Dkt. # 135, pg. 20.

As a self-directed IRA, Yerian managed the assets of the IRA himself, which as Heyde testified is permissible under the law.  *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 21. Yerian proceeded to fund the IRA with various assets.  *See* Record Doc. 10, Attachment #2, citing Dkt. #120, Part 2, Exhibit 1; Record Doc. 12, Attachment #11, citing to Dkt. #120, Part 51, Exhibit 32; Record Doc. 12, Attachment #12, citing to Dkt. #120, Part 52, Exhibit 33; Record Doc. 12, Attachment #14, citing to Dkt. #120, Part 54, Exhibit 35; Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20-22. Heyde further testified that the transfers of property into the IRA were properly done. *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20. The primary asset funded into the IRA was the ownership of a

4

Florida limited liability company called Yerian Properties, LLC (the "LLC"). *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 21; Record Doc. 10, Attachment #2, citing to Dkt. #120, Part 2, Exhibit 1; Record Doc. 12, Attachment #12, citing to Dkt. #120, Part 52, Exhibit 33; Record Doc. 12, Attachment #13, citing to Dkt. #120, Part 53, Exhibit 34.

The LLC acquired two real properties, one in Palm Bay, Florida (the "Palm Bay Property"), and one in Puerto Rico (the "Puerto Rico Property"), both as real estate investments for the IRA. *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 29-30*; Record Doc. 10, Attachment #2, citing to Dkt. #120, Part 2, Exhibit 1; Record Doc. 13, Attachment #1, citing to Dkt. #120, Part 61, Exhibit 42; Record Doc. 13, Attachment #2, Citing to Dkt. #120, Part 62, Exhibit 43. Yerian testified that he stayed over at the Puerto Rico Property at least once when there to oversee repairs and improvements to the property. *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 166-167.

In 2014, the LLC also acquired a 2014 Smart Car (the "Smart Car") and a 2007 Chevrolet Suburban (the "Suburban") as investments in the IRA. *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 31-32*; Record Doc. 10, Attachment #2, citing to Dkt. #120, Part 2, Exhibit 1; Record Doc.

5

9, Attachment #4, citing to Dkt. #123-2, pg. 5-6; Record Doc. 9, Attachment #4, citing to Dkt. #123-3, pg. 7-8. However, the Smart Car was formally titled in Yerian's individual name, although Yerian testified that he never used the vehicle, and that the title was only placed in his name by mistake. *See* Record Doc. 9, Attachment #4, citing to Dkt. #123-2; Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 181. Similarly, the Suburban was formally titled in the name of Yerian's wife, although Yerian again testified that was by mistake and due to his lack of knowledge of the law. *See* Record Doc. 9, Attachment #4, citing to Dkt. #123-3, pg. 7-8; Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 182.

On February 27, 2015, Yerian filed a voluntary petition for chapter 7 bankruptcy relief (the "Petition Date").  *See* Record Doc. 14, Attachment #18, citing to Dkt. #120, Part 98, Exhibit 79, pg. 3; Record Doc. 5, Attachment #1, citing to Dkt. #1.  On July 28, 2015, Yerian filed his Amended Schedules B, C, E, & F (the "Amended Schedules").  *See* Record Doc. 5, Attachment #13, citing to Dkt. #48. The Amended Schedules listed the IRA as an exempt asset on Schedule C, with a value of $350,000.00.  *See* Record Doc. 5, Attachment #13, citing to Dkt. #48, pg. 7.  On August 26, 2015, the Trustee filed his Objection to Debtor's Claim of Exemptions,

6

objecting to the classification of the IRA as exempt property and seeking to administer the IRA as an asset of the bankruptcy estate (the "Objection"). *See* Record Doc. 5, Attachment #14, citing to Dkt. #50.

The Objection was tried on November 30, 2016, and December 5, 2016, and consolidated with the trial on that certain Adversary Proceeding 15-ap-00064-KSJ (the "Adversary") per the Bankruptcy Court's Order Granting Plaintiff's Motion to Consolidate the Trustee's Objection to Debtor's Claim of Exemptions in the Main Case with Adversary Proceeding 6:15-AP-64 for Discovery and Trial (the "Consolidation Order"). *See Adversary Doc. 16.* On December 12, 2016, Yerian filed his Bench Memorandum Regarding Trustee's Objection to Property Claimed As Exempt (the "Bench Memorandum") in conjunction with his closing arguments. *See* Record Doc. 9, Attachment #9, citing to Dkt. #129.

On February 14, 2017, the Bankruptcy Court issued its oral ruling. *See* Record Doc. 9, Attachment #15, citing to Dkt. #152. In the oral ruling, the Bankruptcy Court found that Yerian engaged in prohibited transactions within the IRA, namely the personal use of the Puerto Rico Property and the titling of the Smart Car and Suburban in his and his wife's name, and that these prohibited transactions caused the IRA to lose its <u>tax-exempt</u> status as

7

of January 1, 2014, prior to the Petition Date.  *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 18-21. The Bankruptcy Court then ruled that the loss of <u>tax-exempt</u> status necessarily resulted in the IRA's automatic loss of <u>creditor exempt</u> status under both federal and Florida law, and thus the Trustee was entitled to administer the IRA as an asset of the bankruptcy estate.  *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 21.

In line with its oral ruling, on February 24, 2017, the Bankruptcy Court entered the Order, which is final and now the subject of this Appeal. *See* Record Doc. 5, Attachment #16, citing to Dkt. #100. On March 10, 2017, Yerian timely filed his Notice of Appeal.  *See* Record Doc 3, Attachment #1, citing to Dkt. #109.

At no time prior to or after the Petition Date has any Tax Court, government agency, including the Internal Revenue Service, or other tribunal made any determination that the IRA was no longer tax-exempt due to prohibited transactions. *See* Record Doc. 9, Attachment #14, citing to Dkt. #136, pg. 54. Instead, the Bankruptcy Court reached this conclusion on its own and further concluded that the loss of tax-exempt status automatically

8

caused the loss of creditor exempt status, despite the objection of Yerian that as of the Petition Date no prior determination had yet been made.

## SUMMARY OF ARGUMENT

Both federal bankruptcy law and Florida law provide separate, somewhat overlapping, but distinct exemptions for individual retirement accounts that protect such accounts from creditors. Federal bankruptcy law includes 11 U.S.C. § 522(b)(3)(C), which provides an exemption for "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." Federal law is clear, however, that if the debtor engaged in prohibited transactions causing the account to lose its tax-exempt status, then the account also automatically loses its status as exempt from creditors and thus is subject to administration as property of the estate. *In re Willis*, 424 Fed. Appx. 880, 880 (11th Cir. 2011). In such situations, it is proper for a bankruptcy court to determine if an account lost its tax-exempt status pre-petition and therefore lost its exemption status under § 522(b)(3)(C).

Florida law, however, includes § 222.21(2)(a), *Florida Statutes*, which provides a separate exemption for individual retirement accounts

which is broader than the exemption provided under federal law. *See In re Swarup*, 521 B.R. 382, 387 (Bankr. M.D. Fla. 2014).  This Florida statute is incorporated into bankruptcy law as an additional exemption under 11 U.S.C. § 522(b)(3)(A), which states that any property which is exempt under "state or local law that is applicable as of the date of the filing of the petition" is also exempt and not property of the estate.

Section 222.21(2)(a), *Florida Statutes*, provides that an individual retirement account "is exempt from all claims of creditors of the owner, beneficiary, or participant if the fund or account is . . . maintained in accordance with a plan or governing instrument that has been determined by the Internal Revenue Service to be exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended, <u>unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable</u>." (emphasis added).  Florida law therefore provides an exemption for accounts that are properly formed unless and until a final and nonappealable determination is made that the account does not qualify.  Essentially, under Florida law, unlike federal law, the loss of tax-exempt status does not

10

automatically trigger the loss of creditor exemption status, at least not until the Internal Revenue Service (the "IRS") or a Tax Court have made the tax status determination.

Bankruptcy exemptions are determined as of a debtor's petition date. *In re Friedman*, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984). As of the Petition Date, neither the IRS nor a Tax Court had made any final and nonappealable determination regarding the IRA. The Bankruptcy Court may have made that determination on its own, but that determination was after the Petition Date, and was not made by the IRS or a Tax Court. Therefore, as of the operative date for determining exemptions, the Petition Date, the IRA was exempt from creditors pursuant to § 222.21(2), *Florida Statutes*, and not property of the estate pursuant to 11 U.S.C. § 523(b)(3)(A).

The Bankruptcy Court committed reversible error when it analyzed 11 U.S.C. § 523(b)(c) and § 222.21(2), *Florida Statutes*, as identical standards. As of the Petition Date, the IRA was exempt from creditors under Florida law—a very different standard from federal law—and therefore the IRA was and is not an asset of the estate.

11

**ARGUMENT**

I.    **Federal and Florida Law Provide Separate, Distinct Exemptions for Individual Retirement Accounts.**

11 U.S.C. § 522(b) governs the application of exemptions to property of a debtor and determines what property of a debtor enters the bankruptcy estate, and what property does not.  11 U.S.C. § 522(b)(1) provides that "[n]otwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection."  The two options are thus the exemptions provided for under 11 U.S.C. § 522(b)(2) or, in the alternative, those provided under § 522(b)(3).

11 U.S.C. § 522(b)(2) provides for specific federal law exemptions, as descriptively listed in 11 U.S.C. § 522(d), but bars access to those exemptions if "the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize."  Instead, if the State law does not authorize access to the federal § 522(d) exemptions, a debtor is required to look to § 522(b)(3), which is the alternative set of exemptions.

"[W]ith 11 U.S.C. § 522 Congress has [therefore] permitted states to create, define, and implement bankruptcy exemptions and to restrict bankruptcy debtors to those exemptions." *In re McFarland*, 790 F.3d 1182,

1193–94 (11th Cir. 2015). "Florida elected to opt out and has enacted its own exemptions." *In re Baker*, 590 F.3d 1261, 1263 (11th Cir. 2009). Because Florida has opted out of § 522(b)(2), "§ 522(b)(3) applies to Florida bankruptcy proceedings." *See In re Mathusa*, 446 B.R. 601, 603 (Bankr. M.D. Fla. 2011).

11 U.S.C. § 522(b)(3) itself provides three different categories of exemptions that are the sole categories of exemptions available to Florida debtors, and are listed as follows:

(3) Property listed in this paragraph is—

(A) subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition . . . ;

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law; and

(C) retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986.

In short, subparagraph (A) exempts any property that is exempt under State law, subparagraph (B) exempts property that is tenancy by the entirety

13

under State law, and subparagraph (C) exempts property that is "retirement funds" so long as those funds retain their tax-exempt status.  The key to this appeal is the non-identical overlap between the exemptions provided subparagraph (A), *i.e.*, provided under Florida law, and the exemption provided under subparagraph (C).  *See, e.g., Mathusa*, 446 B.R. at fn. 20 (finding, ironically, an IRA to be exempt under 11 U.S.C. § 522(b)(3)(C), but not likely to be exempt under § 222.21(2), *Florida Statutes*, as the standards and interpretations of the two provisions differ).

As the Eleventh Circuit has stated, the exemptions available to a Florida debtor under subparagraph (A) are broad, and include all Florida exemptions, including those for individual retirement accounts:

> In an opt out state, debtors may exempt "any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition." *Id*. § 522(b)(3)(A).  Florida elected to opt out and has enacted its own exemptions.  Fla. Stat. § 222.20.

> Florida law shields from the claims of creditors some assets deposited in retirement and profit-sharing plans.  Section 222.21 exempts from the bankruptcy estate money, assets, and any interest in a plan in which the debtor is an owner, participant, or beneficiary and that has been preapproved by the Internal Revenue Service as exempt from taxation under section 401(a) of the Internal Revenue Code . . . .

*Baker*, 590 F.3d at 1263.

14

Therefore, pursuant to subparagraph (A) of 11 U.S.C. § 522(b)(3), a Florida debtor is entitled to the full protections of § 222.21, *Florida Statutes*. A Florida debtor is then <u>also</u> entitled to the <u>additional</u> protections of both subparagraph (B) and subparagraph (C).   Subparagraph (C), by its own terms, provides a separate, additional exemption for "retirement funds." That exemption co-exists with the exemptions provided under Florida law, and does not replace Florida law, pre-empt it, or otherwise serve as the exclusive exemption for individual retirement accounts.

As for the scope of Florida law, § 222.21, *Florida Statutes*, provides very broad protection for individual retirement accounts, specifically as follows:

222.21   Exemption of pension money and certain tax-exempt funds or accounts from legal processes—

(2)(a)   Except as provided in paragraph (d), any money or other assets payable to an owner, a participant, or a beneficiary from, or any interest of any owner, participant, or beneficiary in, a fund or account is exempt from all claims of creditors of the owner, beneficiary, or participant if the fund or account is:

1.   Maintained in accordance with a master plan, volume submitter plan, prototype plan, or any other plan or governing instrument that has been preapproved by the Internal Revenue Service as exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended,

15

> <u>unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable;</u>
>
> 2.   Maintained in accordance with a plan or governing instrument that has been determined by the Internal Revenue Service to be exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended, <u>unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable;</u> . . . .

Sec. 222.21(2)(a), *Florida Statutes* (emphasis added); *see also In re Swarup*, 521 B.R. 382, 387 (Bankr. M.D. Fla. 2014) (finding the Florida exemption for IRAs to be broader than that under federal law).

Therefore, federal law under 11 U.S.C. § 522(b)(3)(C), and Florida law under § 222.21(2), *Florida Statutes*, as incorporated into bankruptcy law by 11 U.S.C. § 522(b)(3)(A), <u>both</u> provide <u>co-existing</u>, somewhat overlapping, but noticeably distinct exemptions for retirement account funds. To that end, the Florida exemption under § 222.21(2), *Florida Statutes*, is broader.  While a debtor may not be entitled to one of these exemptions for an individual retirement account, he may be entitled to the other, as they are not mutually exclusive and are severable.  Accordingly, any exemption analysis of an individual retirement account for a Florida resident must take into account both of these exemptions, and if such an

16

account qualifies under one but not the other, the account is still exempt. *See Mathusa*, 446 B.R. at fn. 20.

> **A.    The Federal Statute and Florida Statute Differ Significantly Regarding the Effect of Tax-exempt Status on Creditor Exempt Status.**

Under 11 U.S.C. § 522(b)(3)(C), "retirement funds" are only exempt "to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." The federal exemption therefore equates tax-exempt status as the prerequisite and determiner for creditor exempt status. Therefore, to make a determination as to whether a retirement fund is exempt under 11 U.S.C. § 522(b)(3)(C), a "bankruptcy court is obligated to determine whether the funds are in 'a fund or account that is exempt from taxation' and is directed to specific sections of the Internal Revenue Code, which define those tax-exempt accounts." *Willis v. Menotte*, 105 A.F.T.R. 2d 2010-1877 (S.D. Fla. 2010), *aff'd sub nom.; In re Willis*, 424 Fed. Appx. 880 (11th Cir. 2011).

If a bankruptcy court finds that a debtor engaged in prohibited transactions under sec. 408 of the Internal Revenue Code, then a bankruptcy court may itself, and in fact should, determine retroactively that the account

17

at issue lost its tax-exempt status pre-petition, and therefore is not exempt under 11 U.S.C. § 522(b)(3)(C). *See In re Willis*, 424 Fed. Appx. 880, 880 (11th Cir. 2011). This is indisputably the law of the land, but it only applies to the exemption provided under 11 U.S.C. § 522(b)(3)(C), and has no application to the exemptions provided under § 222.21(2), *Florida Statutes*, as incorporated into bankruptcy law by 11 U.S.C. § 522(b)(3)(A).

In fact, the Florida statute is markedly different. Section 222.21(2), *Florida Statutes*, protects accounts maintained in accordance with "any other plan or governing instrument that has been preapproved by the Internal Revenue Service as exempt from taxation under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended, <u>unless it has been subsequently determined that the plan or governing instrument is not exempt from taxation in a proceeding that has become final and nonappealable</u>. (emphasis added).

This language in the statute specifically protects accounts under a plan that is initially formed correctly, even if the account may later be found to be "not exempt from taxation." The Florida statute continues to protect such accounts from creditors until the account's tax-exempt status is determined

18

"in a proceeding that has become final and nonappealable."  This specific language, as underlined above, was added to the statute in Senate Bill 660, which became the law of Florida on June 1, 2005.  *See* RETIREMENT AND PENSIONS—DEBTORS AND CREDITORS, 2005 Fla. Sess. Law Serv. Ch. 2005-101 (C.S.S.B. 660).

While there is no apparent case law interpreting this language or the amendments to the statute from Senate Bill 660, there is strong legislative history which evidences the Legislature's intent.  According to the *Senate Staff Analysis and Economic Impact Statement* dated March 22, 2005, regarding CS/SB 660, as prepared by the Banking and Insurance Committee of the Florida Senate, these changes were intended "to increase the creditor protection afforded individual retirement accounts and tax-qualified employee benefit plans."  *Id.* at p. 5.  This analysis identified one problem in particular:

> In Florida, a good deal of litigation has surrounded the question of whether a pension or retirement plan or profit sharing agreement qualified as being exempt from creditors.  The key issue has often been whether the plan qualified for a tax-exemption because s. 222.21, F.S., requires that such a plan be tax-exempt in order to be exempt from creditor's claims.  The Florida courts have allowed creditors to question the tax-qualified status of plans that have not been disqualified by the IRS.

19

*Id.*

The Committee was obviously concerned that creditors were seeking to levy upon assets in individual retirement accounts by questioning whether the funds were tax-exempt at the trial court level.  By equating a loss of tax-exempt status as an automatic loss of creditor exempt status, creditors were attacking individual retirement accounts at the trial court level.  In response, the Legislature altered the law to state that retirement funds would be exempt from creditors until a final and nonappealable determination had been made by the IRS or a Tax Court:

> The bill provides an exemption from creditor's claims for **any fund or account** that is maintained in accordance with a master plan, volume submitter plan, prototype plan or other plan, or governing instrument that has been pre-approved by the IRS as tax-exempt under s. 401(a), s. 403(a), s. 403(b), s. 408, s. 408A, s. 409, s. 414, s. 457(b), or s. 501(a) of the Internal Revenue Code of 1986, as amended.  The exemption from creditors is eliminated if a subsequent, final determination has been made that the plan or governing instrument is not tax-exempt.  **Thus, the IRS and Tax Courts will make the determination regarding the tax-exempt status of a plan under this bill.**

*Id.* at p. 6. (emphasis added).

The intent was therefore clear.  Even if the IRS or a Tax Court later found that a retirement fund or account had lost its tax-exempt status, until that determination is made by the IRS or a Tax Court, and is nonappealable,

the fund or account is still exempt from creditors. Thus, according to Florida law, tax-exempt status is no longer equivalent to creditor exempt status. While engaging in prohibited transactions may eventually forfeit an account's tax-exempt status, and be retroactively deemed as such, Florida law protects that account from creditors until that determination has been made by the IRS or Tax Court. Creditors thus cannot cause the loss of an exemption of an individual retirement account by asking a trial court to make a determination of tax-exempt status, but must wait for the IRS or a Tax Court to make that determination. This creates counterintuitive situations where an account will eventually be found to have lost its tax-exempt status when later reviewed by the IRS or a Tax Court, but for the time being maintains its creditor exempt status until that procedural condition precedent has been met. The amendments to § 222.21(a), *Florida Statutes*, do not change the substantive rule that retirement funds which are no longer tax-exempt will eventually lose their exemption from creditors as well, but does change the timing and the arbiter, barring creditors from reaching assets or seeking determinations related to tax-exempt status until that determination is made by the IRS or Tax Court.

21

## II.     Bankruptcy Exemptions Are Determined on the Petition Date.

"It is hornbook bankruptcy law that a debtor's exemptions are determined as of the time of the filing of his petition." *In re Friedman*, 38 B.R. 275, 276 (Bankr. E.D. Pa. 1984); *see also In re Gentry*, 459 B.R. 861, 863–64 (Bankr. M.D. Fla. 2011) ("In bankruptcy cases, the relevant date for determining a proper claim of exemption is the petition date."); *In re Fodor*, 339 B.R. 519, 521 (Bankr. M.D. Fla. 2006) ("On this question the law is clear: the claim of exemption is to be determined as of the petition date.").

The use of the petition date for determining exemptions makes sense since "[t]he petition date is the 'watershed date of a bankruptcy proceeding' and is the time when creditor's rights are fixed, the estate is created, and the value of a debtor's exemptions are determined." *In re Meddock*, 25 Fla. L. Weekly Fed. B 145 (Bankr. M.D. Fla. 2014).   Actions, events, or changes which occur after the petition date have no effect on exemptions established and valid on the petition date. *See Matter of Rivera*, 5 B.R. 313, 315 (Bankr. M.D. Fla. 1980).

In *Rivera*, a debtor sought to apply an exemption under Florida law for debtors qualifying as "head of a family." *Id*.  When the debtor filed his petition, he was childless. *Id.*  Only three days after he filed his petition,

22

however, the debtor's cohabitating partner gave birth to a child, which the debtor claimed as his own. *Id.* The debtor then used the newborn child as the predicate for his claimed "head of the family" exemption. *Id.*

The court, however, questioned the debtor's ability to use a post-petition event to qualify for an exemption. *Id.* at 316. Analyzing the statute, the court found that the "right to claim exemptions by a Debtor is governed by the facts and governing circumstances which existed on the date the petition was filed and not by any changes which may have occurred thereafter." *Id.* The court reasoned that "[a]t the time the Debtor filed his petition, the child was not born, thus <u>at the point of cleavage</u> there was no family unit composed of the Debtor and a child." *Id.* (emphasis added).

The court continued that the "fact that under the laws of this State, an unborn child is a legally cognizable person for certain purposes, *i.e.* inheritance . . . is without significance in the context of the present controversy." Essentially, the court ruled that even if other laws treat the status differently in a different context, under bankruptcy law it is the time of the petition date that matters. The Court simply ruled that "there must be a family unit either in law or in fact and since there is none in this case,

23

clearly none at the controlling time, *i.e.* the time the petition was filed, the exemption claim of the Debtor cannot be recognized." *Id.*

*Rivera* stands for the simple proposition that the facts and circumstances as of the petition date control the status of a claim exemption, regardless of whether or not those facts or circumstances change post-petition. The fact and circumstances as of the petition date even control if the future change in facts or circumstances which would alter the exemptions analysis is inevitable and occurs as would be expected.

**A.    On Yerian's Petition Date, the IRA Was an Asset Exempt from Creditors and Therefore Exempt from Property of the Estate, Regardless of Whether or Not Tax-exempt Status Was Lost Due to Prohibited Transactions.**

As of the Petition Date, under Florida law, the IRA had not yet been determined by either the IRS or a Tax Court to have lost its tax-exempt status, regardless of the pre-petition prohibited transactions. Yerian established the IRA on June 1, 2012. *See* Record Doc. 12, Attachment #10, citing to Dkt. #120, Part 50, Exhibit 31; Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20. The IRA Agreement was a "basic IRA agreement to establish a Section 408 individual retirement account." *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20. The IRA

24

Agreement properly established an individual retirement account for Yerian. *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20.

The Bankruptcy Court found that Yerian engaged in prohibited transactions within the IRA in 2014, namely the personal use of the Puerto Rico Property and the titling of the Smart Car and Suburban in his and his wife's name. *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 18-21. Assuming that the Bankruptcy Court was correct that these were prohibited transactions which would <u>eventually</u> result in a determination by the IRS or a Tax Court that the IRA had lost its tax-exempt status, the fact is that as of the Petition Date in 2015, no such determination had yet been made, let alone a final and nonappealable one, and no such determination may ever be made since the violations are rather minor.   In addition, the Trustee's own expert, Heyde, testified that Yerian had set the IRA up correctly, using an approved form. *See* Record Doc. 9, Attachment #13, citing to Dkt. #135, pg. 20.   Thus, under Florida law, the IRA is exempt from creditors, even if tax-exempt status will eventually be determined by the IRS to have been lost in 2014.   Therefore, the IRA is excluded from property of the estate.

### III.   The Bankruptcy Court Only Analyzed the IRA Under the Federal Statute Standard and Ignored the 2005 Amendments to Sec. 222.21, *Florida Statutes.*

In its ruling, the Bankruptcy Court analyzed the IRA and whether it was exempt, but conflated the standard for exemption under 11 U.S.C. § 522(b)(3)(C) with the separate standard of § 222.21(2), *Florida Statutes*. *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 18-21. The Bankruptcy Court treated the standards under both statutes as identical, namely that once a prohibited transaction occurred, tax-exempt status was immediately lost and therefore creditor exempt status was also immediately and automatically lost. *See Id.* The Bankruptcy Court ruled that the loss of <u>tax-exempt status</u> necessarily resulted in the IRA's automatic loss of <u>creditor exempt status</u>, and thus ruled that the Trustee was entitled to administer the IRA as an asset of the bankruptcy estate. *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 21.

The Bankruptcy Court cited two cases in support of its ruling, *In re Mathusa*, 446 B.R. 601, 603 (Bankr. M.D. Fla. 2011), and *In re Willis*, 424 Fed. Appx. 880, 880 (11th Cir. 2011). *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 17-20. Neither case, however, applies § 222.21(2),

*Florida Statutes*, but both are limited in their analyses to 11 U.S.C. § 522(b)(3)(C).

*Mathusa* only stands for the uncontroversial proposition that Florida has opted-in to exemptions under 11 U.S.C. § 522(b)(3), and that individual retirement accounts can be fully exempt under either 11 U.S.C. § 522(b)(3)(C) or § 222.21(2), *Florida Statutes*. 446 B.R. at 602, fn. 20. In fact, the court in *Mathusa* did not feel the need to even formally analyze the individual retirement account at issue under § 222.21(2), *Florida Statutes*, since the Court first found that the account was exempt under 11 U.S.C. § 522(b)(3)(C), except to state that the account was probably not exempt under Florida law. 446 B.R. at fn. 20. The court simply found that since the account was exempt under federal law, there was no need to complete the analysis under Florida law. *Id.*

The Bankruptcy Court, however, cited *Mathusa* as follows:

AND BECAUSE FLORIDA IS AN OPT-OUT STATE, AS EXPLAINED IN *MATHUSA*, THE FLORIDA STATUTE 222.21(2) CONTROLS AND PROVIDES THAT AN EXEMPT IRA – AN IRA IS EXEMPT IF MAINTAINED IN ACCORDANCE WITH THE VARIOUS INTERNAL REVENUE SERVICE REQUIREMENTS.

IF AN IRA IS NOT MAINTAINED IN ACCORDANCE WITH PLAN OR GOVERNING INSTRUMENT AND THE PERSON CLAIMING THE EXEMPTION CAN -- I'M

27

SORRY. LET ME BACK UP. THAT WASN'T VERY CLEAR.

HOWEVER, IF THE IRA IS NOT MAINTAINED IN ACCORDANCE WITH THE VARIOUS REQUIREMENTS, IT LOSES ITS EXEMPT STATUS.  § 408(E)(2) OF THE TAX CODE SPECIFICALLY STATES THAT IF AN INDIVIDUAL ENGAGES IN PROHIBITED TRANSACTION, THEN THE ACCOUNT CEASES TO BE AN EXEMPT IRA AT THE BEGINNING OF THE YEAR IN WHICH THE PROHIBITED TRANSACTIONS OCCURRED.

*See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 19-20.

*Mathusa* is not, however, a case that interprets § 222.21(2), *Florida Statutes*, or a case that basis its ruling on that statute. *Mathusa*, 446 B.R. at 603.  The *Mathusa* ruling is limited to 11 U.S.C. § 522(b)(3)(C), and Yerian did not contest that the IRA was not entitled to an exemption under that section.  *Mathusa* is inapplicable to the real issue of this matter and this appeal, which is whether the IRA is exempt under § 222.21(2), *Florida Statutes*.  From the text of the Bankruptcy Court's oral ruling, it is apparent that the Bankruptcy Court was incorrectly treating the standards under 11 U.S.C. § 522(b)(3)(C) and § 222.21(2), *Florida Statutes*, as identical, and holding that a loss of tax-exempt status for the IRA was also an automatic loss of creditor exempt status for that IRA under both statutes.

28

The second case cited by the Bankruptcy Court is *In re Willis*, 424 Fed. Appx. 880, 880 (11th Cir. 2011), and the related district court opinion *Willis v. Menotte*, 105 A.F.T.R. 2d 2010-1877, 2010 WL 1408343 (S.D. Fla. 2010), *aff'd sub nom In re Willis*, 424 Fed. Appx. 880 (11th Cir. 2011).  In *Willis*, the debtor similarly sought to exempt a self-directed individual retirement account, but for reasons not explained in either opinion, the debtor solely sought an exemption under 11 U.S.C. § 522(b)(3)(C) and did not cite to or seek the other exemption under Florida law.  *Willis*, 2010 WL 1408343 at *1.

The debtor, however, had engaged in prohibited transactions.  *Id.* at *7.  On account of these prohibited transactions, the court determined that his account had lost its tax-exempt status and was therefore not exempt from creditors.  *Id.*  The Eleventh Circuit then affirmed the district court with a one paragraph opinion, holding that on account of the prohibited transactions, the account had lost its tax-exempt status and therefore its creditor exempt status.  *Willis*, 424 Fed. Appx. at 880.

Neither the district court, nor the Eleventh Circuit, nor the underlying bankruptcy court for that matter, made any mention of § 222.21(2), *Florida Statutes*.  *Willis*, like *Mathusa*, has no bearing on the IRA's exemption status

29

under Florida law.   The Bankruptcy Court, however, cited to *Willis* as binding authority that compelled the Bankruptcy Court to find the IRA was not exempt under both federal and Florida law.   *See* Record Doc. 9, Attachment #15, citing to Dkt. #152, pg. 17-19.

*Willis* is certainly binding precedent, and Yerian has no argument with the Bankruptcy Court's application of *Willis* in determining the exempt status of the IRA under 11 U.S.C. § 522(b)(3)(C).   Yerian is not appealing the Bankruptcy Court's ruling that the IRA is not exempt under 11 U.S.C. § 522(b)(3)(C), and conceded as much at trial.   *Willis*, however, has no application to Yerian's argument that the IRA was exempt under Florida law.   The Bankruptcy Court committed reversible error when it ignored the separate exemption standard of § 222.21(2), *Florida Statutes*, to the IRA, and instead treated the two separate statutes as having essentially the same standard.   Accordingly, the Bankruptcy Court's decision should be reversed and the Objection should be overruled, allowing the exemption of the IRA.

## CONCLUSION

"Generally speaking, courts construe bankruptcy exemption statutes— both <u>state</u> and federal—liberally in favor of bankruptcy debtors."   *In re McFarland*, 790 F.3d 1182, 1186 (11th Cir. 2015) (emphasis added).   While

30

Yerian may have engaged in prohibited transactions that the IRS will eventually find have resulted in the loss of the IRA's tax-exempt status, until that determination is made by the IRS or a Tax Court, the IRA is protected from creditors under Florida law. As of the Petition Date, no determination had been made. It is possible that the IRS will not find the transactions to result in a loss of tax-exempt status as the violations appear to be minor and the IRS has discretion to forgive minor offences. Regardless, whether the IRS does or does not, Florida law protects the IRA from creditors unless and until that determination is made by the IRS or a Tax Court and becomes final and nonappealable. For the reasons set forth herein, the Bankruptcy Court's ruling should be reversed, and the Objection should be overruled, allowing the claimed exemption of the IRA.

**DATED** this 12th day of September, 2017.

Respectfully submitted,

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No.: 51265
Christian S. Graham, Esq.
Florida Bar No.: 94245
Nardella & Nardella, PLLC
250 E. Colonial Dr., Suite 102
Orlando, Florida 32801
Telephone (407) 966-2680
mnardella@nardellalaw.com

31

cgraham@nardellalaw.com
Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that Appellant's Initial Brief complies with

the type volume limitations set forth in Rule 8015(a)(7)(B). The Microsoft

Word word check tool identifies 7,564 words and 890 lines of text within the

Reply Brief, including headings, footnotes, and quotations.

**NARDELLA & NARDELLA, PLLC**

/s/ Michael A. Nardella
Michael A. Nardella, Esq.
Florida Bar No.: 51265
Christian S. Graham, Esq.
Florida Bar No.: 94245
**Nardella & Nardella, PLLC**
250 E. Colonial Dr., Suite 102
Orlando, Florida 32801
Telephone (407) 966-2680
mnardella@nardellalaw.com
cgraham@nardellalaw.com
Attorneys for Appellant

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                         Bkr Case No. 6:15-BK-1720-KSJ

**KEITH A. YERIAN,**

**Debtor.**

_____/

**KEITH A. YERIAN.**
                                               **Case No. 6:17-CV-459-Orl-31**
**Appellant,**

**v.**

**RICHARD  B.  WEBBER,  II,  as
TRUSTEE,**

**Appellee.**

_____/

### Certificate of Service

I HEREBY CERTIFY that a true copy of **THE INITIAL BRIEF OF APPELLANT KEITH A. YERIAN** has been furnished by facsimile, electronic transmission and/or U.S. Mail, postage prepaid to the following: Richard B. Webber, II, Esq., as Trustee, Bradley J. Anderson, Esq., and Kevin Robinson, Esq., Zimmerman, Kiser & Sutcliffe, P.A., 315 East Robinson Street, Suite 600, Orlando, FL 32801, this 12th day of September, 2017.

*Michael A. Nardella*
Michael A. Nardella, Esquire

33